IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| VLSI TECHNOLOGY, LLC, *Plaintiff,* | § § § | |
| | § | CIVL NO. 6:19-CV-000254-ADA |
| -vs- | § | |
| | § | CIVL NO. 6:19-CV-000255-ADA |
| INTEL CORPORATION, *Defendant.* | § § | CIVL NO. 6:19-CV-000256-ADA |
| | § § | |

**ORDER DENYING DEFENDANT INTEL CORPORATION'S MOTION TO
TRANSFER VENUE UNDER 28 U.S.C. § 1404(a)**

Before the Court is Defendant Intel Corporation's Motion to Transfer Venue Under 28 U.S.C. § 1404(a). Dkt. Number 24. Plaintiff VLSI Technology, LLC filed its Response on June 3, 2019. Dkt. Number 40. Defendant filed its Reply on June 10, 2019. Dkt. Number 44. After considering all related pleadings and the relevant law, the Court is of the opinion that Defendant's Motion should be denied for the following reasons.

**I.      Factual Background**

Plaintiff VLSI Technology, LLC ("VLSI") sued Defendant Intel Corporation ("Intel") on claims of patent infringement. The Court conducted a hearing on Intel's Motion to Transfer on July 31, 2019. The Parties acknowledge that this District is a legally proper forum for these actions. Ultimately, the question boils down to whether, as a general rule, gamesmanship on the part of VLSI would require this Court to transfer this case to another forum. The second issue is, if that is correct, whether the Court believes that VLSI engaged in sufficient gamesmanship (if any) that would warrant this Court relinquishing jurisdiction over patent litigation that is entirely proper in this Court in terms of jurisdiction. Because the Court finds that VLSI did not engage in

1

any gamesmanship, it is unnecessary to determine whether Intel's contention that gamesmanship would require a transfer is the law or not.

The Court agrees with VLSI that this District is the most sensible and convenient forum when the facts of the cases are properly considered. As will be explained in more detail below, each important factor that a court should consider mitigates in favor of maintaining the case here. Each of the cases filed in this District concerns inventions made in this District, by inventors who reside in this District, in the course of their employment at companies based in this District. The vast majority of the living inventors named on the asserted patents are believed to still reside in this District. This is likely because they lived in this district when the inventions were being made.

The majority of the inventors worked at Austin companies SigmaTel, Inc. and Freescale Semiconductor, Inc. Those companies have since merged with NXP, one of the world's leading semiconductor manufacturers, whose domestic operations are also headquartered in this District. NXP and VLSI contend that they are working together to obtain fair value for the use of NXP's and its predecessors' inventions. VLSI argues that if is successful, its recovery will be reinvested in research and development in this District. Pl.'s Resp. Ex. 1 at ¶ 17. Further, numerous NXP and Freescale employees involved in evaluating, patenting, licensing, and otherwise commercializing the inventions at issue reside in this District. *Id.* ¶ 18. Finally, VLSI represents to the Court that it has additional patents that it wanted to pursue that all concern inventions made in this District.

Intel has a substantial presence in this District and allegedly conducts substantial infringing activities in this District, including at least the use, marketing and sale of accused products to customers in this District. Additionally, VLSI asserts that one of Intel's top customers

for the accused products is Dell Technologies, Inc., which is headquartered in this District. VLSI also asserts that publicly available information demonstrates that many of Intel's own 1,700 employees in this District have been and remain deeply involved in work on the technologies at issue in these cases. VLSI also asserts that Intel's employees from this District have nearly 100 patents which explicitly discuss Intel's Quick Path Interconnect ("QPI") technology, which is accused under the '983 Patent, and that considerable other published work of local Intel employees also concerns patented technologies at issue here.

By contrast, neither party has a relevant employee in the District of Delaware. None of the inventors of the asserted patents live in Delaware. None of the inventions at issue were made anywhere near Delaware. Nor does Intel identify any relevant third parties with operations in Delaware. In fact, Intel has insisted that it has "no connection . . . other than [its] organization in Delaware," "did not design, develop, or manufacture the accused products . . . in Delaware," "has no offices, facilities, or employees who work in Delaware," "has no witnesses in Delaware," and "has no documents or servers in Delaware." *Id.* at 1–2.[1]

## II.   Procedural History

The procedural history has some import to this decision. There are multiple actions pending between the Parties in federal court. The first, pending in the Northern District of California, is currently stayed pending *inter partes* review. The second is pending in the District of Delaware. Intel moved to transfer that case to California, but the court denied Intel's motion. *Id.* at ¶¶ 6–7. VLSI filed another case in Delaware in March 2019. It was assigned to the same Judge in Delaware as the first Delaware case. In response, Intel file a motion to consolidate, which in this Court's opinion was an entirely proper procedural action to take. In response, VLSI

---

[1] This Court must take into consideration, with respect to Intel's arguments in this case, the arguments that Intel itself made as to why the Delaware case should have been transferred to California, which this Court believes were made in good faith.

dismissed the second filed case, as was its right, before any responsive pleading or motion practice occurred in Delaware. No discovery had been commenced. No motion to dismiss had been filed. VLSI then filed their lawsuit in this Court.

As a result of the filing in Delaware, then dismissal, then refiling of the suit in this Court, Intel charges VLSI with improper forum shopping for this decision. As the Court will discuss further, in a situation such as this one, where a plaintiff selects a different venue because the docket is far less crowded, the court has the same relative experience in patent litigation, and the parties and witnesses benefit, the Court cannot ascribe any improper motivation to VLSI's decision to file its case in this District. Thus, as will be explained further, the Court finds that VLSI's decision to dismiss and to refile in this District was an entirely proper procedural action to take.

### III.   Standard of Review

Title 28 U.S.C. § 1404(a) provides that, for the convenience of parties and witnesses, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented. 28 U.S.C. § 1404(a). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack,* 376 U.S. 612, 622 (1964)). The party moving for transfer carries the burden of showing good cause. *Humble Oil & Ref. Co. v. Bell Marine Service, Inc.,* 321 F.2d 53, 56 (5th Cir. 1963); *see also In re Volkswagen of Am., Inc.,* 545 F.3d 304, 314 (5th Cir. 2008) (hereinafter "*Volkswagen II*") ("When viewed in the context of § 1404(a), to show good cause means that a moving party, in order to support its claim for a transfer, must . . . clearly demonstrate that a

transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'") (quoting 28 U.S.C. § 1404(a)).

"The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the destination venue." *Volkswagen II*, 545 F.3d at 312. If this requirement is met, the Fifth Circuit Court of Appeals has held that "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (hereinafter *"Volkswagen I"*) (citing to *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.*

A plaintiff's choice of venue is not an independent factor in the venue transfer analysis, and courts must not give inordinate weight to a plaintiff's choice of venue. *Volkswagen II*, 545 F.3d at 314 n.10, 315 ("[W]hile a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege."). However, "when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Id.* at 315.

5

## IV. Discussion

Intel requests transfer based almost exclusively on what it deems the "interests of justice." At least in this case, the Court finds this argument to be without merit. At the hearing, counsel for Intel repeatedly focused only on this prong of the 1404(a) considerations. This is not the proper analysis. The Fifth Circuit has made clear that **both** Section 1404(a) considerations— the interests of justice **and** the convenience of parties and witnesses— should be evaluated using the public and private factors. *Volkswagen II*, 545 F.3d at 315 ("[T]he private and public interest factors . . . [are] appropriate for the determination of whether a § 1404(a) venue transfer ***is for the convenience of parties and witnesses and in the interest of justice***.") (emphasis added). However, to make clear, the Court determines that it does not need to decide between these two prongs because the Court affirmatively finds that it would be in the interests of justice to maintain VLSI's action in this District.

1. *Intel's Accusations Of "Forum Shopping" Do Not Justify Transfer*

The Court squarely rejects Intel's contention that it is entitled to a transfer because of improper "forum shopping" and "judge shopping." "[P]laintiffs are ordinarily allowed to select whatever forum they consider most advantageous (consistent with jurisdictional and venue limitations), [and the Supreme Court has] termed their selection 'the plaintiff's venue privilege.'" *Content Guard Holdings, Inc. v. Amazon.com, Inc.*, No. 2:13-CV-1112-JRG, 2015 WL 11089745, at *2 (E.D. Tex. 2015) (quoting *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 63 (2013)). This is underscored by the decision by the District of Delaware when it rejected Intel's bid to move the Delaware case to California. *VLSI Tech. LLC v. Intel Corp.*, No. 18-966-CFC, 2018 WL 5342650, at *3 (D. Del. 2018) ("The principle that a plaintiff can lawfully engage in forum shopping is . . . fundamental to our federal system . . . .

And twice in the context of a § 1404(a) transfer motion, the Court has recognized the legitimacy of forum shopping . . ."); *see also, e.g., Par Pharm., Inc. v. Breckenridge Pharm., Inc.*, No. 15-486-SLR, 2015 WL 5301640, at *3 (D. Del.2015) ("[T]o suggest that a company that chooses different venues for different suits is operating in bad faith is disingenuous, and the suggestion is a not-so-subtle attempt to cloak the venue selection exercise in which every company engages with overtones of intentional misconduct."). Further, consistent with nationwide law, it is well-settled here that:

> The existence of [forum choices] not only permits but indeed invites counsel in an adversary system, seeking to serve in his client's interests, to select the forum that he considers most receptive to his cause. The motive of the suitor in making this choice is ordinarily of no moment: a court may be selected because its docket moves rapidly, its discovery procedures are liberal, its jurors are generous, the rules of law applied are more favorable, or the judge who presides in that forum is thought more likely to rule in the litigant's favor.

*In re Triton Ltd. Securities Litig.*, 70 F. Supp. 2d 678, 689 (E.D. Tex. 1999) (quoting *McCuin v. Tex. Power & Light Co.*, 714 F.2d 1255, 1261–62 (5th Cir. 1983)).

As a preliminary matter, the instant action "might have been brought" in the destination venue. At the hearing, Intel appeared to concede that it would have had little if any argument to support transfer away from this District had VLSI originally filed the case here. However, Intel seeks to transfer this case to the District of Delaware because VLSI filed it there first, then dismissed it, and refiled it in the Western District of Texas. Thus, the Parties agree that this action could have been filed originally in the Western District of Texas, Waco Division.

When evaluating the merit of Intel's claim of inappropriate forum shopping, the Court must examine the contacts this venue has with the case. This evaluation leads the Court to believe that this District is entirely appropriate. As discussed earlier, this District is: (1) where each of the inventions were made; (2) it is where the vast majority of inventors reside; and (3) it

is where the companies and their successor companies that employed the inventors are all based. Moreover, Intel has a substantial facility that employs a substantial number of engineers and senior personnel in this District. Thus, there can be no dispute that this District is an entirely appropriate forum for this case.

The Court next turns to the alternative to this District, which is Delaware, that is also an entirely appropriate forum because the Parties are incorporated there. Delaware is blessed with exceptional judges that have extensive experience in handling patent litigation. It has gained two highly talented and badly needed new district judges under the Trump administration. However, even the addition of these two fine judges has not served to relieve the burden of the crush of patent cases that district must handle. The four sitting judges in Delaware are the four district judges who have had the most new patent cases filed in 2019. This raises the question whether it can ever be gamesmanship for a party to elect to file a patent case where jurisdiction is proper but where the patent docket is less crowded. The Court finds that the answer, at least under the procedural history of this case, is that there is no gamesmanship present.

There are also additional factors that further mitigate against finding gamesmanship in this case. The first is that in this case, while the case was still on the Delaware docket, Intel made the decision to ask that court to consolidate this case with an earlier one. This Court finds nothing inappropriate with that request, but it undercuts any argument that VLSI's decision to dismiss the case while it could and filing elsewhere was inappropriate gamesmanship. In addition, this Court believes that it is capable of hearing and presiding over complex patent cases. For example, the Court has already implemented a model order for patent cases. Moreover, this Court's docket has fewer patent cases than the dockets of the judges in Delaware. Furthermore, this Court can accommodate whatever schedule the Parties request in terms of

8

setting the Markman hearing and jury trial.[2] Perhaps this Court cannot oversee patent cases to the degree of the fine judges sitting in Delaware; however, as explained above, this Court is sufficiently proficient at handling patent cases. As such, the Court finds that these are all entirely legitimate considerations for VLSI to have taken into consideration when it decided to dismiss its suit in Delaware and file it in this District. Accordingly, the Court finds that VLSI's decision to leave the District of Delaware for the Western District of Texas was not one made solely for the purpose of acquiring a different judge regardless of the Court's ability to administer justice in a patent case. Next, the Court must determine whether the various public and private factors weigh in favor of transfer.

    2. *The Private Factors All Weigh Against Transfer*

As shown below, each of the four private interest factors weighs against transfer. Once again, it did not appear at the hearing that Intel seriously challenged that these factors weighed against transfer, relying instead on its theory that VLSI's gamesmanship required transfer even if these factors did weigh against transfer. The Court addresses each factor in turn.

    i. **"Sources Of Proof" Factor Weighs Against Transfer**

The "ease and access to sources of proof" factor weighs against transfer because significant evidence relating to the Texas patents is in this District. Intel does not dispute that most of the patents were invented in this District, by inventors residing in this District, while working at companies in this District. Thus, the Court finds that documents relating to inventorship, conception, reduction to practice, and prosecution are located in this District. Pl.'s Resp. Ex. 1 ¶ 18. To the extent that there are any issues related to the transfer of the patents to VLSI by NXP, this is the appropriate District because negotiations between VLSI and NXP

---

[2] In fact, the Court has already scheduled a Markman hearing that will be completed before the end of the calendar year.

allegedly occurred in this District. *Id.* Accordingly, proof regarding validity, standing, damages, and other subjects will be found in this District, which further weighs against transfer. *Cf. InMotion Imagery Techs., LLC v. Imation Corp.*, No. 2:12-CV-298JRG, 2013 WL 1279055, at *3 (E.D. Tex. 2013) (weighing as relevant "third-party sources of proof, such as the inventors of the asserted patents").

Intel also does not dispute that it is subject to jurisdiction in this District. Intel has a major facility in this District. However, the Parties dispute whether the employees at that facility played a role in the development, design, or manufacture of the accused products. The Court finds that this is less important in its analysis in this case because of the overwhelming evidence that VLSI has proffered as to the number of inventors and other evidence related to this case that is in this District. However, publicly available evidence in this District is not unimportant, and VLSI asserts (the Court will afford the appropriate deference to VLSI's allegations) that many of Intel's employees have been involved in working on the technologies at issue in these cases.[3] This publicly available evidence mitigates strongly in favor of maintaining the case in this District. Further, unfortunately for Intel, it is not seeking transfer to a district where it can argue that a majority of its engineers or evidence might be found. Instead, its argument is entirely based on the concept that because VLSI originally filed this suit in Delaware, and then chose to file suit in this District, that this Court should dismiss VLSI's case and "return" it to Delaware.

Finally, Intel has not established that the relevant evidence is clearly more conveniently located in Delaware. To the contrary, Intel has argued that it "has no documents or servers in

---

[3] For example, Intel's employees in this District have nearly 100 patents explicitly discussing Intel's QPI technology, which is accused by the asserted '983 Patent. Pl.'s Resp. Ex. 1 ¶ 20. Considerable other published work of these employees relates explicitly to the technologies of other patents asserted here. *Id.* ¶¶ 21-26; *compare, e.g.*, '373 Patent with Ex. 3 (storing power information in non-volatile storage devices); '759 Patent with Ex. 4 (ring interconnect); '357 Patent with Ex. 5 (cache flushing); '187 Patent with Ex. 6 (band gap references); '485 Patent with Ex. 7 (SRAM write-assist).

Delaware." Pl.'s Resp. Ex. 1 at 3. Further, it is undisputed that neither party has offices, relevant employees, or documents—let alone headquarters—in the District of Delaware. Accordingly, the Court finds that this factor weighs against transfer. *See SCVNGR, Inc. v. DailyGobble, Inc.*, 2015 WL 13501487, at *3 ("[Defendant] makes no attempt to rebut . . . that important sources of proof related to the accused app's design and development . . . are not actually located in the proposed transferee venue. This weighs against [Defendant].").

      ii.    **"Compulsory Process" Factor Weighs Against Transfer**

Intel does not contend that the District of Delaware would be better situated to compel non-party witnesses to testify at trial. Intel has identified zero third-party witnesses within the absolute subpoena power of the District of Delaware, whereas this District would have absolute subpoena power over the vast majority of inventors on the relevant patents. It appears to the Court that while NXP is not a named party in the case, that it will likely be necessary to obtain discovery from NXP and its employees. Additionally, it appears clear to the Court that both Parties will benefit by allowing this suit to be maintained where the NXP employees can be subpoenaed by either Party for trial. *See, TiVo Inc. v. Verizon Commc'ns, Inc.*, No. 2:09-CV-257, 2010 WL 11468564, at *3-4 (E.D. Tex. 2010) (explaining that this factor weighs in favor of the venue with more usable subpoena powers); *Junior Volleyball Ass'n of Austin v. Summit Hosting LLC*, 1:17-CV-756-LY, 2019 WL 1313467, at *2 (W.D. Tex. 2019) ("Defendant has not persuaded the court that the availability of compulsory process to secure witnesses weighs in favor of transfer."). Accordingly, the Court finds that this factor weighs heavily against transfer.

      iii.    **"Cost of Attendance" Factor Weighs Against Transfer**

First, the Court notes that Intel bears the burden of showing that the District of Delaware is clearly more convenient with respect to the cost of attendance for willing witnesses to justify

the transfer from a district where the case is appropriately filed. The Court believes that this is one of the most important factors when evaluating transfer. *See SCVNGR*, 2015 WL 13501487, at *4. VLSI submits that most important non-party witnesses are located in this District, and Intel has failed to rebut their assertion. Moreover, travel to this District is not burdensome, and Waco is easily accessible for witnesses located outside the District. *See, e.g., RPB Safety, LLC v. Tru-Vision Plastics, Inc.*, No. 6:18-CV-367-ADA, Dkt. Number 14 at 7 n.5 (W.D. Tex. Feb. 20, 2019). The Court rejects any argument by Intel that this factor is affected by the fact that some of the Texas patents were briefly filed against Intel in Delaware. The Court also rejects any effort by Intel to transfer this case because of potential consolidation were a motion made to do so. Finally, the Court finds that Intel has failed to rebut VLSI's contention that the Delaware and Texas cases involve different and non-overlapping issues of fact and law. Accordingly, the Court finds that this factor weighs against transfer.

    iv.    **"Practical Problems" Factor Weighs Against Transfer**

Intel fails to establish that the fourth private interest factor, "all other practical problems that make a trial of a case easy, expeditious, and inexpensive," favors transfer to the District of Delaware. To the contrary, the Court finds nothing to indicate that combining the Delaware and Texas cases would be beneficial, and perhaps not even workable. Given the location of at least the inventors and NXP in this District, it appears clear that the trial of this case will be more expeditions and more inexpensive if it remains here.

The Court accepts VLSI's contention that the cases involve different technologies, patents, families, specifications, and prosecution histories. As a result, this will require different questions of claim construction, infringement, validity, and damages, each of which must be evaluated on a patent-by-patent (and claim-by-claim) basis. Intel has failed to establish that there

are sufficient overlapping facts or issues other than the patents "deriving from the same third-party patent portfolio" and some overlapping accused products. The Court finds this is not persuasive when the "third-party patent portfolio" contains over 10,000 U.S. patents covering a wide range of subject matter. The Court also accepts VLSI's contention that the method in which a reasonable royalty will be calculated for the patents asserted in this case will have to be done with respect to each of the patent's technical footprint. *See, e.g., ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010) ("[A] reasonable royalty analysis requires a court to . . . carefully tie proof of damages to the claimed invention's footprint in the market place."). Under these circumstances, courts have denied both transfer and consolidation. *See, e.g., Leviton Mfg. Co. v. Nicor, Inc.*, No. 04-0424-JB-LFG, 2007 WL 505784, at *4–5 (D.N.M. 2007) (denying consolidation because "the principal legal and factual issues . . . are different" such that "separate proofs of infringement . . . , and separate and distinct determinations of validity are required"; thus, "consolidation would not further judicial economy, or avoid unnecessary costs and delay").

Intel might have been able to persuade the Court that transfer to Delaware and consolidation would be beneficial to the Parties had it established any meaningful technological similarities in the patents in the different cases. VLSI concedes that there is overlap in accused products between the four cases, but Intel has failed to establish that the actual accused functionalities are also similar. Instead, Intel only identifies one patent from the Delaware case and two patents from the second Texas action as being technologically comparable. This Court has no direct way of measuring whether Intel "has made even less of an effort to show technological overlap here than in its failed motion to transfer the Delaware cases to California"—as VLSI suggests—but the Court is capable of determining that Intel has failed to meet its burden of persuasion here in this case. Pl.'s Resp. at 15.

Finally, the Court is convinced that the technological differences between the cases are sufficient to preclude any possibility that transferring this case to Delaware and consolidating it with the other prior pending case in Delaware would benefit either the Parties, the Delaware district court, or this Court. VLSI asserts that the Texas patents involve technologies not currently accused in Delaware, including (1) SRAM write-assist design; (2) Intel's Fully Integrated Voltage Regulator; and (3) the dynamic, analog behavior of Intel's circuits relating to the behavior of transistors between clock cycles. Decl. ¶ 30. Accordingly, this Court rejects Intel's argument that transferring this case—which is sufficiently different than the one currently before the Delaware district court—to a district that is more heavily burdened with patent litigation than this District would benefit either the Parties or the federal court system.

At the hearing in Waco, the Court expressed concern that the dismissal and return of this case to Delaware would result in delaying the resolution of this case. Specifically, either these patents would be consolidated with the other prior pending case in Delaware, which would most likely delay the currently scheduled Markman and trial, or (and this is the scenario this Court believes is most likely) this case would not be consolidated, which means that the Markman and trial in this case would be delayed much longer than what will occur in this District. Intel believes that this is VLSI's fault because they dismissed the second Delaware case and refiled it here; therefore, it is not a factor that should be given weight. The Court disagrees. The Parties will benefit by having the Delaware Court continue to prosecute its case under its current schedule, and this Court is entirely capable of prosecuting the instant patent case here.

### 3. The Public Factors Weigh Against Transfer

#### i. "Congestion" Factor Weighs Against Transfer

Intel has several problems with respect to this Motion. One is the certainty, given the amount of patent litigation that it has been involved in, that it too has made decisions on whether to dismiss or file a case depending on what venue was best for it to file in. It would be malpractice for its legal counsel to have done less than to advise its client to file in the venue that was most favorable to it under whatever factors it is evaluating. Those factors might be time to trial, competence of the court, availability of witnesses, jury pool, or any other combination of a host of other factors. In this case, avoiding congestion and speed to trial is certainly a legitimate factor for any party to have taken into consideration. Because these are legitimate factors to consider, the Court rejects Intel's argument that VLSI engaged in improper forum shopping.

VLSI's comparison of median time-to-trial statistics reveals that this District is far less congested than Delaware. Further, this Court is certain that its time to trial in this case will be more rapid than the schedule that the District Judge in Delaware could accomplish with these patents regardless of whether he consolidates this case with the prior one or places it on a separate track. Finally, the Court rejects any suggestion that a non-practicing entity is any less entitled to a speedy resolution of its claims because it does not currently practice the asserted patents. Accordingly, the Court finds that this factor weighs against transfer. *Tex. Ass'n of Realtors, Inc. v. PDFfiller, Inc.*, No. A-16-CA-1304-SS, 2017 WL 3821690, at *4 (W.D. Tex. 2017) (where median time to trial was longer in proposed transferee venue, finding "the administrative difficulties flowing from court congestion cuts against transfer.").

### ii. "Localized Interest" Factor Weighs Against Transfer

The Court has already sufficiently addressed this factor above. The Texas patents were all invented in this District, primarily by residents of this District, and at companies based in this District. In addition, Intel employs a significant number of people working in this District. Finally, VLSI has alleged that extensive potential infringement is occurring here. Accordingly, this District has a strong local interest in having the instant action resolved here. As such, this factor also weighs against transfer.

### iii. "Familiarity" And "Conflict of Law" Factors Are Neutral

These factors are neutral since both the District of Delaware and the Western District of Texas are familiar with issues of patent law that will govern in this case.

## V. Conclusion

Because of the reasons discussed above, the Court finds that all four private interest factors weigh against transfer, two public interest factors also weigh against transfer, and the remaining two public interest factors are neutral. Accordingly, the Court finds that Intel has failed to meet its "significant" burden to show that the District of Delaware is "clearly more convenient" than this District. As such, the Court finds that Defendant Intel Corporation's Motion to Transfer Venue Under 28 U.S.C. § 1404(a) should be and hereby is **DENIED**. **SIGNED** this 6th day of August 2019.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE