**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| VLSI TECHNOLOGY LLC,<br><br>      Plaintiff,<br><br><br>  v.<br><br><br>INTEL CORPORATION,<br><br>      Defendant. | Lead Case: 1:19-cv-977-ADA<br><br>(*Consolidated for pretrial purposes only with* Nos. 6:19-cv-254-ADA, 6:19-cv-255-ADA, 6:19-cv-256-ADA)<br><br>Oral Hearing Requested<br>– Local Rule CV-7(h) |

**DEFENDANT INTEL CORPORATION'S EMERGENCY OPPOSED MOTION TO
CONTINUE TRIAL**

**TABLE OF CONTENTS**

I.     LEGAL STANDARD..................................................................................................... 2

II.    ARGUMENT ............................................................................................................... 3

        A.     A Continuance Will Protect Important Interests in Safety and Health. .................. 3

            1.    The Rate of COVID-19 Cases and Deaths Is Rising Dangerously in McLennan County, Texas, and the United States. .................................................................. 4

            2.    Even With The Most Diligent Safeguards There Is A Significant Risk to Participants in a January 11, 2021 Trial................................................................ 5

            3.    The Health and Safety of Trial Participants and the Community Are Unduly at Risk If Trial Proceeds in January 2021................................................................. 7

        B.     Considerations of Prejudice and Length of Delay Favor a Continuance............... 8

            1.    A Continuance Is Expected to Be Brief as Vaccines Are Expected to Be Available Shortly................................................................................................................... 8

            2.    A Brief Continuance Will Not Prejudice VLSI. ...................................................... 8

            3.    Proceeding in January Risks Wasting Substantial Resources................................ 9

            4.    Intel Would be Prejudiced and Its Due Process Rights Jeopardized If a Continuance Is Not Granted................................................................................... 9

III.   CONCLUSION......................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Clinton v. Jones*,
    520 U.S. 681 (1997)........................................................................................................2

*Crossroads Sys., Inc. v. Dot Hill Sys. Corp.*,
    2015 WL 3773014 (W.D. Tex. 2015)............................................................................9

*Fontenot v. Upjohn Co.*,
    780 F.2d 1190 (5th Cir. 1986) .......................................................................................2

*Hardy v. Johns-Manville Sales Corp.*,
    681 F.2d 334 (5th Cir. 1982) .......................................................................................10

*Oyster Optics, LLC v, Infera Corp.*,
    No. 2:19-cv-00257, slip op. (E.D. Tex. Nov. 20, 2020), ECF No. 209 ......................5

*Ramot at Tel Aviv Univ. Ltd. v. Cisco Sys., Inc.*,
    No. 2:19-cv-00225, slip op. (E.D. Tex. Nov. 20, 2020), ECF No. 203 ......................3

*Sapp v. Mem'l Hermann Healthcare Sys.*,
    406 Fed. App'x 866 (5th Cir. 2010) ..............................................................................2

*Solas OLED Ltd. v. Samsung Display Co.*,
    No. 2:19-CV-00152-JRG, slip op. (E.D. Tex. Nov. 20, 2020), ECF No. 302.........1, 2, 3, 5, 10

*Spa Syspatronic, AG v. Verifone, Inc.*,
    2008 WL 1886020 (E.D. Tex. 2008) ..............................................................................9

*Sw. Bell Tel. Co. v. City of El Paso*,
    346 F.3d 541 (5th Cir. 2003) .........................................................................................2

*Sw. Refrigerated Warehousing Servs. Joint Venture v. M.A. & Sons, Inc.*,
    2017 WL 8777393 (W.D. Tex. 2017).............................................................................2

*Thompson v. Madison Cty. Bd. of Educ.*,
    476 F.2d 676 (5th Cir. 1973) .......................................................................................10

*Wade v. Donahoe*,
    2015 WL 151455 (E.D. La. 2015) .................................................................................2

**Other Authorities**

Fed. R. Civ. P. 16(b)(4)........................................................................................................2

**Exhibits**

The exhibits cited in this motion as "Ex. __" are attached to the declaration of Alexis Pfeiffer, filed as an attachment herewith.

## PRELIMINARY STATEMENT

Defendant Intel Corporation respectfully moves to continue trial in the -254 case until the end of March 2021.  Increasing COVID-19 cases in McLennan County, in Texas, and throughout the United States, the likelihood that these conditions will only worsen in the coming weeks, and recent reports that efficacious vaccines will soon reach the public provide good cause to continue the January 11, 2021 trial for a short time until it may be conducted under safe circumstances.

As explained by Dr. Cristie Columbus, Chief of the Division of Infectious Diseases at Baylor University Medical Center, the current state of the pandemic "poses a significant potential risk to the health, safety, and life of participants in a trial starting January 11, 2021 in Waco or Austin, Texas as well as to the communities in the Division where trial is held and communities in places where out-of-state participants will return after trial."  Declaration of Dr. Cristie Columbus, M.D. ("Columbus Decl.") ¶ 26.  Case and death numbers in McLennan County and in Texas now mirror or are approaching those from July 2020, when the Waco Division was closed to jury trials, and those numbers are only expected to continue to rise after the holidays.

Given these changed circumstances, courts throughout Texas and the country have recognized that even robust precautions cannot adequately address the significant risks of holding in-person trials during the present surge.  On November 12, in Texarkana, Texas, Judge Schroeder continued a December patent trial and the U.S. courthouse in Texarkana sits closed through December 7 "out of concern for … health and safety."  Ex. 51 at 2.  On November 17, in Sherman, Texas, Judge Mazzant had to declare a mistrial following a COVID-19 outbreak infecting 15 jurors, court staff, and counsel despite safety measures that had previously allowed trials without incident.  Days later, in Marshall, Texas, Judge Gilstrap continued in-person jury trials through February 2021 because of the "dangerously rising rate of increase in COVID-19

cases and swelling hospitalizations in this district and across the country."  Ex. 26 at 2.

Intel's request is not for an indefinite continuance: two COVID-19 vaccines are likely to be available as early as December.  Intel's trial team includes persons who are at high risk of severe illness or death from COVID-19 or have family members in high-risk groups.  Absent a continuance, trial will require these persons—and numerous other attorneys, staff, witnesses, and client representatives—to travel to trial, placing themselves, their families, the Court and its staff, and the local community at risk.  It may also force some witnesses to testify remotely.

Under these exceptional circumstances, Intel respectfully asks that the Court order a continuance to allow the present COVID-19 surge to pass and for vaccines to become available.

## I.     LEGAL STANDARD

Motions for continuance may be granted for "good cause" in the trial court's discretion. Fed. R. Civ. P. 16(b)(4); *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1193 (5th Cir. 1986); *see Clinton v. Jones*, 520 U.S. 681, 707 (1997) ("[I]n cases of extraordinary public moment, [plaintiff] may be required to submit to [reasonable] delay…if the public welfare or convenience will thereby be promoted." (citation omitted)).  In assessing good cause, courts consider the (1) explanation for the requested extension; (2) importance of the extension; (3) potential prejudice to the non-moving party from the extension; and (4) availability of a continuance to cure such prejudice.  *Sw. Refrigerated Warehousing Servs. Joint Venture v. M.A. & Sons, Inc.*, 2017 WL 8777393, at *3 (W.D. Tex. 2017); *see Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003).  "No single factor is dispositive, nor must all the factors be present." *Sapp v. Mem'l Hermann Healthcare Sys.*, 406 Fed. App'x 866, 869 (5th Cir. 2010).  Courts also evaluate "the totality of the circumstances," and factors including "the likelihood of prejudice from denial of the motion, the facts of the particular case, the complexity of the case, and all of the demands on counsel's time and the court's." *Wade v. Donahoe*, 2015 WL 151455, at *1 (E.D. La. 2015).

Several courts have continued trials in view of the present surge in COVID-19 pandemic. *See, e.g.*, Ex. 26 (*Solas OLED Ltd. v. Samsung Display Co.*, No. 2:19-CV-00152-JRG, slip op. at 3 (E.D. Tex. Nov. 20, 2020), ECF No. 302 (Gilstrap, J.) ("[T]he current status of the public health in the Marshall Division of the Eastern District of Texas requires [the Court] to CONTINUE all in-person jury trials.")); Ex. 64 (*Ramot at Tel Aviv Univ. Ltd. v. Cisco Sys., Inc.*, No. 2:19-cv-00225 (E.D. Tex. Nov. 20, 2020), ECF No. 203); *see also* Ex. 54 at 2 (Judge Schroeder reset December 7 trial in *Maxell, Ltd. v. Apple Inc.* to March).

## II.   ARGUMENT

Good cause exists for Intel's request. The pandemic has entered a dangerous new wave, with COVID-19 cases surging in McLennan County, Texas, and throughout the country.[1] Courts that had previously conducted in-person jury trials during the pandemic have recognized these changes require briefly continuing trials. And the impending availability of vaccines means a short continuance is likely to result in safer conditions for trial. Although VLSI will not be prejudiced by this short delay, Intel—and its right to a fair trial—would be prejudiced by pressing forward in January 2021. The trial should be continued.

### A.   A Continuance Will Protect Important Interests in Safety and Health.

Intel's explanation for its requested continuance and the importance of the continuance strongly favor granting Intel's motion. The current pandemic is surging to dangerous levels in McLennan County, in Texas, and throughout the country, and even the most diligent safeguards cannot adequately reduce the risk of holding jury trials at this time. Particularly in view of the circumstances of multiple witnesses and attorneys in this case that increase their risk of serious illness or death due to COVID-19, a continuance is justified and of paramount importance.

---

[1] This motion discusses McLennan County (the site of the Waco courthouse), but the surge in cases and resulting risk are also present in Austin. Active COVID-19 cases in Travis County rose to 2,726 as of November 25—the highest number since July 20. Columbus Decl. ¶ 13.

**1.      The Rate of COVID-19 Cases and Deaths Is Rising Dangerously in McLennan County, Texas, and the United States.**

Before September, the Waco courthouse was closed to in-person jury trials because of COVID-19 case rates that were similar to current conditions.   As Dr. Columbus explains, McLennan County is experiencing a surge in cases.  Columbus Decl. ¶ 14.  As of November 25, the current number of active cases has risen to 1,408.  *Id.*  "[N]ew daily cases are increasing and trending toward the highest reported numbers of cases since July" and the rolling 7-day average of new cases per 100,000 McLennan County residents almost ***tripled*** between the 7-day periods ending on October 31 and November 25.  *Id.* ¶¶ 14, 16.  Dr. Jackson Griggs, Waco Family Health Center CEO, stated at a November 25 Waco press conference that "[o]n a per capita basis, [McLennan] county is seeing significantly more new cases than both the state and the country as a whole."  Ex. 59 at 3.  The County is operating under a public state of disaster and public health emergency, Ex. 23 at 1, with 50 of Waco-McLennan County's 54 ICU beds occupied as of November 25.  Columbus Decl. ¶ 31.  To fight this surge, institutions throughout Waco are closing.  Texas state, county, and municipal courts in Waco have continued jury trials through February.  *See* Ex. 50 at 2-3, 5.  On November 29, the Department of State Health Services ordered business occupancy restrictions in McLennan County under Governor Abbott's order due to high hospitalization rates.  Ex. 70 at 1; *see* Ex. 60 at 1.

Cases throughout Texas and the United States are similarly rising at dangerous rates.  In Texas, cases have increased substantially since August.  Columbus Decl. ¶ 12.  On November 25, Texas reported over 15,609 new cases and 200 deaths.  *Id.*  And "[t]he increase in COVID-19 cases across the United States is at its highest level since the start of the pandemic."  *Id.* ¶ 11.  Over 1.2 million new cases were reported between November 19 and November 25.  *Id.*  Total deaths exceed 265,000.  *Id.*  This trend is expected to increase after the holidays.  *Id.* ¶ 34.

2.    **Even With The Most Diligent Safeguards There Is A Significant Risk to Participants in a January 11, 2021 Trial.**

Courts that, like this Court, had previously been conducting in-person jury trials with safety protocols have recently paused in view of the current surge.  Judge Schroeder, who held trials in October, recently continued the December 7 trial in *Maxell, Ltd. v. Apple Inc.* to March. Ex. 54 at 2; *see* Ex. 51 at 1 (Texarkana courthouse currently closed "out of concern for the health and safety of court employees, parties having business with our courts, and the public").  Judge Mazzant, who had also held trials in the late summer and fall, has continued all 2020 trials after a COVID-19 outbreak caused a mistrial in *ResMan LLC v. Karya Property Management LLC*.  Ex. 53 at 1-2.  In *ResMan*, 15 trial participants contracted COVID-19 "***despite*** the court['s] [COVID-19] protocols," Ex. 52 at 1, which included temperature checks, physical barriers, mask-wearing, and social distancing.[2]   Ex. 53 at 2.  Judge Gilstrap has also paused in-person trials, despite holding such trials from August to November and "much effort [] expended ... to develop extensive safety precautions and protocols[.]"  *Solas*, slip op. at 1, 2 & n.3, 3 (continuing in-person jury trials in Marshall Division through February 2021 because "dangerously rising rate of increase in COVID-19 cases and swelling hospitalizations in this district and across the country" present a "changing reality"); *see also* Ex. 63 (*Oyster Optics, LLC v, Infera Corp.*, No. 2:19-cv-00257, slip. op. at 3 (E.D. Tex. Nov. 20, 2020), ECF No. 209) (resetting January 4 trial to April 5).

Many other courts have acknowledged that, in the current circumstances, even stringent precautions may not address the significant risk of COVID-19 spreading during trials.  **25**

---

[2] Similar events have occurred throughout the nation.  *See* Ex. 65 at 1-2 ("[t]wenty-three courthouse employees have tested positive for [COVID-19] after an infected juror sat on a murder trial" in Albany, Georgia—"[o]ne of them, Dougherty County Probate Judge Nancy Stephenson[,] died April 1"); Ex. 66 at 1 (October 22 report that Jefferson County, Texas trial put "on pause" because "[a]t least one juror has tested positive for COVID-19"); Ex. 67 at 1 (D. Minn. trial postponed on November 16 "after a jury member tested positive for COVID-19").

*federal courts in 21 states*, including those that had previously conducted in-person jury trials during the pandemic, closed their courts to jury trials just before November 20.  *See* Ex. 32 at 1 ("25 U.S. district courts … have *closed jury trials again because of the COVID-19 spike*"); *see also* Ex. 62 at 1 (Nov. 18 order continuing 2020 N.D. Texas trials due to "significant increases in reported COVID-19 cases").  The Supreme Court of Texas ordered that no justice or municipal court may hold in-person jury proceedings prior to February 1, Ex. 50 at 2, and McLennan County's senior state district court judge delayed jury trials "until next year at the earliest …. because the county's current case count and positivity rate have surpassed the numbers that originally motivated the courts to delay trials …."  Ex. 55 at 2 ("… Dr. Farley Verner, the Waco-McLennan County Public Health District's public health authority, told [Judge] Strother trials would be unsafe."); *see also* Ex. 61 at 2 (no Travis County district court trials until March 2021).

Although Intel recognizes the safeguards that this Court implemented to conduct jury trials in the past few months, this Court's previous in-person trials during the pandemic used many of the same measures that unfortunately proved inadequate in Judge Mazzant's trial during the present surge.  Neither the implementation of robust safety protocols nor recent incident-free trials justify pressing forward with trials now in light of dangerous increases in COVID-19 cases.

The decisions in E.D. Texas confirm that a continuance should be granted here.  COVID-19 is *more* prevalent in McLennan County than it was in Sherman or Harrison (Marshall courthouse) Counties and nearly as prevalent as in Bowie (Texarkana courthouse).  Columbus Decl. ¶¶ 32 ("number of active cases in Sherman County was 6 (0.19 percent of the population) [at time of mistrial] compared to McLennan County's 1,408 as of November 25 (0.57 percent of the population)"), ¶ 21 ("the infection rate on November 25 was 0.15% in Harrison County and 0.53% in McLennan County"), ¶ 18 ("As of November 25, 2020, the infection rate was 0.60% in

Bowie County and 0.53% in McLennan County."). Moreover, the pandemic has materially *worsened* in McLennan County since the Waco Division resumed trials. *Id.* ¶ 20 ("active cases ha[ve] almost *tripled*" in McLennan County since a trial held October 14). With recent and upcoming holidays, "there is a substantial risk that this trend of increasing cases will continue throughout the end of the year and … early January …." *Id.* ¶ 34.

### 3. The Health and Safety of Trial Participants and the Community Are Unduly at Risk If Trial Proceeds in January 2021.

Proceeding with the January 11 trial would create an undue risk that jurors, court staff, witnesses, and counsel may become infected with COVID-19 and that infections would further spread in the community. Trial would cause attorneys, staff, witnesses, and client representatives to travel from locations throughout the country, including Massachusetts, Arizona, Colorado, California, Florida, Illinois, Maryland, New York, Oregon, Pennsylvania, and Washington, D.C. Declaration of William F. Lee ("Lee Decl.") ¶ 5. One of Intel's witnesses expects to travel from Israel. *Id.* ¶ 7. Jurors would travel to trial from multiple counties. Participants would gather in enclosed spaces for prolonged periods of time. All this would occur shortly after many participants gathered with families for holidays.

The air travel required for most trial participants exacerbates already significant risks of a January 11 trial. Columbus Decl. ¶ 30 (explaining current risks of air travel, including participants travelling through nation's busiest airports; arrival in Dallas/Fort Worth, which is "also undergoing a surge"; and difficulty of social distancing on crowded flights). Among the Intel trial team and witnesses, multiple individuals are at a high risk of severe illness or death if they contract COVID-19, or have family members with such high risk. Lee Decl. ¶¶ 3, 8-10.

In the present COVID-19 situation, "there is a *74%* likelihood of at least one person having COVID-19 from a group of 50 people gathered in McLennan County." Columbus Decl.

7

¶ 28.  For these and other reasons, Dr. Columbus concludes: "if jury selection and a trial proceed on January 11, 2021 … there is a substantial risk that one or more participants will contract SARS-CoV-2, which may result in transmission of the virus to other participants, individuals in the local community…, and/or to communities outside of Texas where trial participants will return after trial." *Id.* ¶ 33.  This risk and its important consequences strongly favor continuance.

### B.     Considerations of Prejudice and Length of Delay Favor a Continuance.

In addition to the importance of health and safety, additional factors that bear on the totality of the circumstances—including the expected length of the continuance, lack of prejudice to VLSI, potential waste of resources, and prejudice to Intel—also favor a continuance.

#### 1.     A Continuance Is Expected to Be Brief as Vaccines Are Expected to Be Available Shortly.

A short continuance will allow time for the current COVID-19 surge to subside and—critically—for the recently reported COVID-19 vaccines to become available.  A modest delay will permit the parties, the Court, and the jury to try this case more safely.  Reporting indicates that highly effective COVID-19 vaccines are nearly ready.  *See* Columbus Decl. ¶ 22 ("Two pharmaceutical companies have recently reported that their COVID-19 vaccines are about 95% effective.").  An advisor to Operation Warp Speed recently estimated that vaccine distribution may begin as early as December.  Ex. 56 at 2.  And Governor Abbott has confirmed that Texas is preparing to "swift[ly] distribut[e] COVID-19 vaccines[.]"  Ex. 40 at 2; *see* Ex. 41 at 1.  "[W]hen a vaccine is available and widely distributed and administered it will reduce the risk of COVID-19 infection for all involved."  Columbus Decl. ¶ 36.  Further, availability of a vaccine is likely to tamp down the current pandemic surge.  *Id.*  A brief continuance of the trial would allow the jury, the Court and its staff, and the parties to benefit from these positive developments.

#### 2.     A Brief Continuance Will Not Prejudice VLSI.

8

VLSI will not be prejudiced by a brief continuance.  *First*, a trial in spring 2021 would occur approximately two years after VLSI filed its April 11, 2019 complaint—faster than the national median time-to-trial for civil cases (28.4 months), Ex. 57 at 1, and the average time to trial for U.S. District Court judges with the heaviest patent dockets (*e.g.*, Connolly, J.—32.0 months; Gilstrap, J.—25.6 months; Stark, J.—47.9 months; Noreika, J.—28.8 months), s*ee* Ex. 58.  *Second*, because VLSI does not practice the asserted patents, it can be fully compensated for any alleged infringement by monetary damages.  *See Spa Syspatronic, AG v. Verifone, Inc.*, 2008 WL 1886020, at \*2 (E.D. Tex. 2008) (stay appropriate because "damages and pre-judgment interest provide an adequate measure of relief").  There are three patents in suit, and the most recent to issue was issued on April 10, 2012—more than seven years before VLSI filed its complaint.  D.I. 1, ¶ 8.  Some of the accused products have been on sale since early 2012.  VLSI only acquired the patents on December 22, 2018 and February 1, 2019.  A delay of a few months to avoid serious health and safety risks would not result in any real prejudice to VLSI.  *See Crossroads Sys., Inc. v. Dot Hill Sys. Corp.*, 2015 WL 3773014, at \*2 (W.D. Tex. 2015) ("[M]ere delay in collecting [] damages does not constitute undue prejudice.").

### 3.    Proceeding in January Risks Wasting Substantial Resources.

Preparation for and execution of a complex patent trial involving dozens of attorneys, witnesses, and stakeholders will require significant expenditure of time and resources—and even more to account for pandemic safety protocols.  Jurors and Court personnel will devote substantial time to hear this case.  This investment may be for naught and may need to be repeated if trial is adjourned or a mistrial is declared in view of COVID-19 exposure, as occurred in Sherman.  This risk of wasted resources is not justified when a short continuance is available.

### 4.    Intel Would be Prejudiced and Its Due Process Rights Jeopardized If a Continuance Is Not Granted.

Intel would be significantly prejudiced if trial proceeds on January 11, and its due process rights may be undermined.  In addition to the risks above, Intel would be prejudiced because at least two of its witnesses will not travel for a January 11 trial, Lee Decl. ¶ 3, and multiple others have expressed significant reluctance to do so, *id.* ¶¶ 2, 4.  These witnesses' health conditions place them at high-risk for COVID-19-related complications, and they are not comfortable traveling in current conditions.  *Id*. ¶ 3.  In addition, one witness lives in Israel, and his ability to travel to trial could be impacted by COVID-19 related travel restrictions.  *Id.* ¶ 7.  Absent the pandemic, Intel would present each of these witnesses live.  But should trial proceed in January, Intel likely will need to seek to present these witnesses virtually.  *Id.* ¶ 3.  This would deprive Intel of the ability to present its case in the manner it prefers and may be less effective.  *See Solas*, slip op. at 3 n.4 ("[T]he remote, sterile, and disjointed reality of virtual proceedings cannot at present replicate the totality of human experience embodied in and required by our Sixth and Seventh Amendments.").  In view of the high stakes, where VLSI demands billions of dollars in damages, such restriction would undermine Intel's due process rights.  *See Hardy v. Johns-Manville Sales Corp.*, 681 F.2d 334, 338 (5th Cir. 1982) (due process safeguards "right to a full and fair opportunity to litigate an issue"); *Thompson v. Madison Cty. Bd. of Educ.*, 476 F.2d 676, 678 (5th Cir. 1973) (defendant must have opportunity "to present evidence and argument on the contested facts and legal issues").  It would also risk prejudice to Intel, as jurors—appearing in-person—may be upset that Intel witnesses did not travel during the pandemic.

Respectfully, Intel's ability to defend itself should not be prejudiced when a short continuance will increase the likelihood that its witnesses can appear in person.  The risk of prejudice to Intel and its right to a fair trial far outweighs any prejudice to VLSI.

## III.  CONCLUSION

Intel respectfully requests that the January 11 trial is continued until after March 2021.

Dated: November 30, 2020

OF COUNSEL:

William F. Lee (*Pro Hac Vice*)
Louis W. Tompros (*Pro Hac Vice*)
Kate Saxton (*Pro Hac Vice*)
WILMER CUTLER PICKERING HALE
  & DORR LLP
60 State Street
Boston, Massachusetts 02109
Tel: (617) 526-6000
Email: william.lee@wilmerhale.com
Email: louis.tompros@wilmerhale.com
Email: kate.saxton@wilmerhale.com

Gregory H. Lantier (*Pro Hac Vice*)
Amanda L. Major (*Pro Hac Vice*)
Joshua Stern (*Pro Hac Vice)*
WILMER CUTLER PICKERING HALE
  & DORR LLP
1875 Pennsylvania Avenue
Washington DC 20006
Tel: (202) 663-6000
Email: gregory.lantier@wilmerhale.com
Email: amanda.major@wilmerhale.com
Email: joshua.stern@wilmerhale.com

Respectfully submitted,

*/s/ J. Stephen Ravel*
J. Stephen Ravel
Texas State Bar No. 16584975
KELLY HART & HALLMAN LLP
303 Colorado, Suite 2000
Austin, Texas 78701
Tel: (512) 495-6429
Email: steve.ravel@kellyhart.com

James E. Wren
Texas State Bar No. 22018200
1 Bear Place, Unit 97288
Waco, Texas 76798
Tel: (254) 710-7670
Email: james.wren@baylor.edu

*Attorneys for Intel Corporation*

## CERTIFICATE OF CONFERENCE

Defendant Intel Corporation's counsel conferred with opposing counsel regarding the foregoing Motion, and opposing counsel indicated Plaintiff is opposed to the Motion. Accordingly, this Motion and the relief requested herein are presented to the Court for resolution.

*/s/ J. Stephen Ravel*
J. Stephen Ravel

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of the foregoing document via the Court's CM/ECF system on November 30, 2020.

*/s/ J. Stephen Ravel*
J. Stephen Ravel
