**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| VLSI TECHNOLOGY LLC,<br><br>      Plaintiff,<br><br>v.<br><br>INTEL CORPORATION,<br><br>      Defendant | Lead Case: 1:19-cv-977-ADA<br><br>(*Consolidated for pretrial purposes only* *with* Nos. 6:19-cv-254-ADA, 6:19-cv-255-ADA, 6:19-cv-256-ADA) |

**DEFENDANT INTEL CORPORATION'S OPPOSITION TO PLAINTIFF VLSI
TECHNOLOGY LLC'S EMERGENCY MOTION TO TRANSFER VENUE BACK TO
<u>WACO PURSUANT TO 28 U.S.C. § 1404(a)</u>**

## TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................................. 1

II.  BACKGROUND ............................................................................................................... 1

III. ARGUMENT..................................................................................................................... 3

      A.    Retransfer From Austin To Waco Is Impermissible Under *Cragar*. ...................... 3

            1.   Unanticipatable post-transfer events have not frustrated the original purpose of transferring this case to Austin. ............................................................................. 3

            2.   This Court should reject VLSI's arguments regarding *Cragar*. .............................. 4

      B.    The Private And Public Interest Factors Do Not Support Retransfer Under § 1404(a). ...................................................................................................................... 6

IV. CONCLUSION................................................................................................................. 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.*,
  809 F.3d 1282 (Fed. Cir. 2015) ................................................................................................5

*Asbury v. Germania Bank*,
  752 F. Supp. 503 (D.D.C. 1990) ..............................................................................................10

*Gorzynski v. JetBlue Airways Corp.*,
  10 F. Supp. 3d 408 (W.D.N.Y. 2014) ....................................................................................5, 6

*In re Adobe Inc.*,
  823 F. App'x 929 (Fed. Cir. 2020) .............................................................................................9

*In re Apple Inc.*,
  979 F.3d 1332 (Fed. Cir. 2020) ..................................................................................................9

*In re Cragar Industries, Inc.*,
  706 F.2d 503 (5th Cir. 1983) ............................................................................................ *passim*

*In re Gibson*,
  423 F. App'x 385 (5th Cir. 2011) ...............................................................................................2

*In re Volkswagen AG*,
  371 F.3d 201 (5th Cir. 2004) ....................................................................................................10

*In re Intel Corp.*,
  __ F. App'x __, 2020 WL 7647543 (Fed. Cir. Dec. 23, 2020) ...................................... *passim*

*JTH Tax, Inc. v. Mahmood*,
  2010 WL 2175843 (N.D. Miss. May 27, 2010) .........................................................................3

*Odem v. Centex Homes*,
  2010 WL 2382305 (N.D. Tex. May 19, 2010) ..........................................................................9

**Statutes and Rules**

28 U.S.C. §1404(a) ........................................................................................................... *passim*

28 U.S.C. §1404(b) ..............................................................................................................................2

Federal Rule of Civil Procedure 77(b) ...............................................................................................2

**Other Authorities**

*COVID-19 Hospitalization Rate Continues to Worsen in Laredo, Already the Highest in Texas*, https://www.lmtonline.com/news/article/COVID-19-hospitalization-rate-continues-to-worsen-15830599.php (last visited Dec. 28, 2020) ...........10

Fortress: Overview, https://www.fortress.com/about (last visited Dec. 28, 2020) ...........9

*Texas COVID-19 Data, Estimated Active Cases over Time by County*, https://dshs.texas.gov/coronavirus/additionaldata.aspx (last visited Dec. 25, 2020) ...........10

*Texas COVID-19 Data, New Confirmed Cases over Time by County*, https://dshs.texas.gov/coronavirus/additionaldata.aspx (last visited Dec. 25, 2020) ...........10

*Waco-McLennan County COVID-19 Statistics*, http://covidwaco.com/county (last visited Dec. 25, 2020) ...........10

I.  **INTRODUCTION**

In its mandamus order, the Federal Circuit explained that a proper retransfer analysis must be "based on the traditional factors bearing on a § 1404(a) analysis" and must show "that 'unanticipated post-transfer events frustrated the original purpose for transfer' of the case from Waco to Austin originally." *In re Intel Corp.*, 2020 WL 7647543, at *3 (Fed. Cir. Dec. 23, 2020) (quoting *In re Cragar Indus., Inc.*, 706 F.2d 503, 505 (5th Cir. 1983)).  The Federal Circuit also instructed that "[s]uch analysis should take into account the reasons of convenience that caused the earlier transfer to the Austin division." *Id.*  Applying these standards, it is clear that this case should stay in Austin.  The Court should decline VLSI's "emergency" request to retransfer the case to Waco, which would be completely unjustified and would only be an invitation to error.

This Court's original transfer to Austin was based on the Court's determination that Austin is "clearly more convenient" than Waco under § 1404(a) because of Austin's strong nexus to this case.  For example, the Court found that the "relative ease of access to sources of proof," the "cost of attendance," and the "localized interests" all favor Austin over Waco. Dkt. 78 at 5-10.  The Court's determination that Austin is clearly more convenient was correct at the time of the original transfer order and remains so today, and none of the underlying reasons for that determination have been frustrated by the Austin courthouse's temporary closure due to COVID-19.  Indeed, under § 1404(a), the present circumstances favor Austin ***more now*** because the COVID-19 risks are worse in Waco than in Austin.  It would therefore contravene the public interest to have the parties, witnesses, court staff, and Waco jurors risk their health and safety to try a case in Waco that implicates what this Court has correctly determined are issues relating to Austin.  The "interest of justice" requires retaining this case in Austin.

II.  **BACKGROUND**

On October 7, 2019, this Court granted Intel's motion for intra-district transfer from the

1

Waco Division to the Austin Division under 28 U.S.C. § 1404(a), finding that Austin was "clearly more convenient" than Waco because Austin has several connections to this case, whereas Waco has none. Dkt. 78 at 10. A year later, on October 9, 2020, the Court requested briefing addressing whether it had authority to transfer the case back to Waco to hold trial. Dkt. 367-73. In its brief, Intel explained that retransferring the case to Waco was not permissible under the governing legal standard established by *Cragar*, as the facts that formed the basis for the Court's original transfer ruling had not changed and the Austin courthouse's temporary closure did not frustrate the purpose of the original transfer. Dkt. 281 at 3-7. VLSI, by contrast, argued that the Court could in its discretion hold trial anywhere in the District, including Waco, under 28 U.S.C. § 1404(b) and Federal Rule of Civil Procedure 77(b). Dkt. 282 at 6.

On November 20, 2020, this Court entered a written order, holding that "pursuant to [Rule] 77(b) and the Court's inherent authority, … if the Austin courthouse does not reopen with enough time to hold a January trial, the trial for the -00254 case will be held in Waco." Dkt. 352 at 8. The Court also stated that "its conclusion is fully in accord with the guidance provided in *Cragar* and that *Cragar* is factually distinguishable from the instant case." *Id.* at 6-8.

Intel filed a petition for a writ of mandamus. Dkt. 393-40. On December 23, 2020, the Federal Circuit granted Intel's petition and vacated this Court's retransfer order. *Intel*, 2020 WL 7647543, at *3. The Federal Circuit held that neither Rule 77(b) nor this Court's "inherent authority for docket management … authorizes the order at issue[.]" *Id.* at *1. The Federal Circuit also rejected VLSI's reliance on § 1404(b) because "by its terms, [it] applies only when all of the parties consent." *Id.* at *2 (quoting *In re Gibson*, 423 F. App'x 385, 389 (5th Cir. 2011)). The Federal Circuit further explained that a proper retransfer analysis must be "based on the traditional factors bearing on a § 1404(a) analysis" and must show "that 'unanticipated post-

2

transfer events frustrated the original purpose for transfer' of the case from Waco to Austin originally." *Id.* at *3 (quoting *Cragar*, 706 F.2d at 505). The Federal Circuit instructed that "[s]uch analysis should take into account the reasons of convenience that caused the earlier transfer to the Austin division." *Id.* On the same day as the Federal Circuit's order, VLSI filed this motion to retransfer from Austin to Waco. Dkt. 400.

### III. ARGUMENT

Under Fifth Circuit law, this Court's October 2019 order transferring the case from Waco to Austin should be treated as "the law of the case[.]" *Cragar*, 706 F.2d at 505. Once a transfer is ordered, a court "should not re-transfer 'except under the most impelling and unusual circumstances.'" *Id.* More specifically, retransfer is appropriate only when "unanticipatable post-transfer events frustrate the original purpose for transfer[.]" *Id.* Even where *Cragar* is satisfied, retransfer must also promote the private and public interest factors under § 1404(a). *See JTH Tax, Inc. v. Mahmood*, 2010 WL 2175843, at *2 (N.D. Miss. May 27, 2010).

In its mandamus order, the Federal Circuit made clear that to retransfer from Austin to Waco, both *Cragar* and § 1404(a) must be satisfied. *Intel*, 2020 WL 7647543, at *3. Here, retransfer from Austin to Waco is not appropriate under either *Cragar* or § 1404(a), and this Court should reject VLSI's arguments to the contrary.

### A. Retransfer From Austin To Waco Is Impermissible Under *Cragar*.

#### 1. Unanticipatable post-transfer events have not frustrated the original purpose of transferring this case to Austin.

As the Federal Circuit explained, an analysis of whether "unanticipated post-transfer events frustrate the original purpose for transfer" under *Cragar* "should take into account the reasons of convenience that caused the earlier transfer to the Austin division." *Intel*, 2020 WL 7647543, at *3. While the Austin courthouse's temporary closure due to COVID-19 was

3

unanticipatable, it did not frustrate the underlying purpose of this Court's original transfer order because that transfer order was not based on time-to-trial considerations.

Instead, this Court's original transfer order was based on the fact that Austin's strong nexus to the case made the "relative ease of access to sources of proof," the "cost of attendance," and the "localized interests" all favor Austin over Waco. Dkt. 78 at 5-10. This Court found that each of those factors favored Austin over Waco because "Intel has a campus in Austin, but not in Waco," "Intel employs a significant number of people working in Austin," most of the named inventors "reside in Austin while none reside in Waco," and "most of the patents were invented in Austin, by inventors residing in Austin, while working at companies (Freescale and Sigmatel, now NXP) in Austin." *Id.* None of these factors or the key facts underlying them have been affected by the Austin courthouse's temporary closure, and VLSI does not argue otherwise. Instead, the only "changed circumstances" VLSI identifies as relevant to these factors are those that reflect that this case is nearing trial. Dkt. 400 at 5-6. But these "changed circumstances" are not "unanticipatable" and have nothing to do with the Austin courthouse's temporary closure.

Thus, the Austin courthouse's temporary closure has not frustrated the original transfer order's purpose—which was to have this case litigated and decided in Austin because the case has many connections to Austin and none to Waco. That purpose can still be given full effect by keeping the case in Austin and conducting the trial in Austin when the courthouse there reopens.

        **2.    This Court should reject VLSI's arguments regarding *Cragar*.**

VLSI summarily asserts that this "Court has already found that the purpose of [its] original transfer order transferring the case from Waco to Austin *will* be frustrated because the Austin courthouse is now closed indefinitely." Dkt. 400 at 10. But the Federal Circuit vacated this Court's retransfer decision, explaining that any *Cragar* analysis "should take into account the reasons of convenience that caused the earlier transfer to the Austin division." *Intel*, 2020

4

WL 7647543, at *3. VLSI does not even attempt to do that. *See* Dkt. 400 at 8-10. Instead, VLSI argues that "the [original] transfer to Austin will substantially delay the trial date in this case because the Austin Division's courthouse is presently not holding any civil trials due to the pandemic." *Id.* at 2-3. But this Court did ***not*** rely on any time-to-trial considerations in ordering transfer to Austin, *see* Dkt. 78, and VLSI cites nothing indicating otherwise. Accordingly, a brief delay in the trial date will not frustrate the purpose of transferring this case to Austin in the first place. *Supra* pp. 3-4.[1]

VLSI also attempts to distinguish *Cragar* on its facts and asserts that "the concerns discussed in *Cragar* do not apply here." Dkt. 400 at 8-9. But VLSI cannot evade *Cragar*'s reach by identifying minor factual differences between *Cragar* and this case. *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 809 F.3d 1282, 1288 (Fed. Cir. 2015) (Dyk, J., concurring) (courts may not "confine [controlling precedent] to its facts or otherwise cabin a clear statement" from an appellate court). In any event, VLSI's alleged factual distinctions between *Cragar* and this case—for example, that "Intel, not VLSI, moved … to transfer [the case] to Austin," and that "this Court … is not transferring [the case] to another judge"—simply have no bearing on the substantive analysis. Dkt. 400 at 8-9. They in no way suggest, much less establish, that the Austin courthouse's temporary closure frustrated the original transfer order's purpose.

Finally, VLSI asserts that *Gorzynski v. JetBlue Airways Corp.*, 10 F. Supp. 3d 408 (W.D.N.Y. 2014), is instructive. Dkt. 400 at 9-10. But *Gorzynski* actually supports ***Intel's*** position, not VLSI's. In *Gorzynski*, the transferor court originally transferred the case, which

---

[1] While VLSI asserts that "Intel argued that transferring the case to Austin would expedite its resolution," Dkt. 400 at 9, this Court did not adopt any such reasoning. *See* Dkt. 78 at 9. Moreover, VLSI mischaracterizes Intel's arguments, which were simply that because Austin is a more convenient forum, transfer ***could*** expedite aspects of the case, and that at the time of briefing there was "no reason to believe" trial would proceed more quickly in Waco. Dkt. 56 at 9.

had been pending for ten years, to another division solely "to expedite the trial of th[e] action." 10 F. Supp. 3d at 409-410, 413-414.  Because there was no post-transfer event that frustrated that purpose, the court *denied* the motion to retransfer the case back to the original forum.  *Id.*  Here, this Court's original transfer ruling had nothing to do with time-to-trial considerations, and was based on other factors that favored Austin over Waco due to Austin's strong nexus to the case.  *See supra* pp. 3-4.  The inability to get this case to trial as quickly in Austin (compared to Waco) therefore has no impact on the purpose of the Court's original transfer.  Thus, like *Gorzynski*, post-transfer events have *not* frustrated the purpose of this Court's original transfer, which can still be given full effect by trying this case in Austin when the courthouse there reopens.

### B. The Private And Public Interest Factors Do Not Support Retransfer Under § 1404(a).

Even were VLSI able to meet the *Cragar* standard for retransfer, retransfer from Austin to Waco would still not be appropriate under § 1404(a).  This Court found in its original transfer order that Austin is "clearly more convenient" than Waco under § 1404(a) because Austin, unlike Waco, has substantial connections to this case and a strong localized interest in deciding it.  Dkt. 78 at 5-10.  This determination was correct at the time and remains so today.  VLSI's arguments to the contrary should be rejected because, among other reasons, they improperly elevate time-to-trial considerations while ignoring the current state of the COVID-19 pandemic.

First, the Court previously found that Austin "has a greater localized interest" than Waco, and that remains equally true today.  *See* Dkt. 78 at 9-10.  As VLSI acknowledges, the facts relating to localized interest "have not changed materially since the Court's October 2019 ruling."  Dkt. 400 at 8.  Intel still has a campus in Austin, the patents-in-suit still originated in Austin at companies based in Austin, nearly all the named inventors still reside in Austin, and Austin still has a localized interest in deciding this case.  *See* Dkt. 78 at 2-3, 9-10.  By contrast,

Waco has no local interest in the case. *See id.* Thus, for the same reasons previously found by the Court, the "localized interest" factor strongly favors keeping the case in Austin.

Second, consistent with the Court's previous determination, the "cost of attendance" factor still strongly favors Austin. *See* Dkt. 78 at 7-9. While no witnesses live in Waco, the parties either expect to call or may call four trial witnesses who live in the Austin area, including two inventors of the asserted patents (Messrs. Bearden and Zhang); an employee of VLSI (Ms. Simpson); and an employee of third-party NXP (Mr. Chastain), the company from which the patents originated. *See* Dkt. 398-4 at 2; Dkt. 398-5 at 2-4. VLSI asserts that "VLSI will present only one inventor [Mr. Bearden] at the upcoming trial," Dkt. 400 at 6, but VLSI ignores that *Intel* may call Shayan Zhang, a named inventor on the '373 patent who lives in the Austin area (and, in fact, Intel previously sent a trial subpoena for Mr. Zhang's testimony to Irell, who represents Mr. Zhang). *See* Dkt. 398-5 at 4. In addition, VLSI asserts that "at most only a single other NXP witness is expected to testify at trial, James Spehar." Dkt. 400 at 7. But VLSI just submitted to the Court a witness list indicating that it also "may call" Lee Chastain, an NXP employee who lives in the Austin area. Dkt. 398-4 at 2. VLSI further ignores that VLSI's CTO Cindy Simpson, who lives in the Austin area, is listed as "may call" on both parties' witness lists. Dkt. 398-4 at 2; Dkt. 398-5 at 3. Moreover, the "cost of attendance" of holding a January 2021 trial in Waco is prohibitive for certain witnesses, as at least one Intel expert will not travel for a January 2021 trial due to COVID-19. *See* Dkt. 366-2 ¶¶ 2-7.

Although the parties either expect to call or may call four witnesses who live in the Austin area and no witnesses who live in Waco, VLSI still asserts that the "cost of attendance factor" favors Waco and cites this Court's statement that "Austin hotel costs are, generally, significantly more than Waco hotel costs." Dk. 400 at 7 (quoting Dkt. 78 at 8). But this Court

7

also found that "from a traffic point-of-view, Austin is more convenient," including because the federal courthouse is less than 30 minutes from Austin-Bergstrom International Airport. Dkt. 78 at 8. Thus, for the same reasons previously found by the Court, the "cost of attendance factor" strongly weighs in favor of Austin. *See id.* at 7-9.

Third, the "relative ease of access to sources of proof" factor continues to favor Austin. As the Court previously found, "given that Intel has a campus in Austin, but not in Waco, it is easier to access Intel's electronic documents from Austin than from Waco." Dkt. 78 at 5. As the Court also found, documents from third parties (including NXP and the named inventors of the asserted patents) "are relatively more accessible from Austin than Waco." *Id.* This applies to any document disputes that may arise before or during trial, just as it applied during document discovery. Thus, this factor still favors Austin over Waco for the same reasons previously provided by the Court. *See id.* at 5-6.

Fourth, the "compulsory process" factor is neutral because this Court has subpoena power over the relevant persons residing in this District whether the case is in the Austin or Waco Division. *See* Fed. R. Civ. P. 45(c)(1). VLSI asserts that this "Court found previously that" the compulsory process factor weighs in favor of Waco and that "remains true today." Dkt. 400 at 6. But this Court's analysis previously focused on the need to compel "Dallas-based non-party witnesses." Dkt. 78 at 6. There are no Dallas-based fact witnesses on either party's witness list, so this factor is now neutral. VLSI also asserts that "this factor weighs much more strongly in favor of Waco today because this Court has no power to compel witnesses to attend trial in Austin when the Austin courthouse is closed." Dkt. 400 at 6. But when the Austin courthouse reopens, this Court will have the power to compel witnesses to attend trial in Austin.

Fifth, the factors concerning "all other practical problems that make trial of a case easy,

expeditious and inexpensive" and "administrative difficulties flowing from court congestion" remain neutral. *See* Dkt. 78 at 9-10. While VLSI contends that these factors now favor retransfer because "the Austin courthouse is closed, and the action can only move forward in the Waco courthouse," its argument is based on time-to-trial considerations. Dkt. 400 at 7-8. The Federal Circuit has recently made clear, however, that the "perceived ability to more quickly schedule a trial" in one forum over another cannot receive undue weight in a § 1404(a) analysis. *In re Adobe Inc.*, 823 F. App'x 929, 932 (Fed. Cir. 2020) ("[E]ven without disturbing the court's suggestion that it could more quickly resolve this case based on its scheduling order, … the district court erred in giving this factor dispositive weight[.]"); *In re Apple Inc.*, 979 F.3d 1332, 1344 & n.5 (Fed. Cir. 2020) ("[W]here several relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all of those other factors[.]").[2] Moreover, although VLSI asserts that the Austin courthouse is "closed indefinitely," the Austin courthouse is likely to reopen in the foreseeable future when the current COVID-19 surge is expected to subside, especially in light of the recent approval of two vaccines. *See* Dkt. 367-1 ¶¶ 22, 36; Dkt. 393-1 ¶¶ 13-16, 43. And an April 2021 trial would still be faster than the national median time-to-trial for civil cases. *See* Dkt. 366-60; Dkt. 366-61.[3]

---

[2] VLSI cannot claim any prejudice from a brief delay because it can be fully compensated by money damages (if infringement is found) regardless of when trial occurs. In contrast, Intel would be unfairly prejudiced if this Court retransferred the case back to Waco at this late stage because Intel has relied on the Court's original transfer ruling in preparing its case for trial in Austin. *See Odem v. Centex Homes, Inc.*, 2010 WL 2382305, at *2 (N.D. Tex. May 19, 2010) (refusing to retransfer and finding that the defendant "would be prejudiced by retransfer at this late stage of the proceedings"), *adopted*, 2010 WL 2367332 (N.D. Tex. June 8, 2010).

[3] VLSI claims it will lose certain "nonrefundable economic investment" if the trial does not go forward in Waco in January 2021. Dkt. 400 at 3. VLSI, of course, decided to incur such costs based upon its erroneous retransfer arguments. In any event, VLSI is simply a two-person subsidiary of the massive hedge fund Fortress, which manages assets totaling $49.9 billion. *See* Fortress: Overview, https://www.fortress.com/about (visited Dec. 28, 2020). Any amounts that VLSI claims will be lost would be insignificant to Fortress.

Finally, even if it were appropriate to give significant weight to time-to-trial considerations in a § 1404(a) analysis, time-to-trial considerations cannot outweigh the other factors that this Court already found favor Austin over Waco. *See supra* pp. 6-8. If anything, the present circumstances favor Austin ***more now*** because the COVID-19 risks are worse in Waco than in Austin, as both the rolling seven-day average rate of new cases per 100,000 residents and the infection rate per 100,000 residents are worse in McLennan County (Waco) than in Travis County (Austin). Dkt. 367-1 ¶¶ 13-17.[4] It would contravene the public interest to have Waco jurors decide a case that this Court previously—and correctly—found implicates Austin issues in the best of times. It would be especially detrimental to the public interest to require Waco jurors to risk their health and safety in order to do so during a public health crisis. *See In re Volkswagen AG*, 371 F.3d 201, 206 (5th Cir. 2004) ("[J]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation."); *cf. Asbury v. Germania Bank*, 752 F. Supp. 503, 505 (D.D.C. 1990) (retaining in D.C. case involving "Illinois parties, Illinois witnesses, Illinois facts, and Illinois law … borders on a violation of due process"). This is especially true where nothing in this case is so time-sensitive as to require an earlier trial in Waco than in the proper forum when the Austin courthouse reopens. Ultimately, the "interest of justice" will only be served by retaining this case in Austin.

### IV.     CONCLUSION

The Court should deny VLSI's motion to retransfer this case from Austin to Waco.

---

[4] *See Waco-McLennan County COVID-19 Statistics*, http://covidwaco.com/county (visited Dec. 25, 2020); *Texas COVID-19 Data, New Confirmed Cases over Time by County*, https://dshs.texas.gov/coronavirus/additionaldata.aspx (visited Dec. 25, 2020); *Texas COVID-19 Data, Estimated Active Cases over Time by County*, https://dshs.texas.gov/coronavirus/additionaldata.aspx (visited Dec. 25, 2020); *COVID-19 Hospitalization Rate Continues To Worsen in Laredo, Already the Highest in Texas*, https://www.lmtonline.com/news/article/COVID-19-hospitalization-rate-continues-to-worsen-15830599.php (visited Dec. 28, 2020) (reporting "the Waco area has the second-highest [COVID-19] hospitalization rate" in Texas).

Dated: December 29, 2020

OF COUNSEL:

William F. Lee (*Pro Hac Vice*)
Louis W. Tompros (*Pro Hac Vice)*
Kate Saxton (*Pro Hac Vice*)
WILMER CUTLER PICKERING HALE
  & DORR LLP
60 State Street
Boston, Massachusetts 02109
Tel: (617) 526-6000
Email: william.lee@wilmerhale.com
Email: louis.tompros@wilmerhale.com
Email: kate.saxton@wilmerhale.com

Gregory H. Lantier (*Pro Hac Vice*)
Amanda L. Major (*Pro Hac Vice*)
WILMER CUTLER PICKERING HALE
  & DORR LLP
1875 Pennsylvania Avenue
Washington DC 20006
Tel: (202) 663-6000
Email: gregory.lantier@wilmerhale.com
Email: amanda.major@wilmerhale.com

Respectfully submitted,

*/s/ J. Stephen Ravel*
J. Stephen Ravel
Texas State Bar No. 16584975
KELLY HART & HALLMAN LLP
303 Colorado, Suite 2000
Austin, Texas 78701
Tel: (512) 495-6429
Email: steve.ravel@kellyhart.com

James E. Wren
Texas State Bar No. 22018200
1 Bear Place, Unit 97288
Waco, Texas 76798
Tel: (254) 710-7670
Email: james.wren@baylor.edu

*Attorneys for Intel Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that, on December 29, 2020, all counsel of record who are deemed to have consented to electronic service are being served with a copy of the foregoing document via the Court's CM/ECF system in accordance with Local Rule CV-5.

*/s/ J. Stephen Ravel*
J. Stephen Ravel