# IN THE UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF TEXAS

# AUSTIN DIVISION

| | |
|---|---|
| VLSI TECHNOLOGY LLC,<br><br>    Plaintiff,<br><br>v.<br><br>INTEL CORPORATION,<br><br>    Defendant. | **Lead Case:** 1:19-cv-977-ADA<br><br>(*Consolidated with* Nos. 6:19-cv-254-ADA, 6:19-cv-255-ADA, 6:19-cv-256-ADA)<br><br>**ORAL ARGUMENT REQUESTED**<br><br> |

## VLSI'S OPPOSITION TO INTEL'S MOTION FOR SUMMARY JUDGMENT OF NO PRE-COMPLAINT DAMAGES UNDER 35 U.S.C. § 287 (D.I. 258)

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................... 1

II. ARGUMENT .......................................................................................................... 1

    A. There Are Genuine Disputes Regarding Both Parties' Compliance With The Requirements Of The Marking Statute ............................................... 1

        1. Intel's Conflicting Positions On Whether Products Ever Practiced VLSI's Patents Preclude Summary Judgment ............................ 2

        2. Sigmatel's Website Identifying The '187 And '522 Patents, Including Through A Dedicated Intellectual Property Webpage And News Postings Detailing The ITC Case Involving These Patents And Sigmatel's 35XX Product Line, Preclude Summary Judgment ......................................................................................... 5

III. CONCLUSION ..................................................................................................... 10

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*A to Z Machining Serv., LLC v. Nat'l Storm Shelter, LLC*,
No. CIV-10-422-C, 2011 WL 6888543 (W.D. Okla. Dec. 29, 2011) .........................................9

*Am. Can Co. v. Dart Indus., Inc.*,
28 Fed. R. Serv. 2d 555 (N.D. Ill. 1979) ....................................................................................9

*Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*,
876 F.3d 1350 (Fed. Cir. 2017)..............................................................................................1, 2

*Golden Bridge Tech. Inc v. Apple, Inc.*,
No. 5:12-CV-04882-PSG, 2014 WL 1928977 (N.D. Cal. May 14, 2014) ................................4

*Intel Corporation et al v. Fortress Investment Group LLC et al*,
No. 3:19-cv-07651-EMC (N.D. Cal.) .........................................................................................2

*McAfee Enters., Inc. v. Ashley Entm't Corp.*,
No. 16-CV-2618, 2016 WL 4063169 (N.D. Ill. July 29, 2016)...........................................8, 10

*Mfg. Res. Int'l, Inc. v. Civiq Smartscapes, LLC*,
397 F. Supp. 3d 560 (D. Del. 2019)...........................................................................................8

*Nat'l Prods., Inc v. Arkon Res., Inc*,
No. CV 18-02936 AG (SSX), 2019 WL 1034321 (C.D. Cal. Jan. 9, 2019)....................7, 9, 10

*Rutherford v. Trim-Tex, Inc.*,
803 F. Supp. 158 (N.D. Ill. 1992) ..............................................................................................9

**Statutes**

35 U.S.C. § 287...................................................................................................................1, 2, 4, 9

35 U.S.C. § 287(a) .......................................................................................................................1, 9

\* Unless otherwise noted, internal citations and subsequent history are omitted, and emphasis is added.

\*\* Numbered exhibits are attached to the Declaration of Brian M. Weissenberg.  Lettered exhibits are attached to the corresponding expert declarations of Prof. Michael Brogioli and Prof. Glenn Reinman.

**I.      INTRODUCTION**

Intel's motion improvidently seeks to deprive VLSI of its right to trial on pre-suit damages for Intel's years-long infringement of the '522 and '187 Patents.[1]  Intel's argument ignores numerous disputed facts resulting, in part, from Intel's own inconsistent positions on this very subject.  Intel cannot even get its own story straight, let alone show that all other available facts agree with the version of Intel's story that it is now advocating for summary judgment (and they plainly do not). Beyond the admissions by Intel itself, which are alone sufficient to require denial of its motion, there are also many material facts in dispute about VLSI's and its predecessors' compliance with the marking statute.  Any (or all) of these disputed facts warrant denial of Intel's motion.

**II.     ARGUMENT**

    **A.     There Are Genuine Disputes Regarding Both Parties' Compliance With The Requirements Of The Marking Statute**

Title 35 U.S.C. § 287(a), sometimes known as the marking statute, provides that:

> Patentees, and persons making, offering for sale, or selling within the United States any patented article for or under them, or importing any patented article into the United States, may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent, or by fixing thereon the word "patent" or the abbreviation "pat." together with an address of a posting on the Internet, accessible to the public without charge for accessing the address, that associates the patented article with the number of the patent, or when, from the character of the article, this cannot be done, by fixing to it, or to the package wherein one or more of them is contained, a label containing a like notice.

Importantly, however, this marking statute cannot affect damages for a patent if there is not a product being sold or imported which is a "patented article for or under them"—i.e., if there was not a product authorized under the patent that actually practiced the patent.

---

[1] Intel's motion refers to U.S. Patent Nos. 6,366,522 (the "'522 Patent") and 6,633,187 (the "'187 Patent"), the only patents at issue in the -255 case.

As the alleged infringer and the party arguing that § 287 should be applied to limit damages, Intel "bears an initial burden of production to articulate the products it believes are unmarked 'patented articles' subject to § 287."  *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350, 1368 (Fed. Cir. 2017).  Only after Intel has met that initial burden would VLSI then need to demonstrate either that those products did not practice the patents at issue or that the products were properly marked (or, for purposes of this motion, show the existence of a genuine factual dispute on either of those subjects).  *See id.* at 1369.  "Compliance with § 287 is a question of fact."  *Id.* at 1366.

Here there are genuine disputes of material fact—including based on Intel's own stated positions but also based on historical events—regarding both (1) whether Intel has met its burden to identify patent-practicing products and (2) if so, whether VLSI and its predecessors complied with the marking statute.  Each is addressed in turn below.

### 1. Intel's Conflicting Positions On Whether Products Ever Practiced VLSI's Patents Preclude Summary Judgment

Intel concedes that it bears an initial burden to identify products "it believes are unmarked 'patented articles' subject to § 287."  *See* D.I. 258 at 5-6 (citing *Arctic Cat Inc.*, 876 F.3d at 1368).

There are genuine disputed issues of fact regarding whether Intel satisfied its burden to identify products that practiced the '522 and '187 Patents and therefore should have been marked with reference to them.  Indeed, Intel itself has taken diametrically opposing positions about that very subject at different times during the pendency of this case.  For purposes of its present motion, Intel argues that the patents were practiced by certain products sold by Sigmatel.  For other purposes, however, Intel has insisted that *no one* has ever practiced any of the claims of VLSI's patents.

As one recent example of this, Intel has filed a co-pending lawsuit in California in which it argues that by acquiring its patents VLSI ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ have violated the antitrust

laws.  *See Intel Corporation et al v. Fortress Investment Group LLC et al*, No. 3:19-cv-07651-EMC (N.D. Cal.).  In a recent hearing in that case, Intel represented that ***no one*** has ever practiced certain of VLSI's patents in any respect, including the '522 and '187 Patents:



Ex. 22 at 11:6-19.

Intel cannot have it both ways.  Either the Sigmatel products practiced the '187 and '522 Patents or they did not.  Intel's representations (repeated by the very same counsel representing Intel in this case) that ▒▒▒▒▒ is the polar opposite of its current assertion that the patents were used extensively in a very successful commercial product from Sigmatel.  At this stage, the Court is not required to sort out which (if either) of Intel's conflicting representations was accurate.  Intel has the



burden to show that there is no material dispute, and here Intel's own actions plainly show the opposite—before even considering facts from outside of Intel that raise still further material disputes.

Intel's conflicting positions were not accidental. Intel has chosen to take whatever positions were most advantageous for it in particular circumstances. Intel should not for any reason, but certainly not for purposes of summary judgment, be permitted to adjust the "facts" about key matters in whatever manner is necessary to suit its present needs. The court's decision in *Golden Bridge Tech. Inc v. Apple, Inc.*, No. 5:12-CV-04882-PSG, 2014 WL 1928977, at *12 (N.D. Cal. May 14, 2014) is instructive on this issue. There, the court confronted a similar situation in which the alleged infringer "identified particular phones allegedly triggering Section 287." *See id.* The court observed, however, that the defendant had also made conflicting arguments similar to those made by Intel here:

> Although Apple met its initial burden—it identified particular phones allegedly triggering Section 287—the disputed record makes summary judgment unwarranted. The parties dispute whether those phones practiced the asserted claims prior to the filing of this case. Much of the parties' disagreement flows from whether or not the '793 patent is essential to the HSUPA standard. Curiously, while this motion argues summary judgment on marking is warranted because the '793 patent is standards essential, Apple's motion for summary judgment of non-infringement urges the opposite. Apple's conflicting arguments confirm that summary judgment precluding pre-suit damages is not warranted.

*Id.* Under the strikingly similar facts here, and the very same logic, Intel has not shown, and cannot without genuine factual dispute, that it believes the Sigmatel products practiced the '187 and '522 Patents, thus creating a genuine dispute as to whether Intel has met its initial burden. Beyond the genuine dispute regarding Intel's initial burden, Intel's inconsistent statements also create a genuine dispute of material fact as to whether the Sigmatel products in question actually practiced the asserted patents. Intel's motion can be denied on either of these bases, without even reaching the other arguments in Intel's brief.

burden to show that there is no material dispute, and here Intel's own actions plainly show the opposite—before even considering facts from outside of Intel that raise still further material disputes.

Intel's conflicting positions were not accidental. Intel has chosen to take whatever positions were most advantageous for it in particular circumstances. Intel should not for any reason, but certainly not for purposes of summary judgment, be permitted to adjust the "facts" about key matters in whatever manner is necessary to suit its present needs. The court's decision in *Golden Bridge Tech. Inc v. Apple, Inc.*, No. 5:12-CV-04882-PSG, 2014 WL 1928977, at *12 (N.D. Cal. May 14, 2014) is instructive on this issue. There, the court confronted a similar situation in which the alleged infringer "identified particular phones allegedly triggering Section 287." *See id.* The court observed, however, that the defendant had also made conflicting arguments similar to those made by Intel here:

> Although Apple met its initial burden—it identified particular phones allegedly triggering Section 287—the disputed record makes summary judgment unwarranted. The parties dispute whether those phones practiced the asserted claims prior to the filing of this case. Much of the parties' disagreement flows from whether or not the '793 patent is essential to the HSUPA standard. Curiously, while this motion argues summary judgment on marking is warranted because the '793 patent is standards essential, Apple's motion for summary judgment of non-infringement urges the opposite. Apple's conflicting arguments confirm that summary judgment precluding pre-suit damages is not warranted.

*Id.* Under the strikingly similar facts here, and the very same logic, Intel has not shown, and cannot without genuine factual dispute, that it believes the Sigmatel products practiced the '187 and '522 Patents, thus creating a genuine dispute as to whether Intel has met its initial burden. Beyond the genuine dispute regarding Intel's initial burden, Intel's inconsistent statements also create a genuine dispute of material fact as to whether the Sigmatel products in question actually practiced the asserted patents. Intel's motion can be denied on either of these bases, without even reaching the other arguments in Intel's brief.

      **2.**    **Sigmatel's Website Identifying The '187 And '522 Patents, Including Through A Dedicated Intellectual Property Webpage And News Postings Detailing The ITC Case Involving These Patents And Sigmatel's 35XX Product Line, Preclude Summary Judgment**

Even if, contrary to fact, Intel had not made representations fundamentally opposed to the premise of its current motion, there are additional reasons why the motion should be denied. In particular, while Intel assumes that the patent numbers would have been required to be printed directly on Sigmatel's products, Intel misunderstands the nature of those products and disregards important portions of the very statute on which it relies.

To begin with, Intel argues that there is no dispute that the Sigmatel products were not marked. *See* D.I. 258 at 7. Even if there was no dispute that the marking requirement applied to such products, that would not be the appropriate inquiry under the statute. Intel overlooks that the character of the products at issue would have made it impractical to physically mark the actual Sigmatel chips. For instance, Marcus May, co-inventor on both the '522 and '187 Patents and former Sigmatel employee who worked on Sigmatel products including the 35XX product line, explained that ████████████████████████████████████████████████. Mr. May explained, for example, that ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ *See* Ex. 23, Marcus May Dep. 134:9-16; *see also, e.g.,* Ex. A, Reinman Rpt. ¶ 90 ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Ex. A, Brogioli Rpt. ¶ 99 (similar).

Given the small product size, Sigmatel reasonably gave public notice of its patents through means other than physically marking the product itself. Sigmatel did so, for example, by identifying its patents (including, explicitly, both the '187 and '522 Patents) on its publicly available website. An exemplary portion of that webpage depicting Sigmatel's U.S. patents is depicted below:



See Ex. 24; see also, e.g., Ex. A, Reinman Rpt. ¶ 89; Ex. A, Brogioli Rpt. ¶ 98.

Intel argues that this webpage fails to associate the '187 and '522 Patents with Sigmatel products. See D.I. 258 at 8. That is also incorrect, and at a minimum is factually disputed. The webpage, titled "About SigmaTel: Patented Technology," constructively placed the public on notice that Sigmatel's products are protected by its patented technology. The webpage explains that

"[i]ntellectual property *is the cornerstone* of the company's industry-leading *solutions* and *is the foundation* for allowing its customers to offer feature-rich, high-quality and competitive *products* to consumers worldwide." Ex. 24. The webpage further explains that "SigmaTel is committed to *protecting its IP* and the investments its customers make *in the technology* worldwide." *Id.* This webpage thus makes clear that Sigmatel's products, including as they appear in customers' products, are covered by Sigmatel's patented technology. At the very least, there is a genuine dispute of material fact as to whether Sigmatel's patent webpage associates Sigmatel's patents with its products. *See, e.g.*, *Nat'l Prods., Inc v. Arkon Res., Inc*, No. CV 18-02936 AG (SSX), 2019 WL 1034321, at *16 (C.D. Cal. Jan. 9, 2019) (declining to grant summary judgment where "the 'Patents and Trademarks' page lists over 100 patents, and does not identify specific patents as associated with specific NPI products").

But there is more beyond this webpage. Persons visiting the Sigmatel website would have encountered Sigmatel news postings. Such postings discussed, among other things, the ITC case involving Sigmatel and Actions Semiconductor, which involved both the '187 and '522 Patents and the 35XX product line.[3] For example, one press release, titled "International Trade Commission Confirms That Actions Semiconductor Infringes Two SigmaTel Patents; Final ITC Ruling To Be

---

[3] *See, e.g.*, Ex. 26 ("March 14, 2005 - SigmaTel, Inc. Files Formal Complaint with ITC Against Actions Semiconductor for MP3 Player Technology Patent Infringement"); Ex. 27 ("Sep 15, 2006 - SigmaTel Announces International Trade Commission Rules that Players with Infringing Actions Chips Cannot Be Imported into the United States; SigmaTel Patents Confirmed to be Valid and Infringed by Actions' Chips"); Ex. 28 ("Mar 21, 2006 – Ruling Issued in SigmaTel International Trade Commission Case; SigmaTel Patents Upheld; Judge Recommends Exclusion Order"); Ex. 29 ("Jun 20, 2006 – International Trade Commission Confirms That Actions Semiconductor Infringes Two SigmaTel Patents; Final ITC Ruling to Be Issued on September 15, 2006"); Ex. 30 ("Aug 4, 2006 – SigmaTel Press Release: ITC Issues Another Interim Ruling; Final Decision Regarding Exclusion Order Still Expected in September"); Ex. 31 ("November 7th, 2006 – International Trade Commission Rules that Players with Infringing Actions Chips Cannot Be Imported into the United States; SigmaTel Patents Confirmed to be Valid and Infringed by Actions' Chips"); Ex. 32 ("Jun 20, 2007 – SigmaTel Announces Settlement with Actions"); Ex. 33 (same).

Issued on September 15, 2006," explains that "the U.S. International Trade Commission (ITC) confirmed a previous ITC administrative law judge's ruling that Actions Semiconductor Co., Ltd. Infringes the two patents, **U.S. Patent Nos. 6,366,522 and 6,633,187**, asserted by SigmaTel Inc." *See* Ex. 34; Ex. 29.  These various news postings discussing the ITC case therefore communicated to the public that *at least* Sigmatel's '522 and '187 Patents (the only patents at issue here) covered certain of Sigmatel's products (including Sigmatel's 35XX product line, which were specifically at issue in the ITC case, as even Intel admits[4]).[5]

Intel further argues that "the Sigmatel 35XX datasheet's general reference to www.sigmatel.com is insufficient as a matter of law."  D.I. 258 at 9.  This is also incorrect.  The marking statute is not as restrictive as Intel argues.  For example, as discussed above, because the Sigmatel products were too small to be marked with a list of patents, the statute allows for a "label containing a like notice."  The plain language of "like notice" involves a degree of approximation.  The statute does not, for instance, use the words a "label containing an exact notice."  *Cf. McAfee Enters., Inc. v. Ashley Entm't Corp.*, No. 16-CV-2618, 2016 WL 4063169, at *5 (N.D. Ill. July 29, 2016) (raising the question of whether "Congress meant for the words employed in the statute to be interpreted flexibly").[6]  Indeed, courts have held that "the notice provisions of Section 287 have been

---

[4] *See, e.g.*, D.I. 258 at 6 ("There is no dispute that the Sigmatel 35XX products were sold in the United States and practiced the '522 and '187 patents. As explained above, the ITC previously found that the 35XX products practiced the '522 and '187 patents to satisfy the domestic industry requirement.").

[5] For these reasons, the Sigmatel website did more to associate the 35XX product line with the patents-at-issue as compared to the website at issue in *Mfg. Res. Int'l, Inc. v. Civiq Smartscapes, LLC*, 397 F. Supp. 3d 560, 577 (D. Del. 2019).

[6] Intel's citation to *A to Z Machining Serv., LLC v. Nat'l Storm Shelter, LLC*, No. CIV-10-422-C, 2011 WL 6888543, at *3-4 (W.D. Okla. Dec. 29, 2011), is inapposite, as the court did not consider the alternative marking provisions for products where "the character of the article" allow alternative marking measures, including the more flexible "like notice" language discussed further below.  *See* 35 U.S.C. 287(a).

liberally construed." *Am. Can Co. v. Dart Indus., Inc.*, 28 Fed. R. Serv. 2d 555 (N.D. Ill. 1979). These cases note that constructive notice does not require strict adherence, and that "§ 287 is to be realistically applied." *Rutherford v. Trim-Tex, Inc.*, 803 F. Supp. 158, 161 (N.D. Ill. 1992). The focus of the inquiry is better placed "on the notice effected by the method of marking the patented article rather than on the precise mechanistic compliance with the statute." *Id.*; *see also Nat'l Prod., Inc*, 2019 WL 1034321, at *16 (noting same case law).

Viewed through this lens, there is a genuine issue of material fact as to whether the Sigmatel 35XX datasheet satisfies the marking statute. For instance, the 35XX datasheet states that "[a]dditional product and company information can be obtained by going to the SigmaTel website at: **www.sigmatel.com**." Ex. 25 at 2 (emphasis in original); *see also, e.g.*, Ex. A, Brogioli Rpt. ¶ 98 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Ex. A, Reinman Rpt. ¶ 89. As discussed above, the Sigmatel website includes a webpage that listed Sigmatel's patents, including the '187 and '522 Patents, and various news postings discussing these patents and their assertion in an ITC case involving Sigmatel's 35XX product line. Further, "product" "information" can reasonably include, among other things, intellectual property that protects those products, including, as here, Sigmatel's 35XX product line. *See also, e.g.*, Ex. A, Reinman Rpt. ¶ 92 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ This is, therefore, not a case where "no reasonable factfinder could find compliance," as summary judgment requires. *See McAfee Enters., Inc.*, 2016 WL 4063169, at *6.

Under these circumstances, Intel's motion for summary judgment of no pre-suit damages should be denied. *Cf. Nat'l Prod., Inc*, 2019 WL 1034321, at *16 (denying summary judgment on similar facts and noting that "if the issue truly is one of first impression, placing legal limits on what constitutes marking would be inappropriate on such a significantly limited record" and that "question of compliance with the marking statute is also generally recognized as a question of fact").

### III. CONCLUSION

For the foregoing reasons, VLSI respectfully requests that the Court deny Intel's motion for summary judgment of no pre-suit damages.

Respectfully submitted,

Dated: October 22, 2020

By: ___/s/ Andy Tindel___

Morgan Chu (*pro hac vice*)
Benjamin W. Hattenbach (*pro hac vice*)
Iian D. Jablon (*pro hac vice*)
Alan J. Heinrich (*pro hac vice*)
Ian Robert Washburn (*pro hac vice*)
Amy E. Proctor (*pro hac vice*)
Dominik Slusarczyk (*pro hac vice*)
Elizabeth C. Tuan (*pro hac vice*)
Charlotte J. Wen (*pro hac vice*)
Brian Weissenberg (*pro hac vice*)
Benjamin Monnin (*pro hac vice*)
Jordan Nafekh (*pro hac vice*)
**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067
Telephone: (310) 277-1010
Facsimile: (310) 203-7199
mchu@irell.com
bhattenbach@irell.com
ijablon@irell.com
aheinrich@irell.com
iwashburn@irell.com
aproctor@irell.com
dslusarczyk@irell.com
etuan@irell.com

J. Mark Mann (Texas Bar No. 12926150)
mark@themannfirm.com
G. Blake Thompson (Texas Bar No. 24042033)
blake@themannfirm.com
**MANN | TINDEL | THOMPSON**
300 W. Main Street
Henderson, TX 75652
Telephone: (903) 657-8540
Facsimile: (903) 657-6003

Andy Tindel (Texas Bar No. 20054500)
atindel@andytindel.com
**MANN | TINDEL | THOMPSON**
112 E. Line Street, Suite 304
Tyler, Texas 75702
Telephone: (903) 596-0900
Facsimile: (903) 596-0909

Craig D. Cherry (Texas Bar No. 24012419)
ccherry@haleyolson.com
**HALEY & OLSON, P.C.**
100 N. Ritchie Road, Suite 200
Waco, Texas 76701
Telephone: (254) 776-3336

| | |
|---|---|
| cwen@irell.com<br>bweissenberg@irell.com<br>bmonnin@irell.com<br>jnafekh@irell.com | Facsimile:  (254) 776-6823<br><br>*Attorneys for VLSI Technology LLC* |

Michael H. Strub, Jr.  (*pro hac vice*)
Babak Redjaian  (*pro hac vice*)
**IRELL & MANELLA LLP**
840 Newport Center Drive, Suite 400
Newport Beach, California   92660
Telephone: (949) 760-0991
Facsimile: (949) 760-5200
mstrub@irell.com
bredjaian@irell.com

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing instrument was served or delivered electronically via email, to all counsel of record, on October 22, 2020.

*/s/ Jordan Nafekh*
Jordan Nafekh
