**IN THE UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF TEXAS**

**AUSTIN DIVISION**

VLSI TECHNOLOGY LLC,
Plaintiff,

v.

INTEL CORPORATION,
Defendant.

**Lead Case:** 1:19-cv-977-ADA

(*Consolidated with* Nos. 6:19-cv-254-ADA, 6:19-cv-255-ADA, 6:19-cv-256-ADA)

**ORAL ARGUMENT REQUESTED**

[redacted]

**VLSI'S MEMORANDUM IN OPPOSITION TO INTEL'S *DAUBERT* MOTION TO EXCLUDE MARK CHANDLER'S OPINIONS AND TESTIMONY IN CASE NO. -256 (D.I. 271)**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................... 1

II. FACTUAL BACKGROUND............................................................................. 2

III. ARGUMENT ................................................................................................ 4

A. Intel's Cases Are Irrelevant To Mr. Chandler's Actual Rebuttal Opinions ........................................................................................ 4

B. Mr. Chandler Properly Relies On Other Agreements To Rebut Mr. Huston's Opinions On The Form Of Royalty And Industry Practices ................. 5

1. Intel's Arguments Regarding Technological Comparability Again Miscomprehend That Mr. Chandler Rebuts Mr. Huston's Opinions........................................................................ 8

C. Intel Mischaracterizes Mr. Chandler's Opinions On [REDACTED] ................... 9

D. Mr. Chandler's Testimony On The Evidence Underlying Alleged Offers Made By [REDACTED] Is Proper ........................................................... 11

E. Intel Does Not Present Any Proper Basis For Excluding Mr. Chandler's Comparable License Analysis For The '983 Patent ......................................... 11

IV. CONCLUSION ............................................................................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ActiveVideo Networks, Inc. v. Verizon Communications, Inc.*, 694 F.3d 1312 (Fed. Cir. 2012)....................13

*Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286 (Fed. Cir. 2014) (Rader, J. dissenting)....................10

*Apple, Inc. v. Samsung Electronics Co.*, No. 12-cv-630, 2014 WL 794328 (N.D. Cal. Feb. 25, 2014)....................7

*Better Mouse Co., LLC v. Steelseries Aps*, No. 14-cv-198, 2016 WL 115686 (E.D. Tex. Jan. 9, 2016)....................9

*Bio-Rad Laboratories, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353 (Fed. Cir. 2020)....................5

*Commonwealth Scientific & Industrial Research Org. v. Cisco Sys., Inc.*, 809 F.3d 1295 (Fed. Cir. 2015)....................13

*Elbit Systems Land and C4I Ltd. v. Hughes Network Sys., LLC*, 927 F.3d 1292 (Fed. Cir. 2019)....................6, 14

*Ericsson, Inc. v. D-Link Systems, Inc.*, 773 F.3d 1201 (Fed. Cir. 2014)....................13

*GREE, Inc. v. Supercell Oy*, Nos. 19-cv-070-JRG, 19-cv-071-JRG, 2020 WL 4288345 (E.D. Tex. July 27, 2020)....................6, 7

*Intelligent Verification Systems, LLC v. Microsoft Corp.*, No. 12-cv-525, 2015 WL 1518099 (E.D. Va. Mar. 31, 2015)....................5

*Laser Dynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51 (Fed. Cir. 2012)....................5

*Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009)....................5

*In re MSTG, Inc.*, 675 F.3d 1337 (Fed. Cir. 2012)....................6

*Odyssey Wireless, Inc. v. Apple Inc.*, No. 15-cv-1735, 2016 WL 7644790 (S.D. Cal. Sept. 14, 2016)....................8

**Page(s)**

*Prism Techs. LLC v. Sprint Spectrum L.P.*,
849 F.3d 1360 (Fed. Cir. 2017)....................6

*ResQNet.com, Inc. v. Lansa, Inc.*,
594 F.3d 860 (Fed. Cir. 2010)....................5

*Smartflash LLC v. Apple, Inc.*,
Nos. 13-cv-447-JRG, 13-cv-448-JRG, 2014 WL 7336213 (E.D. Tex. Dec. 23, 2014)....................7, 8

*Uniloc USA, Inc. v. Samsung Elecs. Am., Inc.*,
No. 17-cv-651, 2019 WL 2267212 (E.D. Tex. May 28, 2019) ....................5

*VirnetX, Inc. v. Cisco Systems, Inc.*,
767 F.3d 1308 (Fed. Cir. 2014)....................5

**Statutes**

35 U.S.C. § 284....................2

* Unless otherwise noted, internal citations and subsequent history are omitted, and emphasis is added.

** Numbered exhibits are attached to the Declaration of Brian M. Weissenberg. Lettered exhibits are attached to the corresponding expert declarations of Mark Chandler and Dr. William Mangione-Smith.

## I. INTRODUCTION

Intel's motion to exclude testimony from VLSI's licensing expert, Mr. Mark Chandler, on certain patent licenses in this case (No. 6:19-cv-256-ADA) rests on the premise that Mr. Chandler failed to provide evidence that those agreements are economically or technologically comparable to a license that would result from a hypothetical negotiation in this case. But Intel's motion misstates Mr. Chandler's actual analysis and ignores controlling law.

***First,*** the majority of Mr. Chandler's testimony and evidence that Intel seeks to exclude rebut the testimony of Mr. Hance Huston, Intel's damages expert. Mr. Huston's damages opinions are based largely on a number of Intel patent licenses. Mr. Chandler explains how Intel's patent licensing policy is fundamentally at odds with a proper patent damages analysis. The touchstone for such an analysis is an assessment of the value of the infringer's use of the patented technology. But Intel [REDACTED] on which Mr. Huston relies. [REDACTED]. As Mr. Chandler explains, [REDACTED]. Mr. Chandler also uses a number of Intel and other semiconductor license agreements to rebut Mr. Huston's opinion that [REDACTED]. Intel faults Mr. Chandler for not doing an exhaustive comparability analysis of these agreements, but Intel mischaracterizes the law. As numerous courts have held, no such analysis is required to use license agreements as evidence of the form of a reasonable royalty or as rebuttal evidence, as Mr. Chandler does here.

***Second,*** for U.S. Patent No. 7,606,983 (the "'983 Patent"), Mr. Chandler conducted a comprehensive *Georgia-Pacific* damages analysis, including a detailed comparable licensing analysis, which produced a fully apportioned reasonable royalty rate for Intel's infringement of that

patent. Mr. Chandler assessed economic and technological comparability, and accounted for similarities and differences between his comparable agreements and the hypothetical license to the '983 Patent. Intel's complaints with Mr. Chandler's analysis are for cross examination; they have no bearing on admissibility.

## II. FACTUAL BACKGROUND

As a patent licensing and valuation expert, Mr. Chandler has spent over 25 years providing many of the world's leading universities, research institutions, and companies with the expertise needed to accurately value and successfully license their intellectual property. Ex. C, Chandler 256 Rpt. ¶¶ 1–14. For the '983 Patent (only one of three patents-in-suit), Mr. Chandler identified [redacted] as comparable to Intel's hypothetical license. Mr. Chandler determined license comparability after considering numerous factors including the licensed technology, products, license structure, royalty structure, parties, and competition. *Id.* ¶¶ 479–568.

VLSI is also presenting its affirmative damages case through economist Dr. Ryan Sullivan. Like Mr. Chandler, Dr. Sullivan's damages opinion is based on "the use made of the invention by [Intel]," 35 U.S.C. § 284, and in particular, on the economic value of Intel's use of VLSI's patented technology in its accused products. *See, e.g.*, VLSI's concurrently-filed opposition to Intel's Sullivan *Daubert* Motion.

In contrast, Intel's Mr. Huston's damages opinion is completely divorced from the value of Intel's use of VLSI's patented technology. D.I. 276 at 32–44. Mr. Huston bases his opinions in significant part on [redacted] *Id.* at 22. In fact, the testimony of Intel's 30(b)(6) witness on patent licensing, James Kovacs, made clear that, [redacted]

[redacted] Ex. C, Chandler 256 Rpt. ¶¶ 197–99. Mr. Kovacs further testified that [redacted] *Id.* ¶¶ 201–07. [redacted]. *Id.* ¶¶ 208–20. [redacted] *Id.* ¶¶ 171–73, 208.

Given his reliance on [redacted], it is not surprising that Mr. Huston opines that [redacted]. In addition to providing his own opinions with respect to the '983 Patent, Mr. Chandler rebuts Mr. Huston's opinions. As a general matter, Mr. Chandler explains how [redacted] are at odds with a proper hypothetical negotiation patent damages analysis. Ex. C, Chandler 256 Rpt. ¶¶ 196–220. Such an analysis must assess the value of the infringer's use of the patented technology. But [redacted] are not probative of that issue. Mr. Chandler states:

> [redacted]



Ex. C, Chandler 256 Rpt. ¶¶ 204–05. Mr. Chandler explains how, for these and other reasons, the agreements on which Mr. Huston relies are not "comparable licenses" for a hypothetical negotiation analysis. He further explains that [REDACTED] Ex. C, Chandler 256 Rpt. ¶¶ 208–20. He contrasts [REDACTED] Ex. C, Chandler 256 Rpt. ¶¶ 171–73, 208. He also rebuts Mr. Huston's opinion that [REDACTED] Ex. 68, Huston 256 Rpt. ¶ 141. Mr. Chandler presents evidence that [REDACTED] other companies in the industry have entered into running royalty agreements. Ex. C, Chandler 256 Rpt. ¶¶ 171–73, 208.

## III. ARGUMENT

### A. Intel's Cases Are Irrelevant To Mr. Chandler's Actual Rebuttal Opinions

Intel's flagrant misrepresentation of Mr. Chandler's opinions leads it to rely on inapposite caselaw. Mr. Chandler uses the majority of the testimony and evidence that Intel seeks to exclude to rebut Mr. Huston's testimony. Nevertheless, Intel relies on cases in which a court excluded an expert's affirmative damages opinion for failure to perform a proper comparative license analysis. These cases have no relevance to Mr. Chandler's rebuttal opinions. Instead, they only apply to: (1) experts relying on allegedly non-comparable licenses in ***actually proffering*** an affirmative damages opinion; ***and*** (2) testimony relying on the potentially excluded licenses for the damages ***amount***. *See, e.g.*, *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009) (*Georgia-Pacific* "factor [2] examines whether the licenses ***relied on by the patentee in proving***

***damages*** are sufficiently comparable to the hypothetical license at issue in suit."). In fact, each of Intel's cases involved a party offering allegedly non-comparable license agreements in support of a damages amount. *See ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 870–73 (Fed. Cir. 2010); *Bio-Rad Labs., Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1372–74 (Fed. Cir. 2020); *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1329–31 (Fed. Cir. 2014); *Laser Dynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 80–81 (Fed. Cir. 2012); *Uniloc USA, Inc. v. Samsung Elecs. Am., Inc.*, No. 17-cv-651, 2019 WL 2267212, at *11–13 (E.D. Tex. May 28, 2019); *Intelligent Verification Sys., LLC v. Microsoft Corp.*, No. 12-cv-525, 2015 WL 1518099, at *2 (E.D. Va. Mar. 31, 2015). None of these cases excluded testimony on rebuttal opinions, as is the case here.

### B. Mr. Chandler Properly Relies On Other Agreements To Rebut Mr. Huston's Opinions On The Form Of Royalty And Industry Practices

Mr. Huston's opinions that [REDACTED] are contradicted by the evidence Mr. Chandler has marshalled in rebuttal. This evidence includes [REDACTED] other license agreements from the semiconductor industry that refute Mr. Huston's opinion that [REDACTED]. Ex. C, Chandler 256 Rpt. ¶¶ 171–73, 225–36, 240–42. Intel's *Daubert* motion repeatedly lambasts Mr. Chandler's opinions for "ignoring" real world evidence. *See, e.g.*, D.I. 271 at 8. Ironically, Intel now attempts to exclude real world evidence because that evidence contradicts Intel's manufactured narratives. But this is proper rebuttal evidence regardless of whether these agreements would be deemed "comparable" for an affirmative damages case. *See, e.g.*, *GREE, Inc. v. Supercell Oy*, Nos. 19-cv-070-JRG, 19-cv-071-JRG, 2020 WL 4288345, at *3–4 (E.D. Tex. July 27, 2020) (accused infringer's expert could rely on licenses for which he had not established as

sufficiently comparable to rebut patentee's expert's reasonable royalty opinions as to the form of the royalty).

Taking the settlement agreements first, the Federal Circuit has "previously explained that prior settlements can be relevant to determining damages." *Elbit Sys. Land and C4I Ltd. v. Hughes Network Sys., LLC*, 927 F.3d 1292, 1299 (Fed. Cir. 2019) (citing *Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360, 1369 (Fed. Cir. 2017)); *see also In re MSTG, Inc.*, 675 F.3d 1337, 1348 (Fed. Cir. 2012) ("Our cases appropriately recognize that settlement agreements can be pertinent to the issue of reasonable royalties.").

Here, Mr. Chandler points to Intel's settlement agreements for two important reasons: ***first***, to rebut Mr. Huston's narrative that [REDACTED] *See* Ex. 68, Huston 256 Rpt. ¶ 7. Mr. Chandler opines that [REDACTED] Ex. C, Chandler 256 Rpt. ¶ 172. ***Second***, Mr. Chandler relies on Intel's settlement agreements as evidence of [REDACTED]. As Mr. Chandler opines, [REDACTED] Ex. C, Chandler 256 Rpt. ¶ 208; *see also id.* ¶ 218 [REDACTED]. [REDACTED]

[redacted] Ex. C, Chandler 256 Rpt. ¶¶ 171–73, 208.

With respect to [redacted], Mr. Chandler points to those agreements to counter Mr. Huston's argument that [redacted]. As Mr. Chandler opined, [redacted] Ex. C, Chandler 256 Rpt. ¶¶ 241–42. Based on this and other evidence, Mr. Chandler opines that [redacted] Ex. C, Chandler 256 Rpt. ¶ 243. Courts have consistently held that an expert may rely on a license agreement for the form of royalty without establishing comparability. *See, e.g.*, *GREE*, 2020 WL 4288345, at *3 (E.D. Tex. July 27, 2020) ("Therefore, *Smartflash* stands for Supercell's proposition that an expert does not need to first establish comparability of prior licenses in order to rely on them to determine the ***form*** a reasonabl[e] royalty would take in a hypothetical negotiation.") (citing *Smartflash LLC v. Apple, Inc.*, Nos. 13-cv-447-JRG, 13-cv-448-JRG, 2014 WL 7336213, at *3 (E.D. Tex. Dec. 23, 2014)). *See also Apple, Inc. v. Samsung Elecs. Co.*, No. 12-cv-630, 2014 WL 794328, at *11 (N.D. Cal. Feb. 25, 2014) (expert permitted to rely on licenses in record for "the form of the reasonable royalty (lump-sum versus running royalty)"); *Odyssey Wireless, Inc. v. Apple Inc.*, No. 15-cv-1735, 2016 WL 7644790, at *5 (S.D. Cal. Sept. 14, 2016) (same).

Finally, Mr. Chandler's reliance on surveys conducted by the Licensing Executive Society and searches in the ktMINE database (a database that compiles and makes searchable publicly available licensing agreements) is similarly proper. Like the [REDACTED] [REDACTED], Mr. Chandler relies on this evidence to counter Mr. Huston's arguments that [REDACTED] [REDACTED] Ex. 68, Huston 256 Rpt. ¶ 135. For example, Mr. Chandler opines that [REDACTED] [REDACTED] [REDACTED] Ex. C, Chandler 256 Rpt. ¶ 237. Courts have held that experts may use exactly this type of evidence in opining on the form of a reasonable royalty. *See Smartflash*, 2014 WL 7336213, at *3 ("Defendants take issue with Mr. Mills's use of the Licensing Executive Survey, asserting the licenses surveyed do not sufficiently compare to the hypothetically negotiated license . . . Mr. Mills's use of the Licensing Executive Society Survey when discussing the form of the royalty is . . . an issue of evidentiary weight.") (discussing the same Licensing Executive Society surveys Mr. Chandler cites).

### 1. Intel's Arguments Regarding Technological Comparability Again Miscomprehend That Mr. Chandler Rebuts Mr. Huston's Opinions

Intel's criticisms on how Mr. Chandler addresses the technological comparability of Mr. Huston's proffered agreements fail for the same reasons articulated above—as a rebuttal expert on those proffered agreements, Mr. Chandler does not bear the burden to establish technological comparability or lack thereof. It is *Intel's* burden to show that Mr. Huston's agreements are both economically and technologically comparable to a license that would result from a hypothetical negotiation here. Therefore, any arguments Intel may have regarding (1) whether Mr. Chandler's reports contain opinions on technological comparability; or (2) the sufficiency of the technical

experts' testimony, upon which Mr. Chandler relies, are not issues for admissibility and are not proper for a *Daubert* motion.

Moreover, for each of the ██ agreement Mr. Huston proffers, Mr. Chandler *does* opine that, unlike the patents-in-suit, he has seen no evidence that In██████████ ██████████ Ex. C, Chandler 256 Rpt. ¶¶ 253–391. Given the ██████████ ██████████ such technology cannot be technologically comparable to VLSI's infringed technology. *Id*. In any event, Mr. Chandler is relying on VLSI's technical experts for his opinions on lack of technological comparability. *Id*. Mr. Chandler is entitled to rely on those experts, whose opinions on this issue Intel has not even challenged. *See Better Mouse Co., LLC v. Steelseries Aps*, No. 14-cv-198, 2016 WL 115686, at *2 (E.D. Tex. Jan. 9, 2016) (allowing technical comparability evidence where defendant "has not directly challenged the relevance and reliability" of technical expert's comparability analysis).

**C. Intel Mischaracterizes Mr. Chandler's Opinions On ██████████**

Intel's complaints regarding Mr. Chandler's testimony on ██████████ are similarly unfounded. Intel argues that Mr. Chandler's opinions should be excluded because they are "based purely on [his] unsupported assertions." D.I. 271 at 9. But Mr. Chandler bases his opinions on numerous pieces of evidence, including:

- ██████████ ██████████ *see* Ex. 145, Kovacs W.D. Tex. Dep. 114:19–22; *see also id*. 16:9–13; 45:2–9; 92:24–93:2; 131:17–132:1; 195:8–11; 203:24–204:2; 207:9–12; 252:19–21; 254:15–24; 256:25–257:3; 259:7–11; 260:18–24; 261:3–6; and 264:21–24; Ex. C, Chandler 256 Rpt. ¶¶ 201, 218;
- ██████████



[redacted] *see* Ex. C, Chandler 256 Rpt. ¶¶ 171–73, 208; Ex. 242, Chandler Dep. 200:23–201:13;

- The deposition testimony of James Kovacs, Intel's Associate General Counsel and Director of the Licensing, Trademarks, and Standards Group (as well as Intel's 30(b)(6) licensing designee), who [redacted] Ex. 145, Kovacs Dep. 49:6–50:2; *see also, e.g.*, *id.* 57:22–58:17, 59:24–61:5, 61:10–63:5, 65:18–66:23, 90:10–91:13, 94:13–96:10, 96:21–97:25;
- Academic articles discussing [redacted] including how "some manufacturers, with no R&D investment of their own, have simply refused to license patents of good faith innovators. Instead, implementers openly infringe patented technologies and brazenly dare patentees to file suit," Ex. 245 (Kappos article); and
- Caselaw recognizing the concept of [redacted]. *See, e.g.*, *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1233 (Fed. Cir. 2014) (Rader, J. dissenting).

As Mr. Chandler explains in his report, [redacted] Ex. C, Chandler 256 Rpt. ¶¶ 196–220. For example, in such an analysis, there is no place for a [redacted] In addition, the hypothetical negotiation is designed to assess the value of the infringer's use of the claimed invention of the patents-in-suit. In contrast, Intel [redacted] Mr. Chandler's opinions on the significant gap between a proper patent damages analysis and [redacted] are highly

relevant. There is no basis for Intel's request to exclude such proper rebuttal testimony.

**D. Mr. Chandler's Testimony On The Evidence Underlying Alleged Offers Made By [REDACTED] Is Proper**

Intel also seeks to exclude Mr. Chandler's opinions with respect to c[REDACTED] [REDACTED] [REDACTED]. Intel claims that Mr. Chandler is impermissibly making "credibility determinations." D.I. 271 at 10. Not so. Mr. Chandler is simply responding to the documents on which Intel relies and offering an opinion that they do not evidence a[REDACTED] [REDACTED] Ex. C, Chandler 256 Rpt. ¶¶ 392–416. The fact that Mr. Huston comes to a different conclusion is not a basis on which to exclude Mr. Chandler's opinions. [REDACTED] [REDACTED] [REDACTED] D.I. 271 at 8. But Mr. Chandler is not compelled to agree to Intel's interpretation of the scant and ambiguous record on which Intel relies for this argument. These issues are subject to cross-examination, not exclusion.

**E. Intel Does Not Present Any Proper Basis For Excluding Mr. Chandler's Comparable License Analysis For The '983 Patent**

Intel's attempt to exclude Mr. Chandler's comparable license analysis for the '983 patent lacks merit. Intel's complaints that "Mr. Chandler never identifies a particular agreement or particular patent as economically comparable" are misleading and misinformed. Mr. Chandler relies on the [REDACTED] [REDACTED] he identifies in Exhibit 4A, which are all substantially similar and comprise "well-established, standard terms under what the company referred to as its 'Standard License Agreement,' as noted in the [REDACTED]." Ex. C, Chandler 256 Rpt. ¶ 161; *see also id.* ¶¶ 501-509; *id.* ¶ 503 [REDACTED] [REDACTED] [REDACTED] (citing Exhibit 4A to the Chandler 256 Report).

Mr. Chandler undertakes a detailed analysis of the economic comparability of the [REDACTED] [REDACTED] agreements to the hypothetical license to the '983 Patent, including an analysis of all 15 *Georgia-Pacific* factors. Ex. C, Chandler 256 Rpt. ¶¶ 479-568. For technological comparability, Mr. Chandler relies on Dr. Mangione-Smith's opinions that [REDACTED] [REDACTED] [REDACTED] [REDACTED] *Id*. ¶ 562. As one example, Mr. Chandler notes that U.S. Patent No. 5,559,502 (the "'502 Patent") was licensed in the agreements, and Dr. Mangione-Smith opines on the technological comparability of that patent to the '983 Patent. *See* Ex. C, Chandler 256 Rpt. ¶ 160; Ex. A, Mangione-Smith Op. Rpt. ¶¶ 801-807.

Intel's suggestions that Mr. Chandler did not "account for differences in the technologies and economic circumstances of the contracting parties," D.I. 271 at 10, ignore Mr. Chandler's actual testimony. Mr. Chandler's analysis considered each of the alleged "differences," including the parties to the hypothetical negotiation ([REDACTED] is the predecessor to NXP—the hypothetical licensor for the '983 Patent) and the rights granted under [REDACTED] [REDACTED] agreements. *See*, *e.g.*, Ex. C, Chandler 256 Rpt. ¶¶ 506, 510-513; Ex. 243, Chandler Dep. 282:9-22, 301:3-19, 425:24-426:7, 432:8-433:2. Mr. Chandler also identified numerous indicia of economic comparability between [REDACTED] [REDACTED] licenses and the hypothetical license for the '983 Patent here, including (1) similar licensors (Philips and NXP), (2) same products (integrated circuits), (3) same royalty structure (running royalty based on sales), (4) same license structure (*e.g.*, non-exclusive grant), and (5) similar licensees (*e.g.*, leading chip manufacturers like Intel, Texas Instruments, and many others). *See*, *e.g.*, Ex. C, Chandler 256 Rpt. ¶¶ 479-568.

Intel's criticisms at most go to the weight, not admissibility, of Mr. Chandler's opinion. The Federal Circuit has recognized that differences almost always exist between comparable and hypothetical licenses, and hence comparability does not require complete identity. *See e.g.*,

*Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1227 (Fed. Cir. 2014) ("Prior licenses, however, are almost never perfectly analogous to the infringement action . . . [T]he fact that a license is not perfectly analogous generally goes to the weight of the evidence, not its admissibility."). Intel may cross-examine, but not exclude, Mr. Chandler based on any differences. *See, e.g., ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1333 (Fed. Cir. 2012) ("The degree of comparability of the Gemstar and Grande license agreements as well as any failure on the part of ActiveVideo's expert to control for certain variables are factual issues best addressed by cross examination and not by exclusion.").

Finally, Intel's arguments that Mr. Chandler "makes no attempt to apportion the royalty rates that these allegedly standard essential patents provide" misses the mark. The patents licensed under [REDACTED] agreements are not standards essential patents, which has a specific meaning within the licensing world and in the caselaw. *See Ericsson*, 773 F.3d at 1209 ("Because the standard *requires* that devices utilize specific technology, compliant devices *necessarily* infringe certain claims in patents that cover technology incorporated into the standard. These patents are called 'standard essential patents' ('SEPs')."); *see also* Ex. 243, Chandler Dep. 446:2-22. That the patents represented "the de facto [REDACTED]" does not somehow subject them to the requirements of "standards essential patents." In any event, Mr. Chandler's comparable license analysis properly apportioned the value of Intel's use of the accused product attributable to the '983 Patent. Indeed, the Federal Circuit has recognized that in a comparable-license approach, apportionment is "built in." *See Commonwealth Sci. & Indus. Research Org. v. Cisco Sys., Inc.*, 809 F.3d 1295, 1300-03 (Fed. Cir. 2015); *Elbit Sys. Land and C4I Ltd. v. Hughes Network Sys.*, 927 F. 3d 1292, 1301 (Fed. Cir. 2019) (approach of plaintiff's damages expert, who "testified that apportionment 'is essentially embedded in'" his comparable license analysis because "'[t]he

requisite apportionment is implicitly considered within the royalty rate"' of the comparable agreement, was "consistent with our [Federal Circuit] precedent concerning the apportionment requirement").

## IV. CONCLUSION

Intel has not provided any defensible reasons to exclude Mr. Chandler's testimony. For the foregoing reasons, VLSI respectfully requests that the Court deny Intel's motion.

Respectfully submitted,

Dated: October 22, 2020

By: *__/s/ Andy Tindel__*

Morgan Chu (*pro hac vice*)
Benjamin W. Hattenbach (*pro hac vice*)
Iian D. Jablon (*pro hac vice*)
Alan J. Heinrich (*pro hac vice*)
Ian Robert Washburn (*pro hac vice*)
Amy E. Proctor (*pro hac vice*)
Dominik Slusarczyk (*pro hac vice*)
Elizabeth C. Tuan (*pro hac vice*)
Charlotte J. Wen (*pro hac vice*)
Brian Weissenberg (*pro hac vice*)
Benjamin Monnin (*pro hac vice*)
Jordan Nafekh (*pro hac vice*)
**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067
Telephone: (310) 277-1010
Facsimile: (310) 203-7199
mchu@irell.com
bhattenbach@irell.com
ijablon@irell.com
aheinrich@irell.com
iwashburn@irell.com
aproctor@irell.com
dslusarczyk@irell.com
etuan@irell.com
cwen@irell.com
bweissenberg@irell.com
bmonnin@irell.com
jnafekh@irell.com

Michael H. Strub, Jr. (*pro hac vice*)
Babak Redjaian (*pro hac vice*)
**IRELL & MANELLA LLP**
840 Newport Center Drive, Suite 400
Newport Beach, California 92660
Telephone: (949) 760-0991
Facsimile: (949) 760-5200
mstrub@irell.com
bredjaian@irell.com

J. Mark Mann (Texas Bar No. 12926150)
mark@themannfirm.com
G. Blake Thompson (Texas Bar No. 24042033)
blake@themannfirm.com
**MANN | TINDEL | THOMPSON**
300 W. Main Street
Henderson, TX 75652
Telephone: (903) 657-8540
Facsimile: (903) 657-6003

Andy Tindel (Texas Bar No. 20054500)
atindel@andytindel.com
**MANN | TINDEL | THOMPSON**
112 E. Line Street, Suite 304
Tyler, Texas 75702
Telephone: (903) 596-0900
Facsimile: (903) 596-0909

Craig D. Cherry (Texas Bar No. 24012419)
ccherry@haleyolson.com
**HALEY & OLSON, P.C.**
100 N. Ritchie Road, Suite 200
Waco, Texas 76701
Telephone: (254) 776-3336
Facsimile: (254) 776-6823

*Attorneys for VLSI Technology LLC*

**CERTIFICATE OF SERVICE**

A true and correct copy of the foregoing instrument was served or delivered electronically via e-mail on October 22, 2020.

*/s/ Jordan Nafekh*
Jordan Nafekh