**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

|  |  |
|---|---|
| VLSI TECHNOLOGY LLC,<br><br>  Plaintiff,<br><br><br>  v.<br><br><br>INTEL CORPORATION,<br><br>  Defendant. | **Lead Case:** 1:19-cv-977-ADA<br><br>**No. 6:19-cv-254-ADA**<br><br>(*Consolidated for pretrial purposes only with* 6:19-cv-255-ADA, 6:19-cv-256-ADA)<br><br>███████████████ |

## JOINT FINAL PRETRIAL ORDER

The Pretrial Conference is set for January 5, 2021 in Waco, Texas. Pursuant to the Court's Amended Scheduling Orders (D.I. 280, 351), Rule 16 of the Federal Rules of Civil Procedure, and Local Rule CV-16, Plaintiff VLSI Technology LLC ("VLSI") and Defendant Intel Corporation ("Intel") (collectively, the "Parties") submit this Joint Pretrial Order.

**A.**      **COUNSEL FOR THE PARTIES**

**1.**      **Attorneys for Plaintiff VLSI Technology LLC**

J. Mark Mann (Texas Bar No. 12926150)
mark@themannfirm.com
G. Blake Thompson (Texas Bar No. 24042033)
blake@themannfirm.com
**MANN | TINDEL | THOMPSON**
300 W. Main Street
Henderson, TX 75652
Telephone: (903) 657-8540
Facsimile:  (903) 657-6003

Andy Tindel (Texas Bar No. 20054500)
atindel@andytindel.com
**MANN | TINDEL | THOMPSON**
112 E. Line Street, Suite 304
Tyler, Texas 75702
Telephone: (903) 596-0900
Facsimile:  (903) 596-0909

Craig D. Cherry (Texas Bar No. 24012419)
ccherry@haleyolson.com
**HALEY & OLSON, P.C.**
100 N. Ritchie Road, Suite 200
Waco, Texas 76701
Telephone: (254) 776-3336
Facsimile:  (254) 776-6823

Morgan Chu (*pro hac vice*)
Benjamin W. Hattenbach  (*pro hac vice*)
Iian D. Jablon  (*pro hac vice*)
Alan J. Heinrich  (*pro hac vice*)
Ian Robert Washburn  (*pro hac vice*)
Amy E. Proctor  (*pro hac vice*)
Dominik Slusarczyk  (*pro hac vice*)
Elizabeth C. Tuan  (*pro hac vice*)
Charlotte J. Wen  (*pro hac vice*)
Brian Weissenberg  (*pro hac vice*)
Benjamin Monnin  (*pro hac vice*)
Jordan Nafekh  (*pro hac vice*)
**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, California   90067

Telephone: (310) 277-1010
Facsimile: (310) 203-7199
mchu@irell.com
bhattenbach@irell.com
ijablon@irell.com
aheinrich@irell.com
iwashburn@irell.com
aproctor@irell.com
dslusarczyk@irell.com
etuan@irell.com
cwen@irell.com
bweissenberg@irell.com
bmonnin@irell.com
jnafekh@irell.com

Michael H. Strub, Jr.  (*pro hac vice*)
Babak Redjaian  (*pro hac vice*)
**IRELL & MANELLA LLP**
840 Newport Center Drive, Suite 400
Newport Beach, California   92660
Telephone: (949) 760-0991
Facsimile: (949) 760-5200
mstrub@irell.com
bredjaian@irell.com

## 2.      Attorneys for Intel Corporation

J. Stephen Ravel (Texas Bar No. 16584975)
**KELLY HART & HALLMAN LLP**
303 Colorado, Suite 2000
Austin, Texas 78701
Tel: (512) 495-6429
steve.ravel@kellyhart.com
sven.stricker@kellyhart.com

James E. Wren (Texas Bar No. 22018200)
1 Bear Place, Unit 97288
Waco, Texas 76798
Tel: (254) 710-7670
james.wren@baylor.edu

William F. Lee (*pro hac vice*)
Joseph Mueller (*pro hac vice*)
Louis W. Tompros (*pro hac vice*)
Kate Saxton (*pro hac vice*)

Felicia H. Ellsworth (*pro hac vice*)
Jordan L. Hirsch (*pro hac vice*)
Thomas Lampert (*pro hac vice*)
James M. Lyons  (*pro hac vice*)
George F. Manley  (*pro hac vice*)
**WILMER CUTLER PICKERING HALE & DORR LLP**
60 State Street
Boston, Massachusetts 02109
Tel: (617) 526-6000
william.lee@wilmerhale.com
joseph.mueller@wilmerhale.com
louis.tompros@wilmerhale.com
kate.saxton@wilmerhale.com
felicia.ellsworth@wilmerhale.com
jordan.hirsch@wilmerhale.com
thomas.lampert@wilmerhale.com
james.lyons@wilmerhale.com
george.manley@wilmerhale.com

Gregory H. Lantier (*pro hac vice*)
Amanda L. Major (*pro hac vice*)
Joshua L. Stern (*pro hac vice*)
**WILMER CUTLER PICKERING HALE & DORR LLP**
1875 Pennsylvania Avenue
Washington DC 20006
Tel: (202) 663-6000
gregory.lantier@wilmerhale.com
amanda.major@wilmerhale.com
joshua.stern@wilmerhale.com

Mary V. Sooter (*pro hac vice*)
**WILMER CUTLER PICKERING HALE & DORR LLP**
1225 17th Street, Suite 2600
Denver, CO 80202
Tel: (720) 274-3164
mindy.sooter@wilmerhale.com

Jeffrey A. Dennhardt (*pro hac vice*)
**WILMER CUTLER PICKERING HALE & DORR LLP**
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: (212) 295-6293
jeffrey.dennhardt@wilmerhale.com

Anh-khoa Tran

Arthur W. Coviello (*pro hac vice*)
Alexis Pfeiffer (*pro hac vice*)
**WILMER CUTLER PICKERING HALE & DORR LLP**
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Tel: (650) 858-6000
arthur.coviello@wilmerhale.com
khoa.tran@wilmerhale.com
alexis.pfeiffer@wilmerhale.com

**B.    STATEMENT OF JURISDICTION**

This action arises under the patent laws of the United States, including 35 U.S.C. § 1 *et seq*.  The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).  Subject matter jurisdiction and personal jurisdiction are not disputed in this case.

**1.    VLSI's Position**

The Court correctly rejected Intel's motion to transfer this action to Delaware, finding that the Western District of Texas is the appropriate venue for this case, under 28 U.S.C. § 1400(b) and 28 U.S.C. § 1391.  D.I. 53.  The Court recently ruled that the trial in this matter would proceed on January 11, 2021 in the Austin Division if it could be confirmed in the near term that the Austin courthouse will reopen in time, but will be moved back to the Waco Division if it cannot promptly be determined whether the Austin courthouse will remain unavailable due to the COVID pandemic.  October 16, 2020 H'rg Tr. at 3-4.  The Court's ruling is correct.  As a preliminary matter, it is beyond dispute that the Court has authority to move the trial back to Waco.  D.I. 282 at 7-10 (compiling authorities).  In addition, as the Court already found when setting trial for January 11, if the Austin courthouse remains unavailable, the interests of justice favor keeping the January 11 trial date and moving the trial to Waco.  October 16, 2020 H'rg Tr. at 3-4 ("I will have given it a two month pause to make every attempt to maintain the venue in Austin, but if by the end of November we can't go to trial in Austin, then I think for purposes of justice we are going

to have the trial and we're going to hold it in Waco and it will begin on January 11th."); *see also* D.I. 282 at 10-13 (VLSI brief addressing interests of justice factors).   Any other result would significantly and unfairly prejudice VLSI.   D.I. 282 at 12-13.   Intel's request that the Court reconsider its recent trial venue ruling is another delay tactic that lacks merit.

       **2.**       **Intel's Position**

Pursuant to the Court's October 7, 2019 Order, the Austin Division is the proper forum for this case.   D.I. 78.   In that Order, the Court granted Intel's Motion to Transfer Venue Under 28 U.S.C. § 1404(a) and held that "the Austin Division is 'clearly more convenient' than the Waco Division."   *Id.* at 10.   The Austin Division remains the proper forum for this action, including trial.

As explained in Intel's Brief Regarding Whether The Court May Retransfer the Case to the Waco Division (D.I. 281) and its Petition and Reply regarding its Petition for a Writ of Mandamus (*In re Intel Corp.*, D.I. 2, 7, No. 2021-105 (Fed. Cir.)), this case should not be retransferred back to the Waco Division and the Court's decision was erroneous.   Intel has moved to stay retransfer of the case pending resolution of its Petition for a Writ of Mandamus (*In re Intel Corp.*, D.I. 8, No. 2021-105 (Fed. Cir. Dec. 15, 2020)).   Intel hereby incorporates its Brief Regarding Whether The Court May Retransfer the Case to the Waco Division (D.I. 281), argument from the conference before the Court on October 16, 2020 (D.I. 284) and December 15, 2020, its Petition for a Writ of Mandamus and Reply in support thereof (*In re Intel Corp.*, D.I. 2, D.I. 7, No. 2021-105 (Fed. Cir.)), its Motion to Stay Retransfer Pending Mandamus Review (D.I. 367), and its Emergency Motion for a Stay of the District Court's Retransfer Order Pending Resolution of Mandamus Petition, Expedited Briefing Schedule, and/or Temporary Stay (*In re Intel Corp.*, D.I. 8, No. 2021-105 (Fed. Cir. Dec. 15, 2020)) herein by reference.

## C.    NATURE OF ACTION

This is a patent infringement case arising under the patent laws of the United States.  VLSI is the patent holder.  VLSI intends to assert at trial that Defendant Intel Corporation ("Intel") has infringed claims 1, 5, 6, 9, 11, 12, and 16 of U.S. Patent No. 7,523,373 ("the '373 Patent"), and claims 1, 14, 17, 18, 24, and 26 of U.S. Patent No. 7,725,759 ("the '759 Patent") (collectively, the "Asserted Claims"), and done so willfully.[1, 2]  VLSI disagrees with Intel's allegations below.

Intel alleges that it does not infringe, directly or indirectly, (1) any of claims 1, 5, 6, 9, 11, 12, or 16 of the '373 Patent; or (2) any of claims 1, 14, 17, 18, 24, or 26 of the '759 Patent.  Intel also alleges that it has not willfully infringed any of the Asserted Claims.

Intel further alleges that (1) claims 1, 5, 6, 9, 11, 12, and 16 of the '373 Patent are invalid as obvious; and (2) claims 1, 14, 17, 18, 24, and 26 of the '759 Patent are invalid as anticipated and/or obvious.  Intel also alleges that the '373 and '759 Patents are unenforceable as to Intel in view of ██████████████ and that VLSI is estopped from asserting infringement under the doctrine of equivalents of the '759 Patent.

## D.    CONTENTIONS OF THE PARTIES

By providing these statements, the Parties do not concede that any of the following issues is appropriate for trial.  The Parties also do not waive any of their pending motions.

### 1.    VLSI's Statement of Contentions

(1)    Intel infringes Claims 1, 5, 6, 9, 11, 12, and 16 of U.S. Patent No. 7,523,373 by making, using, selling, offering for sale, and/or importing into the United States Intel's Haswell

---

[1] The parties limit their pretrial disclosures to two patents originally asserted in Case No. 6:19-cv-254-ADA.

[2] The '373 and '759 Patents are collectively referred to as the "Patents-in-Suit."

client processors and Broadwell client processors and any other processors with essentially the same structures as those identified in VLSI's infringement analysis ("'373 Accused Products"). Intel infringes Claims 1, 5, 6, 9, 11, 12, and 16 of the '373 Patent, directly or indirectly, either literally or under the doctrine of equivalents.  The doctrine of equivalents is available and has been properly applied for the Asserted Claims.

(2)     Intel infringes Claims 1, 14, 17, 18, 24, and 26 of U.S. Patent No. 7,725,759 by making, using, selling, offering for sale, and/or importing into the United States Intel's Skylake client and server processors, Kaby Lake processors, Coffee Lake processors, Whiskey Lake processors, Amber Lake processors, Comet Lake processors, Cannon Lake processors, Cascade Lake server processors, Ice Lake client and server processors, and Tiger Lake processors, all other Intel products that include Intel's Speed Shift Technology, and any other processors with essentially the same structures as those identified in VLSI's infringement analysis ("'759 Accused Products").  Intel infringes Claims 1, 14, 17, 18, 24, and 26 of the '759 Patent, directly or indirectly, either literally or under the doctrine of equivalents.  The doctrine of equivalents is available and has been properly applied for the Asserted Claims.

(3)     Intel's infringement of the Asserted Claims of the '373 and '759 Patents has been and continues to be willful.

(4)     Intel has induced, and continues to induce, the infringement of the Asserted Claims of the '373 and '759 Patents by its customers, including but not limited to its direct customers and end users.

(5)     Intel has contributed, and continues to contribute, to the infringement of the Asserted Claims of the '373 and '759 Patents by its customers, including but not limited to its direct customers and end users.

(6)     Intel has long had actual or constructive knowledge of the existence of and its infringement of the '373 Patent.

(7)     Intel has long had actual or constructive knowledge of the existence of and its infringement of the '759 Patent.

(8)     VLSI is the valid, presumptive assignee of the '373 and '759 Patents and all rights thereto, including the right to claim damages for past infringement.

(9)     The priority date of the Asserted Claims of the '373 Patent is March 14, 2006, March 27, 2006, March 30, 2006, or April 20, 2006.

(10)     The priority date of the Asserted Claims of the '759 Patent is June 29, 2005.

(11)     The Asserted Claims of the '373 and '759 Patents are not invalid for any reason, including under 35 U.S.C. §§ 102, 103, and 112.

(12)     The Asserted Claims of the '373 and '759 Patents are not unenforceable for any reason, including for ████████ or any other legal or equitable theory asserted by Intel.

(13)     VLSI's damages for Intel's past infringement of the '373 and '759 Patents are not barred or limited by 35 U.S.C. § 287, or any other legal or equitable theory asserted by Intel.

(14)     VLSI has been damaged by Intel's infringement of the '373 and '759 Patents, and is entitled to damages for all infringement addressed at trial.  Intel's Statement of Contentions rehashes arguments Intel raised in its *Daubert* motions against VLSI's damages experts.  Intel's *Daubert* arguments mischaracterize the opinions of VLSI's experts and misapply the law, as VLSI explained in detail in its *Daubert* oppositions.  VLSI's damages case is based on a careful analysis of the value Intel has received as a result of infringing VLSI's asserted patents and thus is directly responsive to the touchstone of a proper reasonable royalty determination: the value of "the use made of the invention by the infringer."  35 U.S.C. § 284.  Intel's damages case, in contrast, is

completely divorced from this question, as explained in VLSI's *Daubert* motions against Intel's experts, Drew Pascarella, Hance Huston, and Robert Colwell.  D.I. 276.

(15)    VLSI is entitled to supplemental damages for all infringement that is not addressed at trial, including, for example, damages for infringement that occurred (i) after the temporal cutoff for the data presented at trial, and (ii) during the period between the jury verdict and the entry of final judgment, as well as pre-judgment and post-judgment interest.

(16)    This is an exceptional case entitling VLSI to attorneys' fees and costs under 35 U.S.C. § 285.

(17)    VLSI seeks all equitable relief from the Court that is just and proper.

(18)    VLSI seeks all injunctive relief from the Court that is proper, or if Intel's infringement is not enjoined, that Intel be ordered to pay ongoing royalties to VLSI for any post-judgment infringement of the '373 and '759 Patents.

(19)    To the extent not already addressed above, VLSI disagrees with Intel's contentions below.

2.      **Intel's Statement of Contentions**[3,4]

a.      **'373 Patent**

(20)    Intel denies that Intel, or its Haswell client microprocessors and Broadwell client microprocessors, infringes claims 1, 5, 6, 9, 11, 12, and 16 of the '373 Patent, directly or indirectly.[5,6]

(21)    Intel further contends that it has not infringed the '373 Patent, directly or indirectly, either literally or under the doctrine of equivalents. Intel further contends that VLSI has not sufficiently disclosed its doctrine of equivalents theory and should be precluded from asserting it at trial.

(22)    Intel also contends that the doctrine of equivalents is inapplicable for the asserted claims of the '373 Patent because limitations were added for patentability purposes and prosecution history estoppel prevents the doctrine from being applied to those limitations.

(23)    Intel contends that each of the Asserted Claims of the '373 Patent is invalid under 35 U.S.C. § 103, at least based on the following prior art references:

---

[3] ███████████████████████████████████████████

[4] Intel's Statement of Contentions should not be interpreted as an agreement with any of the assertions set forth in VLSI's Statement of Contentions.

[5] VLSI contends that it is accusing "any other processors with essentially the same structures as those identified in VLSI's infringement analysis" of infringing the '373 Patent. No such products were disclosed in VLSI's infringement contentions or expert reports, and Intel thus believes that such products are no longer in the case.

[6] VLSI previously alleged that Intel's Ivy Bridge, Skylake, Kaby Lake, Coffee Lake, Cannon Lake, Whiskey Lake, Amber Lake, Cascade Lake, and Ice Lake product families (as well as Haswell server and Broadwell server products) infringe the '373 Patent, but VLSI is no longer pursuing those allegations.

- U.S. Patent No. 5,867,719 ("Harris")

- U.S. Patent Application Publication No. 2006/0259840 ("Abadeer")

- U.S. Patent No. 6,948,079 ("Zhang")

- U.S. Patent No. 7,630,270 ("Ko")

(24)   Intel contends that the prior art can be applied to the claims to prove obviousness as shown:

| Claims | Combinations |
|---|---|
| 1, 5, 6, 9, 11, 12, 16 | Harris, Abadeer, Zhang |
| | Ko, Abadeer, Zhang |

(25)   Intel further contends that the priority date of the '373 Patent is no earlier than August 30, 2006 and that VLSI will not meet its burden to establish an earlier priority date.

(26)   Intel denies that Intel received notice of the '373 Patent before the filing of this suit on April 11, 2019.  Intel also denies that it knew or should have known of any risk that it was allegedly infringing the '373 Patent.

(27)   Intel contends that it has not willfully infringed, and is not willfully infringing, the '373 Patent.

(28)   Intel contends that VLSI is not entitled to damages at all or in the amount that VLSI seeks.

(29)   Intel contends that, should the patent be determined to be not invalid, infringed, and not unenforceable, VLSI's damages calculations are inflated and inaccurate.  In particular, VLSI has presented

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████

(30)    Intel contends that, should the '373 Patent be determined to be not invalid, infringed, and not unenforceable, damages, if any, are limited to ████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████

(31)    If one or more of the asserted claims is found to be not invalid and not unenforceable and if Intel is found to have infringed such claims:

a.    In addition to denying that VLSI is entitled to any damages, Intel contends that VLSI is not entitled to enhanced damages under 35 U.S.C. § 284.

b.    Intel contends that VLSI's claims are barred in whole or in part ████████ ████████████████████

(32)    To the extent that VLSI argues that an owner or licensee of the '373 Patent made, sold, or offered to sell an article that practices the claims of the '373 Patent, VLSI's damages are limited by 35 U.S.C. § 287.

(33)    Intel contends that this case is exceptional and Intel is entitled to its costs, expenses, and reasonable attorney fees pursuant to 35 U.S.C. § 285.

(34)    Intel contends that VLSI is not entitled to recover its attorney's fees, costs (including expert witness fees), expenses incurred in this action, or pre-judgment interest.

(35)    Intel contends that VLSI is not entitled to an injunction.

(36)    Intel contends that VLSI is not entitled to any supplemental damages.

(37)    Intel contends that VLSI is not entitled to any post-judgment ongoing royalty.

(38)    Intel contends that VLSI is not entitled to equitable relief.

### b.    '759 Patent

(39)    Intel denies that Intel, or its Skylake client and server microprocessors, Kaby Lake client microprocessors, Coffee Lake client microprocessors, Whiskey Lake client microprocessors, Amber Lake client microprocessors, Comet Lake client microprocessors, Cannon Lake client microprocessors, Cascade Lake server microprocessors, Ice Lake client and server microprocessors, and Tiger Lake client microprocessors implementing the Speed Shift feature, infringes claims 1, 14, 17, 18, 24, and 26 of the '759 Patent, directly or indirectly.[7]

(40)    Intel further contends that it has not infringed the '759 Patent, directly or indirectly, either literally or under the doctrine of equivalents.

(41)    Intel also contends that the doctrine of equivalents is inapplicable for the asserted claims of the '759 Patent because limitations were added for patentability purposes and

---

[7] VLSI contends that it is accusing "all other Intel products that include Intel's Speed Shift Technology, and any other processors with essentially the same structures as those identified in VLSI's infringement analysis" of infringing the '759 Patent.  No such products were disclosed in VLSI's infringement contentions or expert reports, and Intel thus believes that such products are no longer in the case.

prosecution history estoppel prevents the doctrine from being applied to those limitations. Intel further contends that VLSI may not prove infringement of any asserted claim of the '759 Patent via the doctrine of equivalents because the scope of the claim needed to show infringement under that theory would ensnare prior art. Intel further contends that VLSI may not prove infringement of any asserted claim of the '759 Patent via the doctrine of equivalents because VLSI's allegations under the doctrine of equivalents violate the "all elements" rule.

(42)    Intel contends that each of the Asserted Claims of the '759 Patent is invalid under 35 U.S.C. §§ 102 and/or 103, at least based on the following prior art references:

- Intel Yonah Processor ("Intel Yonah Processor")

- U.S. Patent No. 5,838,995 ("Chen")

- U.S. Patent App. Pub. No. 2004/0098631 ("Terrell")

- U.S. Patent App. Pub. No. 2003/0065960 ("Rusu")

- U.S. Patent App. Pub. No. 2003/0159080 ("Kiriake")

(43)    Intel contends that the prior art can be applied to the claims to prove anticipation and/or obviousness as shown:

| Claims | Combinations |
| --- | --- |
| 1, 14, 17 | Intel Yonah Processor |
| | Chen, Terrell |
| 18, 24 | Intel Yonah Processor |
| | Chen, Terrell, Kiriake |
| 26 | Intel Yonah Processor |
| | Chen, Terrell, Kiriake, Rusu |

(44)    Intel further contends that the priority date of the '759 Patent is no earlier than June 29, 2005 and that VLSI will not meet its burden to establish an earlier priority date.

(45)     Intel denies that Intel received notice of the '759 Patent before VLSI filed suit on the '759 Patent in Delaware on March 1, 2019.  Intel also denies that it knew or should have known of any risk that it was allegedly infringing the '759 Patent.

(46)     Intel contends that it has not willfully infringed, and is not willfully infringing, the '759 Patent.

(47)     Intel contends that VLSI is not entitled to damages at all or in the amount that VLSI seeks.

(48)     Intel contends that, should the patent be determined to be not invalid, infringed, and not unenforceable, VLSI's damages calculations are inflated and inaccurate.  In particular, VLSI has presented ███████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
██████████████████████████

(49)   Intel contends that, should the '759 Patent be determined to be not invalid, infringed, and not unenforceable, damages, if any, are limited to ███████████████

███████████████████████████████████████████████████████████████

████████████████████████████████████████████████

(50)   If one or more of the asserted claims is found to be not invalid and not unenforceable and if Intel is found to have infringed such claims:

      a.   In addition to denying that VLSI is entitled to any damages, Intel contends that VLSI is not entitled to enhanced damages under 35 U.S.C. § 284.

      b.   Intel contends that VLSI's claims are barred in whole or in part under ███ ████████████████ .

(51)   To the extent that VLSI argues that an owner or licensee of the '759 Patent made, sold, or offered to sell an article that practices the claims of the '759 Patent, VLSI's damages are limited by 35 U.S.C. § 287.

(52)   Intel contends that this case is exceptional and Intel is entitled to its costs, expenses, and reasonable attorney fees pursuant to 35 U.S.C. § 285.

(53)   Intel contends that VLSI is not entitled to recover its attorney's fees, costs (including expert witness fees), expenses incurred in this action, or pre-judgment interest.

(54)   Intel contends that VLSI is not entitled to an injunction.

(55)   Intel contends that VLSI is not entitled to any supplemental damages.

(56)   Intel contends that VLSI is not entitled to any post-judgment ongoing royalty.

(57)   Intel contends that VLSI is not entitled to equitable relief.

E.     **STIPULATIONS AND UNCONTESTED FACTS**

(58)     The Parties will continue to meet and confer to attempt to resolve their objections to deposition designations and exhibits, and to identify additional potential stipulations, including stipulations related to the admissibility of exhibits, and will supplement these stipulations to the extent that additional stipulations are agreed by the parties.



3.     **The Parties' Statement of Uncontested Facts**

(61)     VLSI is the record assignee and owner of the '373 and '759 Patents.

(62)     The '373 Patent was filed for on August 30, 2006 and issued on April 21, 2009 by the U.S. Patent Office.

(63)     The '759 Patent was filed for on June 29, 2005 and issued on May 25, 2010 by the U.S. Patent Office.

(64)     The claims of the '373 Patent to be adjudicated at the trial scheduled for January 11, 2021 are Claims 1, 5, 6, 9, 11, 12, and 16.

(65)     The claims of the '759 Patent to be adjudicated at the trial scheduled for January 11, 2021 are Claims 1, 14, 17, 18, 24, and 26.

## F.     CONTESTED ISSUES OF FACT AND LAW

The Parties identify the following issues of fact that remain to be litigated.  To the extent any issue of law discussed below is deemed to be an issue of fact, it is incorporated into this section. The Parties reserve the right to identify additional factual or legal issues that may arise, including issues raised by any further discovery undertaken in this case or the Court's rulings on any pending motions or rulings made at the pretrial conference on this action.

By providing this statement, the Parties do not concede that all of these issues are appropriate for trial.  The Parties also do not waive any of their pending motions.

### 1.     Issues To Be Tried By Jury Trial

**Infringement**

(66)    Whether VLSI has shown by a preponderance of evidence that accused '373 products[8] literally infringe any of Claims 1, 5, 6, 9, 11, 12, or 16 of the '373 Patent.

(67)    Whether VLSI has shown by a preponderance of evidence that the accused '759 products[9] that include Intel's Speed Shift Technology literally infringe any of Claims 1, 14, 17, 18, 24, or 26 of the '759 Patent.

(68)    Whether VLSI has shown by a preponderance of evidence that the accused '373 products infringe any of Claims 1, 5, 6, 9, 11, 12, or 16 of the '373 Patent under the doctrine of equivalents.[10]

---

[8] The parties offer different descriptions of the accused '373 products, as described above in paragraphs 1 (VLSI) and 20 (Intel).

[9] The parties offer different descriptions of the accused '759 products, as described above in paragraphs 2 (VLSI) and 39 (Intel).

[10] Intel contends that VLSI has not sufficiently disclosed its doctrine of equivalents theory with respect to the '373 Patent and should be precluded from asserting it at trial.

(69)    Whether VLSI has shown by a preponderance of evidence that the accused '759 products infringe any of Claims 1, 14, 17, 18, 24, or 26 of the '759 Patent under the doctrine of equivalents.

(70)    Whether VLSI has shown by a preponderance of the evidence that Intel has directly infringed any of the Asserted Claims of the '373 Patent, or has indirectly infringed the Asserted Claims of the '373 Patent by inducing others to directly infringe or by contributing to others' direct infringement.

(71)    Whether VLSI has shown by a preponderance of the evidence that Intel has directly infringed any of the Asserted Claims of the '759 Patent, or has indirectly infringed the Asserted Claims of the '759 Patent by inducing others to directly infringe or by contributing to others' direct infringement.

(72)    Whether VLSI has shown by a preponderance of the evidence that Intel has willfully infringed the Asserted Claims of the '373 and '759 Patents.

**Invalidity**

(73)    Whether Intel has shown by clear and convincing evidence that Claims 1, 5, 6, 9, 11, 12, and 16 of the '373 Patent are invalid under 35 U.S.C. § 103.

(74)    Whether Intel has shown by clear and convincing evidence that Claims 1, 14, 17, 18, 24, and 26 of the '759 Patent are invalid under 35 U.S.C. §§ 102 and/or 103.

**Damages**

(75)    Whether VLSI has shown by a preponderance of the evidence the amount of reasonable royalty damages to which it is entitled for any patent containing at least one claim that is found to be infringed and not invalid, and whether such damages should be ██████████ ██████████████████████████████.

### 2.   Issues To Be Tried By The Court

__Intel's Affirmative Defenses to Infringement__[11]

(76)    Whether Intel has shown by clear and convincing evidence that VLSI is barred from enforcing the '373 and '759 Patents against Intel because ███████████████████████ .

(77)    Whether VLSI is barred from asserting infringement under the doctrine of equivalents for the asserted claims of the '373 and '759 Patents due to prosecution history estoppel, the "all elements" rule, and/or ensnarement of the prior art.

__Damages and Remedies__

(78)    If the jury awards damages to VLSI, whether VLSI has shown by a preponderance of the evidence that it is entitled to supplemental damages for infringement that is not included in the jury verdict, including, for example (if the jury awards a running royalty), damages for infringement that occurred after the temporal cutoff for the data presented at trial, and the period between the jury verdict and the entry of final judgment.

(79)    If VLSI proves infringement of one or more patent claims that are not invalid and not unenforceable, whether VLSI is entitled to ongoing royalties for post-judgment infringement, and the amount of those royalties.

(80)    If VLSI proves infringement of one or more patent claims that are not invalid and not unenforceable, whether VLSI is entitled to a permanent injunction enjoining Intel from infringement of those patent claims.

---

[11] The Parties agree that these defenses should be tried to the Court rather than to the jury, and further have agreed that any proposed findings of fact and conclusions of law relating thereto be deferred for submission after the jury trial.

(81)     If the jury awards damages to VLSI, whether VLSI has shown by a preponderance of the evidence that it is entitled to pre- and/or post-judgment interest, and, if so, the amount.

(82)     If the jury finds willful infringement, whether VLSI should be awarded enhanced damages under 35 U.S.C. § 284 and, if so, the amount of enhancement.

(83)     Whether this case is exceptional under 35 U.S.C. § 285 and, if so, whether VLSI or Intel is entitled to attorneys' fees or costs, and, if so, the amount.

## G.     LIST OF WITNESSES

VLSI's witness list, and Intel's objections thereto, are attached as Exhibit 2.

Intel's witness list, and VLSI's objections thereto, are attached as Exhibit 3.

## H.     LIST OF EXHIBITS

VLSI's trial exhibit list is attached as Exhibit 4.

Intel's trial exhibit list is attached as Exhibit 5.

The Parties will continue to meet and confer regarding their respective objections and strive to resolve all objections and issues prior to presenting them to the Court.

## I.     DEPOSITION DESIGNATIONS

VLSI's deposition designations are attached as Exhibit 6.

Intel's deposition designations are attached as Exhibit 7.

## J.     TRIAL CONDUCT, DISCLOSURES, AND STIPULATIONS

(84)     The parties will continue to meet and confer to attempt to resolve their objections to deposition designations and exhibits, and to identify additional potential stipulations, including stipulations related to the admissibility of exhibits, and will supplement these stipulations to the extent that additional stipulations are agreed by the parties.

(85)    The parties request that the Court present a tutorial video from the Federal Judicial Center regarding the U.S. Patent Office to the members of the jury as part of its preliminary instructions to the jury.

(86)    The parties shall exchange updated exhibit lists and witness lists 14 days prior to trial to the extent necessary after a good faith review.  With respect to exhibit lists, the parties shall be permitted to update or change exhibit numbers for purposes of this updated list, and, if they do so, will provide a table correlating original exhibit numbers to updated exhibit numbers with their list.

(87)    The parties agree to cooperate in good faith to seek to prevent or limit public disclosure of documents containing information designated as Confidential, Outside Counsel Eyes Only, Outside Counsel Eyes Only – Source Code, or Outside Counsel Eyes Only – Process Recipes and/or testimony eliciting such information, including, but not limited to, offering into evidence only those pages of such documents relevant to claims or defenses and/or to redact any irrelevant portions of such documents.

(88)    The parties will exchange final versions of pre-marked electronic copies of exhibits 5 days prior to trial.

(89)    A party's failure to introduce any exhibit appearing on its list shall not be commented on during trial.

(90)    Legible photocopies of the '373 and '759 Patents and their Patent Office file histories may be offered as evidence in lieu of certified copies thereof, subject to all other objections that might be made to admissibility of certified copies.

(91)    Legible photocopies of United States patents and the contents of their Patent Office file histories may be offered and received into evidence in lieu of certified copies thereof, subject

to all other objections which might be made to the admissibility of certified copies. Legible photocopies of United States patent applications and the contents of their associated file histories may be offered and received into evidence in lieu of certified copies thereof, subject to all other objections which might be made to the admissibility of certified copies.

(92)     Legible photocopies of documents may be offered and received in evidence in lieu of originals thereof, subject to all foundational requirements and other objections that might be made to the admissibility of originals, subject to the right of the party against whom it is offered to inspect an original upon request reasonably in advance of any proposed use of the photocopy.

(93)     Each party may use an exhibit that is listed on the other party's exhibit list, to the same effect as though it were listed on its own exhibit list, subject to evidentiary objections. Any exhibit, once admitted, may be used equally by each party. The listing of an exhibit by a party on its exhibit list does not waive any evidentiary or other objections to that exhibit by the listing party should the opposing party attempt to offer it into evidence.

(94)     Subject to other provisions of this Order, no party may offer as evidence an exhibit not present on either party's exhibit list absent Court order or by agreement of the parties. Both parties reserve the right to seek leave to supplement their respective exhibit list, and reserve all objections to the same from the other party.

(95)     The parties agree to meet-and-confer in good faith regarding the authenticity and admissibility of the documents each party has produced.

(96)     Except as the Court may order, the calling party may not call a live witness at trial unless identified in accordance with the procedures herein.

(97)     Before they testify, fact witnesses shall be barred from hearing the testimony of other witnesses. However, in accordance with Fed. R. Evid. 615(b), this exclusion rule will not

apply to the individual designated by each party as its representative.  Expert witnesses are not excluded from the courtroom for either fact or expert testimony.

(98)    Any party may use testimony that is designated by another party, to the same effect as if it had initially designated the testimony as its own, subject to all objections.

(99)    Any deposition testimony may be used at trial for the purpose of impeachment, regardless of whether a party identified that testimony on its list of deposition designations, if the testimony is otherwise competent for such purpose.

(100)   No objections, preambles, or exchanges between counsel will be played or read as a part of deposition testimony.  Each party is responsible for providing a timed report of the deposition designations to counsel prior to the designations being played at trial. Deposition counter-designations will be counted against the designator's time. The time allotted by the Court for each side's presentation (if so specified) shall be reduced by the length of its respective designations.

(101)   The parties agree that for any deposition testimony played or read during either party's case-in-chief, all deposition designations, counter-designations, and counter-counter-designations from that witness will be played or read together in chronological order.

(102)   Nothing in the foregoing procedures shall preclude a party from using deposition testimony at trial for purposes of impeachment.

(103)   By **7:00 p.m. CT** before each day that a party is presenting its case, its counsel shall provide to counsel for the other party an estimate of when it expects to finish its presentation of evidence.

(104)   The parties agree that any exhibit listed on either party's exhibit list as to which no objection remains pending at the time of opening statements may be shown to the jury by either

party during opening statements if the exhibit will be the subject of testimony and introduced by a witness at trial.  The parties agree to meet and confer to the extent objections remain pending to attempt to resolve any such objections so that exhibits may be used during opening statements or objections can be resolved by the Court.

(105)   The parties agree that notice of a party's intended use of blow-ups (enlargements) of trial exhibits and/or deposition testimony and of ballooning, excerption, highlighting, etc. of such exhibits and/or deposition testimony need not be given (and need not be exchanged as a demonstrative exhibit), as long as the party has identified its intent to use the trial exhibit and/or deposition testimony according to the provisions of this Order.

(106)   The term "demonstrative" includes Powerpoints, graphics and animation demonstratives, but does not include scans of exhibits or deposition transcripts or underlining, highlighting, or similar emphasis on such exhibits or deposition transcripts. The parties do not need to exchange copies of demonstrative exhibits to be used only during cross-examinations.  The parties agree that if testimony will in good faith be played or elicited during trial, it may be used in demonstratives used during opening statements.

(107)   The party seeking to redact a document or close the courtroom must submit its reasoning and proposed redactions by **11:00 p.m. CT** the day before the exhibit is to be offered into evidence.  The parties will meet and confer in good faith over whether to jointly request to close the courtroom if source code is to be offered into evidence or displayed in Court.

(108)   The parties shall make good faith efforts to resolve objections over the use of identified witnesses, testimony, exhibits, and demonstratives by participating in a meet and confer following the identification of and objection to witnesses, testimony, exhibits, and demonstratives each day.

(109)   The parties will share any courtroom audio-visual equipment and will provide each other electronic versions of whatever they display immediately after the display.

(110)   The parties will arrange for an appropriate video stream of courtroom proceedings to be viewed by any individuals permitted to observe such proceedings.

(111)   Each party shall provide by no later than **12:00 p.m. CT** a copy of all demonstrative exhibits they plan to use the following day in the opening statement, and agree to limit the number of opening statement slides to 100 slides per side.  The receiving party shall provide objections to such demonstratives by **3:00 p.m. CT** that same day, and the parties shall meet and confer on any objections at **5:00 p.m. CT** that same day.

(112)   The parties will identify witnesses to be called live or by deposition, and the order of call, by **12:00 p.m. CT three calendar days** prior to the date that the party intends to call such witness (e.g., by noon on Sunday for any witness who will be called on Wednesday).

(113)   The party offering a witness shall identify any exhibits, by exhibit number, that it intends to use during direct examination of that witness by **7:00 p.m. CT** two calendar days before the trial day the witness is called (e.g., by 7:00 p.m. CT on Monday for a witness who will be called on Wednesday).  The receiving party shall provide objections to such exhibits by **9:00 p.m. CT** that same day, and the parties shall meet and confer on any objections by **10:00 p.m. CT** that same day to resolve any evidentiary objections to such exhibits as well as any objections to the public disclosure of such exhibits, and shall discuss whether the producing party intends to request the Court to take any cautionary measures (e.g., clearing the Courtroom, sealing the record, etc.).  Materials (including, but not limited to, demonstratives) to be used solely for impeachment purposes (and not admitted into evidence) need not be identified in advance.

(114)   Each side will disclose graphical, illustrative, or demonstrative material that will be shown to the trier of fact during the testimony of a witness called by that side by **7:00 p.m. CT** the calendar day before the witness is called (for example, by **7:00 p.m. CT** on Tuesday for a witness who will be called on Wednesday).  Demonstratives to be used solely for impeachment purposes need not be identified in advance.   The receiving party shall provide objections to such demonstratives by **9:00 p.m. CT** that same day, and the parties shall meet and confer on any objections at **10:00 p.m. CT** that same day.  The term "demonstrative" includes Powerpoints, graphics and animation demonstratives, but does not include scans of exhibits or deposition transcripts or underlining, highlighting, or similar emphasis on such exhibits or deposition transcripts.

(115)   For each witness that a party intends to call by deposition, the party shall, by **12:00 p.m. CT three calendar days** prior to the date the party intends to call such witness, provide the other side with the specific pages and lines of transcript from the witness's deposition as set forth in this Pre-Trial Order that it expects to read or play during trial as well as any trial exhibits to be offered through that witness's deposition testimony.  The receiving party shall, by **9:00 p.m. CT** the same day, identify any additional previously designated testimony to be read or played, and any unresolved objections to testimony or exhibits sought to be used with the witness.  By **9:00 p.m. CT** one calendar day before the deposition testimony is expected to be read or played in court, the first party shall identify its objections to the receiving party's designated testimony and any objections to the trial exhibits to be offered through that witness's designated deposition testimony.  The parties shall meet and confer at **10:00 p.m. CT** that same day to attempt to resolve any objections, with any objections that cannot be resolved to be raised with the Court the day the deposition testimony is expected to be read or played.

**K.      DISPUTED TRIAL CONDUCT ITEMS**

(116)   (**VLSI:** VLSI does not believe that Intel's proposal regarding the exchange of closing demonstratives is workable, including because the timing of closing is unpredictable, and because Intel's proposed exchange time may run up against or conflict with the presentation of evidence.) / (**Intel:** It is Intel's position that each party shall identify and exchange demonstrative exhibits that will be used in its closing statement by **5:00 p.m. CT** the day before it expects to present its closing statement.  The receiving party shall provide objections to such demonstratives by **9:00 p.m.** CT that same day, and the parties shall meet and confer at **10:00 p.m. CT** that same day on any objections.)

(117)   (**Intel:** It is Intel's position that with respect to (1) those witnesses who will not be called to testify at trial, and (2) those witnesses who have testified on behalf of a party pursuant to Federal Rule of Civil Procedure 30(b)(6) (regardless of whether the witness may be called to testify at trial), each party has designated the specific pages and lines of transcript that it may read or play during trial.  Further, it is Intel's position that no deposition testimony not previously designated may be later added for these witnesses, absent good cause shown.  For avoidance of doubt, a party may not affirmatively play or read testimony from witnesses whose testimony it designated pursuant to Fed. R. Civ. P. 30(b)(6).  A party may still play or read counter-designated testimony from witnesses whose testimony it designated pursuant to Fed. R. Civ. P. 30(b)(6).) / (**VLSI:**  It appears that Intel is proposing that each side be permitted to introduce the deposition testimony of its own Rule 30(b)(6) witnesses at trial regardless of whether such testimony is admissible under Federal Rule of Civil Procedure 32 and the Federal Rules of Evidence. VLSI objects to Intel introducing self-serving deposition testimony of its own witnesses contrary to the Federal Rules, which should govern this trial.  Furthermore, VLSI maintains all objections to Intel's deposition

designations, including Intel's overbroad and improper "counter-"designations of extensive scripted, unsupported and highly prejudicial "redirect" narratives from Intel's own employees for which VLSI was not given proper notice or opportunity to respond.  VLSI does not believe it is appropriate for those designations to be played during VLSI's case-in-chief.)

(118)  It is Intel's position that a single attorney will handle each witness during a particular phase of the trial (i.e., jury versus bench), regardless of the scope and number of issues on which that witness testifies.  For example, if an expert witness is addressing both infringement and validity, only one attorney will be allowed to cross-examine that witness.

## L.    JURY MATERIALS

The parties' proposed jury instructions are attached as Exhibit 8.

VLSI's proposed verdict form, and Intel's objections thereto, are attached as Exhibit 9.

Intel's proposed verdict form, and VLSI's objections thereto, are attached as Exhibit 10.

VLSI's proposed half-page statement of the case, and Intel's objections thereto, are attached as Exhibit 11.

Intel's proposed half-page statement of the case, and VLSI's objections thereto, are attached as Exhibit 12.

VLSI's proposed voir dire questions, and Intel's objections thereto, are attached as Exhibit 13.

Intel's proposed voir dire questions, and VLSI's objections thereto, are attached as Exhibit 14.

## M.    LIST OF PENDING MOTIONS RELEVANT TO THE -254 CASE

| Date | D.I. | Motion: |
|------|------|---------|
| 9/3/2020 | 188 | Defendant Intel Corporation's Motion to Stay Court Proceedings |

| Date | D.I. | Motion: |
|------|------|---------|
| 10/5/2020 | 253 | Defendant Intel Corporation's Motion for Summary Judgment of No Infringement Under the Doctrine of Equivalents for U.S. Patent No. 7,725,759 |
| 10/5/2020 | 254 | Defendant Intel Corporation's Motion for Summary Judgment of No Direct Infringement of Claims 1, 2, 4-6, and 16 of U.S. Patent No. 7,523,373 |
| 10/5/2020 | 257 | Defendant Intel Corporation's Motion for Summary Judgment of No Infringement Under the Doctrine of Equivalents for U.S. Patent Nos. 8,156,357, 7,523,373, 7,606,983, 7,292,485, 6,366,522, and 6,633,187 |
| 10/5/2020 | 264 | Defendant Intel Corporation's Opposed Daubert Motion to Exclude the Opinions and Testimony of Ryan Sullivan, Ph.D. |
| 10/5/2020 | 266 | Defendant Intel Corporation's Opposed Daubert Motion to Exclude Plaintiff VLSI Technology LLC's Experts' Reliance on Innography Patent Scores for the Asserted Patents |
| 10/5/2020 | 267 | Defendant Intel Corporation's Opposed Daubert Motion to Exclude Plaintiff VLSI Technology LLC's Experts from Testifying as to Matters Beyond Their Technical Expertise |
| 10/5/2020 | 275 | Plaintiff VLSI Technology LLC's Motions for Summary Judgment |
| 11/10/2020 | 348-02 | ██████████████████████████████████████████ |
| 11/20/2020 | 353-02 | Defendant Intel Corporation's Opposed Motions *in Limine* |
| 11/20/2020 | 354-02 | To the extent not resolved at the December 15, 2020 hearing, Plaintiff's Motion *in Limine* No. 1 to Exclude Evidence or Arguments That Intel Has Waived the Right to Assert |
| 11/20/2020 | 356-02 | To the extent not resolved at the December 15, 2020 hearing, Plaintiff's Motion *in Limine* No. 2 to Exclude Disparaging and Prejudicial Evidence Regarding ████████████ ████████████ |
| 11/20/2020 | 358-02 | To the extent not resolved at the December 15, 2020 hearing, Plaintiff's Motion *in Limine* No. 4 to Exclude Improper Damages Evidence and Argument |
| 11/20/2020 | 360-02 | To the extent not resolved at the December 15, 2020 hearing, Plaintiff's Motion *in Limine* No. 6 to Exclude Improper Arguments Regarding the Patents in Suit and Accused Products |

**N.      PROBABLE LENGTH OF TRIAL AND ISSUES TO BE TRIED**

**1.      VLSI's Position**

VLSI's estimate of the probable length of the jury trial is 24 hours (exclusive of voir dire, opening, and closing), with 12 hours for each side. This duration takes into account ███████ ██████████████████████████████████████████████████████████████████████████ ██████████████████████, among other things.

VLSI's proposal would provide each side with a fair and reasonable opportunity to present its case to the jury.  VLSI's proposal will also encourage the Parties to focus their case at trial on their strongest respective evidence.  This will assist the jury in better understanding the key issues that they will be called to decide.  Intel cites to the Parties' voluminous pretrial submissions, but it is commonplace to have voluminous pretrial submissions in a patent case and one of the effects of those submissions was to obtain orders from the Court that already have started to narrow the issues in dispute.  As with any patent trial, both sides here will have to substantially streamline their case even further for the jury.  To give one example, Intel has submitted expert reports from <u>four</u> different damages experts in the -254 case, one of whom largely summarizes, and then endorses, the opinions of Intel's other three damages experts.  VLSI's proposal on trial time would discourage the Parties from presenting such largely duplicative testimony at trial, and hence is more respectful of the jury's and Court's time.  Intel's counsel has acknowledged that "12 claims in a one-week trial we probably could do."  August 7, 2020 H'rg Tr. at 20:11-12.  Here, VLSI is asserting just 13 claims, only 6 of which are independent claims.  Trying just one additional dependent claim does not warrant the substantial increase of trial time that Intel seeks.  Indeed, Intel has taken the position that "there is significant overlap in much of the claim language" across

the asserted claims (March 4, 2020 Saxton Email to Proctor), further confirming the reasonableness of completing this trial on only 6 independent claims within 24 hours.

### 2.    Intel's Position

Intel estimates the probable length of the jury trial is 40 hours (exclusive of voir dire, opening statements, and closing arguments), with 20 hours for each side.  Intel estimates that an additional 3 hours (1.5 hours per side) will be needed for a bench trial.

VLSI currently assert 13 claims across two patents.[12]  VLSI has repeatedly asserted that each claim is "unique" and presents "unique issues of infringement or validity."  *See, e.g.*, August 7, 2020 Hr'g Tr. at 14:4-9.  VLSI asserts three infringement theories – one for the '759 Patent and two for the '373 Patent.  The parties have further identified over a dozen witnesses on their "will call" lists and two dozen witnesses on their "may call" lists, more than 5,500 exhibits (of which VLSI identified over 4,000 exhibits), and over 3,500 deposition designations (of which VLSI identified approximately 2,500 designations).  VLSI has refused to further narrow its case.  VLSI's proposed time allotment suggestion would be unworkable for the case VLSI has elected to bring.  The asserted '373 and '759 Patents are complicated and the claims are lengthy.  Likewise, the accused Intel products are some of the most complex technologies in the world, as VLSI's experts concede, and VLSI has accused 14 different product families of infringing the asserted patents.  VLSI is also intending to present a ███████████████████████████████████████ █████████████████████████████████████████████████████. For example, VLSI's model ████████████████████████████████████████████████████████████████████████████

---

[12] VLSI is asserting 13 claims, and its emphasis that only a subset of those claims are independent is misleading.  Indeed, VLSI argued to the Court for the ability to assert a greater number of claims and could have, but chose not to, assert fewer claims at trial.  *See generally* August 7, 2020 Hr'g Tr. at 20:7-13 (discussing VLSI's proposal to assert 25 claims at trial).



Intel agrees that the parties should and will streamline their cases in multiple ways and does not intend to offer duplicative or overlapping testimony.  But even after that streamlining, the sheer number of issues across the 13 asserted claims from two different patents based on three infringement theories and a complicated, ███████████████ demand will necessitate at least the 22 hours per side that Intel is requesting.

**O.      OTHER ISSUES**

(119)   The Parties agree that witnesses who are unable to travel for the trial due to COVID-19 travel restrictions or are unwilling or unable to travel due to concerns about health and safety may be called via live videoconference.  To the extent that any party intends to offer testimony in this fashion, it will provide an initial identification of such witnesses to the best of its ability at least 14 calendar days before the scheduled start of trial, and a final supplemental identification, if necessary, at least 7 calendar days before the scheduled start of trial.  The parties reserve the right to make amendments to their identifications in view of events or circumstances arising after the date on which they are provided.

P.     **OTHER DISPUTED ISSUES**

(120)  **Intel's Motion to Continue:**

 a.  **Intel's Position:**  As explained in Intel's Motion to Continue Trial (D.I. 366) and
     at the December 15, 2020 hearing, it is Intel's position that the trial should be
     continued until the end of March 2021 in light of the risks presented by the COVID-
     19 pandemic.  Among other reasons that justify such a continuance, Intel would be
     significantly prejudiced and its due process rights undermined if the trial proceeds
     on January 11, 2021 in light of the high likelihood that Intel will be required to
     present certain witnesses virtually.  *See Sutphin v. Ethicon, Inc.*, No. 2:14-CV-
     01379, 2020 WL 5229448, at *1 (S.D. W. Va. Sept. 1, 2020); *Hardy v. Johns-
     Manville Sales Corp.*, 681 F.2d 334, 338 (5th Cir. 1982); *Thompson v. Madison
     Cty. Bd. of Educ.*, 476 F.2d 676, 678 (5th Cir. 1973); *Boddie v. Connecticut*, 401
     U.S. 371, 377 (1971).  This is particularly so to the extent that VLSI will present
     its witnesses in person.  This would deprive Intel of the ability to present its case in
     the manner it prefers and may be less effective.  *See Solas OLED Ltd. v. Samsung
     Display Co.*, No. 2:19-CV-00152-JRG, slip op. at 3 n.4 (E.D. Tex. Nov. 20, 2020),
     ECF No. 302 (Gilstrap, J.) ("[T]he remote, sterile, and disjointed reality of virtual
     proceedings cannot at present replicate the totality of human experience embodied
     in and required by our Sixth and Seventh Amendments."); *Guardant Health, Inc.
     v. Foundation Medicine, Inc.*, No. CV 17-1616, 2020 WL 6120186, at *2 (D. Del.
     Oct. 16, 2020); *Sunoco Partners Mktg. & Terminals L.P. v. Powder Springs
     Logistics, LLC*, No. 17-1390, 2020 WL 3605623, at *2 (D. Del. July 2, 2020); *Rusu
     v. INS*, 296 F.3d 316, 322 (4th Cir. 2002); *United States v. Lawrence*, 248 F.3d 300,

304 (4th Cir. 2001).  Likewise, any jury pool convened during the pandemic may not reflect a fair cross-section of the community, as the Seventh Amendment requires.  *See Timmel v. Phillips*, 799 F.2d 1083, 1086 n.5 (5th Cir. 1986). Intel hereby incorporates by reference its briefing on the Motion to Continue (D.I. 366, 392) and its argument from the December 15, 2020 hearing.

b. **VLSI's Position:** VLSI agrees with the Court's finding that the trial should go forward on January 11, 2021 in Waco, Texas.  VLSI incorporates by reference its briefing and supporting papers in response to Intel's Motion to Continue (D.I. 391) and its argument from the December 15, 2020 hearing on same.

## Q.    CERTIFICATIONS

The undersigned counsel for each side of the Parties in this action do hereby certify and acknowledge the following:

(121)   Full and complete disclosure has been made in accordance with the Federal Rules of Civil Procedure and the Court's orders;

(122)   Discovery limitations set forth in the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders have been complied with;

(123)   Each exhibit in the List of Exhibits herein:

(a)      is in existence;

(b)      is numbered; and

(c)      has been disclosed and shown to opposing counsel.

Approved as to form and substance:

Dated: December 22, 2020

By:    /s/ Andy Tindel

Morgan Chu (*pro hac vice*)
Benjamin W. Hattenbach  (*pro hac vice*)
Iian D. Jablon  (*pro hac vice*)
Alan J. Heinrich  (*pro hac vice*)
Ian Robert Washburn  (*pro hac vice*)
Amy E. Proctor  (*pro hac vice*)
Dominik Slusarczyk  (*pro hac vice*)
Elizabeth C. Tuan  (*pro hac vice*)
Charlotte J. Wen  (*pro hac vice*)
Brian Weissenberg  (*pro hac vice*)
Benjamin Monnin  (*pro hac vice*)
Jordan Nafekh  (*pro hac vice*)
**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, California  90067
Telephone: (310) 277-1010
Facsimile: (310) 203-7199
mchu@irell.com
bhattenbach@irell.com
ijablon@irell.com
aheinrich@irell.com
iwashburn@irell.com
aproctor@irell.com
dslusarczyk@irell.com
etuan@irell.com
cwen@irell.com
bweissenberg@irell.com
bmonnin@irell.com
jnafekh@irell.com

Michael H. Strub, Jr. (*pro hac vice*)
Babak Redjaian  (*pro hac vice*)
**IRELL & MANELLA LLP**
840 Newport Center Drive, Suite 400
Newport Beach, California  92660
Telephone: (949) 760-0991
Facsimile: (949) 760-5200
mstrub@irell.com
bredjaian@irell.com

J. Mark Mann (Texas Bar No. 12926150)
mark@themannfirm.com
G. Blake Thompson (Texas Bar No. 24042033)
blake@themannfirm.com
**MANN | TINDEL | THOMPSON**
300 W. Main Street
Henderson, TX 75652
Telephone: (903) 657-8540
Facsimile:  (903) 657-6003

Andy Tindel (Texas Bar No. 20054500)
atindel@andytindel.com
**MANN | TINDEL | THOMPSON**
112 E. Line Street, Suite 304
Tyler, Texas 75702
Telephone: (903) 596-0900
Facsimile:  (903) 596-0909

Craig D. Cherry (Texas Bar No. 24012419)
ccherry@haleyolson.com
**HALEY & OLSON, P.C.**
100 N. Ritchie Road, Suite 200
Waco, Texas 76701
Telephone: (254) 776-3336
Facsimile:  (254) 776-6823

*Attorneys for VLSI Technology LLC*

By:      */s/ Steve Ravel*

William F. Lee (*pro hac vice*)
Louis W. Tompros (*pro hac vice*)
Kate Saxton (*pro hac vice*)
Joseph Mueller (*pro hac vice*)
Felicia H. Ellsworth (*pro hac vice*)
Jordan L. Hirsch (*pro hac vice*)
Thomas Lampert (*pro hac vice*)
James M. Lyons  (*pro hac vice*)
George F. Manley  (*pro hac vice*)
**WILMER CUTLER PICKERING HALE & DORR LLP**
60 State Street
Boston, Massachusetts 02109
Tel: (617) 526-6000
william.lee@wilmerhale.com
louis.tompros@wilmerhale.com
kate.saxton@wilmerhale.com
joseph.mueller@wilmerhale.com
felicia.ellsworth@wilmerhale.com
jordan.hirsch@wilmerhale.com
thomas.lampert@wilmerhale.com
james.lyons@wilmerhale.com
george.manley@wilmerhale.com

Gregory H. Lantier (*pro hac vice*)
Amanda L. Major (*pro hac vice*)
Joshua L. Stern (*pro hac vice*)
**WILMER CUTLER PICKERING HALE & DORR LLP**
1875 Pennsylvania Avenue
Washington DC 20006
Tel: (202) 663-6000
gregory.lantier@wilmerhale.com
amanda.major@wilmerhale.com
joshua.stern@wilmerhale.com

Mary V. Sooter (*pro hac vice*)
**WILMER CUTLER PICKERING HALE & DORR LLP**
1225 17th Street, Suite 2600
Denver, CO 80202
Tel: (720) 274-3164

J. Stephen Ravel (Texas Bar No. 16584975)
**KELLY HART & HALLMAN LLP**
303 Colorado, Suite 2000
Austin, Texas 78701
Tel: (512) 495-6429
steve.ravel@kellyhart.com

James E. Wren (Texas Bar No. 22018200)
1 Bear Place, Unit 97288
Waco, Texas 76798
Tel: (254) 710-7670
james.wren@baylor.edu

*Attorneys for Intel Corporation*

mindy.sooter@wilmerhale.com

Jeffrey A. Dennhardt (*pro hac vice*)
**WILMER CUTLER PICKERING HALE &
DORR LLP**
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: (212) 295-6293
jeffrey.dennhardt@wilmerhale.com

Anh-khoa Tran
Arthur W. Coviello (*pro hac vice*)
Alexis Pfeiffer (*pro hac vice*)
**WILMER CUTLER PICKERING HALE &
DORR LLP**
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Tel: (650) 858-6000
arthur.coviello@wilmerhale.com
khoa.tran@wilmerhale.com
alexis.pfeiffer@wilmerhale.com

## <u>CERTIFICATE OF SERVICE</u>

A true and correct copy of the foregoing instrument was served or delivered electronically via email, to all counsel of record, on December 22, 2020.

*/s/      Jordan Nafekh*
/s/ Jordan Nafekh