# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| VLSI TECHNOLOGY LLC, | |
| Plaintiff, | **Case No**: 6:19-cv-255-ADA |
| | (*Consolidated for pretrial purposes only with* Nos. 6:19-cv-254-ADA *and* 6:19-cv-256-ADA) |
| v. | **JURY TRIAL DEMANDED** |
| INTEL CORPORATION, | ███████████████ |
| Defendant. | |

## PLAINTIFF VLSI TECHNOLOGY LLC'S MOTIONS IN LIMINE
(CASE NO. 6:19-CV-255)

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

VLSI MIL No. 1.2—References To Alleged NonInfringing Alternatives That
Are Not Acceptable Or Were Not Available ............................................................... 1

VLSI MIL No. 1.6—Hypothetical Royalty Stacking Arguments ..................................... 2

VLSI MIL No. 2.6— █████████████████████ ................................. 6

VLSI MIL No. 3.2—Intel's Alleged Industry Reputation, Corporate Character,
Philanthropy, and Benefits Provided To The World ................................................. 7

VLSI MIL No. 3.4—References To VLSI's Request For Damages As
Increasing The Price Of Intel's Products, ████████████████████
█████████████████ ................................................................................. 10

VLSI MIL No. 4.3—Intel's Patents .................................................................................. 11

VLSI MIL No. 5.1—Lay Witness Infringement Opinions ............................................... 16

VLSI MIL No. 5.4—Predecessor Owners' Non-Assertion Of Patents Against
Intel ......................................................................................................................... 21

VLSI MIL No. 6.2—Absence of Inventors From Trial .................................................... 24

VLSI MIL No. 7—Excluding Intel's Experts From Relying On Undisclosed
Hearsay Conversations With Intel Employees ......................................................... 25

VLSI MIL No. 8— ████████████████████████████████
████ ......................................................................................................... 27

VLSI MIL No. 9— ████████████████████ .......................................... 28

     A.   ████████████████████████ ............................................... 29

     B.   █████████████████████████
███████ ......................................................................................... 32

# **TABLE OF AUTHORITIES**

**Page(s)**

## Cases

*Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*,
265 F.3d 1294 (Fed. Cir. 2001)....................................................................12

*Advanced Cardiovascular Sys. Inc. v. Scimed Life Sys., Inc.*,
887 F.2d 1070 (Fed. Cir. 1989)....................................................................18

*Advanced Technology Incubator, Inc. ["ATI"] v. Sharp Corp.*,
2010 WL 11451797 (E.D. Tex. 2010) ......................................................23, 24

*Affiliati Network, Inc. v. Wanamaker*,
No. 1:16-CV-24097-UU, 2017 WL 8784853 (S.D. Fla. Aug. 23, 2017) ................6

*Air Turbine Tech., Inc. v. Atlas Copco AB*,
410 F.3d 701 (Fed. Cir. 2005)......................................................................18

*Bianco v. Globus Med., Inc.*,
30 F. Supp. 3d 565 (E.D. Tex. 2014) .............................................................27

*Bio-Tech. Gen. Corp. v. Genentech, Inc.*,
80 F.3d 1553 (Fed. Cir. 1996)......................................................................12

*In re Biogen '755 Patent Litig.*,
No. 10-2734 (CCC) (JBC), 2018 WL 3613162 (D.N.J. July 26, 2018) ................25

*Boltex Mfg. Co., L.P. v. Ulma Piping USA Corp.*,
No. 4:17-CV-1400, 2019 WL 2716313 (S.D. Tex. June 28, 2019)......................27

*Briese Lichttechnik Vertriebs GmbH v. Langton*,
No. 09 Civ. 99790(LTS)(MHD), 2012 WL 5457681 (S.D.N.Y. Nov. 8, 2012) ...................18

*Brown v. Johnson & Johnson*,
No. CV 12-4929, 2015 WL 12834346 (E.D. Pa. Aug. 28, 2015)..........................9

*Canrig Drilling Tech., Ltd. v. Trinidad Drilling, L.P.*,
No. H-15-0656, 2016 WL 7188657 (S.D. Tex. Dec. 12, 2016) ...............................1

*Changzhou Kaidi Elec. Co. v. Okin Am., Inc.*,
No. CIV. CCB-13-1798, 2015 WL 2168840 (D. Md. May 7, 2015) ......................25

*Commonwealth Sci. & Indus. Research Org. v. Cisco Sys., Inc.*,
809 F.3d 1295 (Fed. Cir. 2015)..............................................................3, 4, 5, 11

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
   No. 2:14-CV-911-JRG-RSP, 2016 WL 4718963 (E.D. Tex. July 12, 2016) .........................10

*Cybergym Rsch., LLC v. ICON Health and Fitness, Inc.*,
   No. 2:05-CV-527 (DF), 2007 WL 9724237 (E.D. Tex. Oct. 7, 2007) ...................................19

*Dentsply Sirona, Inc. v. Edge Endo, LLC*,
   No. 1-17-cv-1041, 2020 WL 6392764 (D. N.M. Nov. 2, 2020)..............................................17

*Fiskars, Inc. v. Hunt Mfg. Co.*,
   221 F.3d 1318 (Fed. Cir. 2000)...............................................................................................15

*Garretson v. Clark*,
   111 U.S. 120 (1884).................................................................................................................14

*Georgia Pacific Corp. v. U.S. Plywood Corp.*,
   318 F. Supp. 1116 (S.D.N.Y. 1970).........................................................................................13

*Habersham Plantation Corp. v. Molyneux*,
   No. 10-61526-CIV, 2011 WL 13216995 (S.D. Fla. Dec. 5, 2011).........................................10

*Hochstein v. Microsoft Corp.*,
   2009 WL 2022815 (E.D. Mich. July 7, 2009) ........................................................................14

*HVLPO2, LLC v. Oxygen Frog, LLC*,
   949 F.3d 685 (Fed. Cir. 2020)................................................................................................23

*Integra Lifescis. I, Ltd. v. Merck KGaA*,
   331 F.3d 860 (Fed. Cir. 2003)................................................................................................24

*Intel Corp. v. Fortress Investment Group*,
   No. 19-cv-07651-EMC (N.D. Cal.) ..........................................................................................7

*Intellectual Ventures II LLC v. FedEx Corp.*,
   No. 2:16-CV-00980-JRG, 2018 WL 10638138 (E.D. Tex. Apr. 26, 2018) ...........................25

*Island Intellectual Prop. LLC v. Deutsche Bank AG*,
   No. 09 CIV. 2675 KBF, 2012 WL 526722 (S.D.N.Y. Feb. 14, 2012) ...................................27

*Laser Dynamics, Inc. v. Quanta Computer, Inc.*,
   No. 2:06-cv-348, 2011 WL 197869 (E.D. Tex. Jan. 20, 2011) ................................................1

*Markman v. Westview Instruments, Inc.*,
   52 F.3d 967 (Fed. Cir. 1995)..................................................................................................18

*Mars, Inc. v. TruRX LLC*,
   No. 6:13-CV-526-RWS-KNM, 2016 WL 4055675 (E.D. Tex. Apr. 29, 2016)................6, 10

*Marvel Characters, Inc. v. Kirby*,
  726 F.3d 119 (2d Cir. 2013)...................................................................................27

*Minnesota Min. & Mfg. Co. v. Fellowes Mfg. Co.*,
  76 F. Supp. 2d 972 (D. Minn. 1999) .....................................................................15

*MV3 Partners LLC v. Roku, Inc.*,
  No. 6:18-cv-00308-ADA, ECF No. 332, slip op. (W.D. Tex. Sep. 29, 2020)
  (Albright, J.)..........................................................................................................6, 10

*Nat'l Presto Indus., Inc. v. West Bend Co.*,
  76 F.3d 1185 (Fed. Cir. 1996)................................................................................15

*Network-1 Techs., Inc. v. Alcatel-Lucent USA, Inc.*,
  No. 6:11-cv-492-RWS-KNM, 2017 WL 4173467 (E.D. Tex. Sep. 21, 2017) .........................4

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005)..............................................................................18

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,
  702 F.3d 1351 (Fed. Cir. 2012)..............................................................................22

*Presley v. Commercial Moving & Rigging, Inc.*,
  25 A.3d 873 (D.C. 2011) .......................................................................................27

*Retractable Techs. Inc. v. Becton, Dickinson & Co.*,
  2009 WL 8725107 (E.D. Tex. Oct. 8, 2009) .........................................................13

*Rocker Mgmt., LLC v. Lernout & Hauspie Speech Prod. N.V.*,
  2007 WL 2814653 (D.N.J. Sept. 24, 2007) ...........................................................31

*Roton Barrier, Inc. v. Stanley Works*,
  79 F.3d 1112 (Fed. Cir. 1996) (Nies, J., concurring)............................................15

*SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prod., LLC*,
  137 S. Ct. 954 (2017).........................................................................................18, 24

*Scott v. Minuteman Press Int'l, Inc.*,
  68 F.3d 481 (9th Cir. 1995) .....................................................................................6

*In re Seagate Tech., LLC*,
  497 F.3d 1360 (Fed. Cir. 2007)..............................................................................20

*Securian Fin. Grp., Inc. v. Wells Fargo Bank, N.A.*,
  2015 WL 13637330 (D. Minn. Feb. 10, 2015) ......................................................32

*Shotts v. Geico Gen. Ins. Co.*,
No. CIV-16-1266-SLP, 2018 U.S. Dist. LEXIS 220645 (W.D. Okla. July 12, 2018) ....................................................................................................................28

*SimpleAir, Inc. v. AWS Convergence Techs., Inc.*,
No. 2:09-CV-289, 2012 WL 13207358 (E.D. Tex. Apr. 3, 2012)......................9, 17

*SSL Servs., LLC v. Citrix Sys., Inc.*,
940 F. Supp. 2d 480 (E.D. Tex. 2013) ...................................................................20

*Summit 6, LLC v. Samsung Elecs. Co.*,
802 F.3d 1283 (Fed. Cir. 2015)..........................................................................3, 11

*Sundance, Inc. v. DeMonte Fabricating Ltd.*,
550 F.3d 1356 (Fed. Cir. 2008).............................................................................23

*TiVo, Inc. v. EchoStar Commc'ns Corp.*,
516 F.3d 1290 (Fed. Cir. 2008).............................................................................22

*Toshiba Corp. v. Imation Corp.*,
No. 09-CV-305-SLC, 2013 WL 1248633 (W.D. Wis. Mar. 26, 2013) ....................9

*TQP Dev., LLC v. Intuit Inc.*,
2014 U.S. Dist. LEXIS 84054 (E.D. Tex. June 20, 2014)......................................22

*Ty Inc. v. Softbelly's Inc.*,
No. 00 C 5230, 2006 WL 5111124 (N.D. Ill. Apr. 7, 2006), *clarified on denial of reconsideration*, No. 00 C 5230, 2006 WL 8448101 (N.D. Ill. Apr. 18, 2006) .......................................................................................................................9

*In re: Tylenol (Acetaminophen) Mktg.*,
No. 2436, 2016 WL 3125428 (E.D. Pa. June 3, 2016) ...........................................9

*UNF W., Inc. v. NLRB*,
844 F.3d 451 (5th Cir. 2016) .................................................................................21

*United States v. Kantengwa*,
781 F.3d 545 (1st Cir. 2015)..................................................................................27

*VirnetX, Inc. v. Cisco Sys., Inc.*,
767 F.3d 1308 (Fed. Cir. 2014)..............................................................................14

*VLSI*
*Case 1*, D.I. 507, Order .......................................................................11, 12, 13, 16

*VLSI Technology LLC v. Intel Corp.*,
No. 18-966 (D. Del.) ................................................................................................7

*VLSI Technology LLC v. Intel Corp.*,
    No. 3:17-cv-05671 (N.D. Cal.) ...................................................................6, 31, 32

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
    520 U.S. 17 (1997)......................................................................................15

*Wisconsin Alumni Research Found. v. Apple, Inc.*,
    No. 14-CV-062-WMC, 2015 WL 13547000 (W.D. Wis. Sept. 30, 2015)..............................1

*Zygo Corp. v. Wyko Corp.*,
    79 F.3d 1563 (Fed. Cir. 1996)......................................................................15

**Rules**

Fed. R. Civ. P. 26 ...............................................................................17, 19

Fed. R. Civ. P. 30 ....................................................................................4

Fed. R. Evid. 401 ........................................................................... *passim*

Fed. R. Evid. 402 .............................................................................1, 6, 8, 10

Fed. R. Evid. 403 ........................................................................... *passim*

Fed. R. Evid. 404 ...................................................................................6, 9

Fed. R. Evid. 602 ...............................................................................17, 20, 21

Fed. R. Evid. 608 ....................................................................................6

Fed. R. Evid. 701 ...............................................................................17, 18, 19

Fed. R. Evid. 702 ........................................................................... *passim*

Fed. R .Evid. 703 ...................................................................................27

    *Numbered exhibits between 1 and 62 were previously filed as attachments to the Declaration of Charlotte J. Wen, which is available at D.I. 363 (Case No. 1:19-cv-977-ADA). Numbered exhibits between 63 and 94 are attached to the Declaration of Charlotte J. Wen, filed concurrently herewith.

    **Unless otherwise indicated, all emphases is added and internal citations are omitted.

Plaintiff VLSI Technology LLC respectfully moves the Court *in limine* for an order excluding any reference, evidence, testimony (both lay and expert), or arguments concerning the below topics.

**VLSI MIL No. 1.2—References To Alleged NonInfringing Alternatives That Are Not Acceptable Or Were Not Available**

The Court should exclude any reference by Intel to alleged noninfringing alternatives that are not acceptable because they lack the patented technologies' advantages or were not available at the time of the hypothetical negotiation.  VLSI previously submitted a motion on this topic in the prior case as VLSI MIL No. 1.2, which this Court granted.  *See* No. 6:21-cv-00057-ADA ("*VLSI Case 1*"), D.I. 363, VLSI Mot. at 8-10; D.I. 507, Order at 2.  The Court's prior ruling was well-founded and should be entered again here.

Evidence of any such alleged noninfringing alternatives is irrelevant and prejudicial.  *See* FED. R. EVID. 401, 402, 702; *see also Canrig Drilling Tech., Ltd. v. Trinidad Drilling, L.P.*, No. H-15-0656, 2016 WL 7188657, at \*3 (S.D. Tex. Dec. 12, 2016) ("The proffered alternatives must have been available, acceptable, and non-infringing"); *Laser Dynamics, Inc. v. Quanta Computer, Inc.*, No. 2:06-cv-348, 2011 WL 197869, at \*3 (E.D. Tex. Jan. 20, 2011) (striking accused infringer's damages expert report because it cited no facts indicating that any of the non-infringing alternatives were available); *cf. Wisconsin Alumni Research Found. v. Apple, Inc.*, No. 14-CV-062-WMC, 2015 WL 13547000, at \*4 (W.D. Wis. Sept. 30, 2015) (defendant agreed not to introduce evidence of alternatives that were not available).

Intel has failed to establish the availability of, and in most cases even identify, any noninfringing alternatives for the '522 or '187 Patents. ███████████████████████

████████████████████████████████████████

████████████████████████████████████████

 Intel should be precluded from relying on any of these vaguely-referenced, unestablished alleged noninfringing alternatives at trial.  Further, Intel did not identify any noninfringing alternatives during discovery and should be precluded from raising noninfringing alternative arguments at trial.  Ex. 65, 2020-07-01 Intel 6th Suppl. Rog. Responses, Resp. to Rog. No. 8.

**VLSI MIL No. 1.6—Hypothetical Royalty Stacking Arguments**

Intel should be precluded from offering any abstract or qualitative assertions or suggestions that, due to hypothetical stacking of royalties and/or other costs, Intel purportedly cannot pay VLSI's requested royalties for its infringement while still remaining profitable.  *See, e.g.*, Ex. 37, Huston Rpt. ¶¶ 104-106; Ex. 16, Davis Rpt. at 134-37.  Intel has provided no factual evidence of any royalty burden or other specific costs associated with the accused products, nor has Intel provided any quantitative evidence or analysis to support the vague assertion that paying VLSI's requested royalties would purportedly make Intel unprofitable.  VLSI previously submitted a motion on this topic in the prior case as VLSI MIL No. 1.6, which this Court granted.  *See VLSI Case 1*, D.I. 363, VLSI Mot. at 8-10; D.I. 507, Order at 2.  The Court's prior ruling was well-founded and should be entered again here.

Regardless of whether the focus is on the alleged stacking of royalties or stacking of other unspecified costs, Intel's vague and generalized argument is the same: Intel wants to improperly present abstract and qualitative testimony to the jury suggesting that paying VLSI's requested royalties would purportedly make Intel unprofitable, without providing any quantitative evidence or analysis to support that allegation.  Federal Circuit authority makes clear that such unsupported, abstract and qualitative damages arguments are improper, because "the data utilized in [a damages] methodology [must be] sufficiently ***tied to the facts of the case***."  *Commonwealth Sci. & Indus. Research Org. v. Cisco Sys., Inc.* ["*CSIRO*"], 809 F.3d 1295, 1302 (Fed. Cir. 2015) (quoting *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015)).  "In practice, this means that ***abstract recitations*** of ***royalty stacking theory***, and ***qualitative testimony*** that an invention is [or is not] ***valuable***—without being anchored to a ***quantitative market valuation***— are insufficiently reliable."  *CSIRO*, 809 F.3d at 1302.

Intel seeks to present precisely the kind of arguments the Federal Circuit has prohibited. For example, with respect to royalty stacking, Intel plans for its experts to make unsupported, abstract and qualitative arguments like the following:



Intel's arguments like the above are the very embodiment of "abstract recitations" and "qualitative testimony."  *CSIRO*, 809 F.3d at 1302.  Expert opinions regarding royalty burden or

"royalty stacking" must be "tied to the facts of the case." *Id.*  Mere "abstract recitations of royalty stacking" are not sufficient; a party must actually identify specific evidence supporting such a theory.  *Network-1 Techs., Inc. v. Alcatel-Lucent USA, Inc.*, No. 6:11-cv-492-RWS-KNM, 2017 WL 4173467, at *2-3 (E.D. Tex. Sep. 21, 2017) ("Here, HP has identified no evidence that it has received requests for multiple royalties, or that it considers royalty stacking in real-world licensing negotiations. … Perryman's opinions that discuss 'royalty stacking' are excluded.").  Yet, Intel has not pointed to any factual evidence of any per-product royalty burden, nor any evidence that Intel "considers royalty stacking in real-world licensing negotiations." *See id.*



As shown above, Intel again wants to assert without evidence that paying VLSI's requested royalties would make Intel unprofitable.  Such "abstract recitations" and "qualitative testimony" are not "sufficiently tied to the facts of the case," and they lack the "quantitative market valuation" the Federal Circuit requires for damages arguments.  *CSIRO*, 809 F.3d at 1302.

These abstract claims are also contrary to fact.

███████████████████████████████████████████████████████

██████████████████████████████████████████

Accordingly, Intel should be excluded from offering any abstract or qualitative assertions or suggestions that, due to hypothetical stacking of royalties and/or other costs, Intel purportedly cannot pay VLSI's requested royalties for its infringement.

████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

10923295



**VLSI MIL No. 3.2—Intel's Alleged Industry Reputation, Corporate Character, Philanthropy, and Benefits Provided To The World**

Intel admits that, if allowed, it would seek to rely on Intel's supposed industry reputation, corporate character, philanthropy, and benefits provided to the world.  VLSI previously submitted a motion on this in the prior case as VLSI MIL No. 3.2, which this Court granted on these issues. *See VLSI Case 1*, D.I. 365, VLSI Mot. at 6-9; D.I. 507, Order at 3.  In so ruling, the Court held that "[i]f Intel wants to talk about with respect to what it's done with regard to innovation, they can do so," but the Court prohibited Intel from offering broader evidence or argument regarding things like Intel's industry "reputation" and "philanthropy."  2020-12-15 Hr'g Tr. at 196:12-18; *see also* D.I. 507, Order at 3.  The Court's prior ruling was well-founded and should be entered again here. VLSI does not dispute in the present motion that Intel can offer evidence and argument regarding its purported innovations.  But Intel should not be permitted to rely on its supposed industry reputation, corporate character, philanthropy, or benefits provided to the world, as such assertions have no relevance to any issue in the case and would serve only to cause undue prejudice to VLSI and distract the jury from the issues in dispute.

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████

Likewise, for example, Intel intends to offer numerous documents that have no relevance to any issue in the case and which serve no purpose other than to gratuitously laud Intel for its supposed reputation, corporate character, philanthropy, and benefits provided to the world. *See, e.g.,* ████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██ ███ █ ████ █ █████ ████ ████ ███ ████ █ ██

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████).

Such evidence or argument does not make any proposition in dispute more or less likely, and it therefore should be excluded under Federal Rules of Evidence 401 and 402. *See, e.g.,*

*SimpleAir, Inc. v. AWS Convergence Techs., Inc.*, No. 2:09-CV-289, 2012 WL 13207358, at *2 (E.D. Tex. Apr. 3, 2012) ("Defendants are precluded from presenting irrelevant evidence or argument regarding their company character and achievements, including evidence about their companies' awards, achievements, innovations, or the history of their founding.  This motion is GRANTED."); *Toshiba Corp. v. Imation Corp.*, No. 09-CV-305-SLC, 2013 WL 1248633, at *26 (W.D. Wis. Mar. 26, 2013) ("Toshiba will be allowed to present limited background evidence about DVD6C, its licensing activities, and Toshiba's role in formulating the DVD standard and contributing to the DVD6C pool, because these activities relate to the patents-in-suit.  This is not a blank check for Toshiba to tout its achievements or to attempt to establish itself as a leader innovator in consumer electronics; if Toshiba tries to do so, then the court will grant any objection made."), *supplemented*, No. 09-CV-305-SLC, 2013 WL 7157854 (W.D. Wis. Apr. 5, 2013).

Moreover, even if it had "nominal probative value," that value "is outweighed by the potential for the jury to decide the case based on an improper reason" and should be excluded under Rules 403 and 404.  *See* Fed. R. Evid. 404(a)(1) ("Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait"); *Ty Inc. v. Softbelly's Inc.*, No. 00 C 5230, 2006 WL 5111124, at *14 (N.D. Ill. Apr. 7, 2006) (excluding evidence of plaintiff's charitable contributions), *clarified on denial of reconsideration*, No. 00 C 5230, 2006 WL 8448101 (N.D. Ill. Apr. 18, 2006); *In re: Tylenol (Acetaminophen) Mktg.*, No. 2436, 2016 WL 3125428, at *11 (E.D. Pa. June 3, 2016) ("the evidence the plaintiff is seeking to exclude—that of how the defendants are 'good corporate citizens' by providing scholarships or making charitable contributions—would not be relevant to this case unless the plaintiff offers evidence to the contrary"); *Brown v. Johnson & Johnson*, No. CV 12-4929, 2015 WL 12834346, at *1 (E.D. Pa. Aug. 28, 2015) (granting motion

in limine to exclude evidence or argument "as to acts of corporate charity and good acts");
*Habersham Plantation Corp. v. Molyneux*, No. 10-61526-CIV, 2011 WL 13216995, at *10 (S.D.
Fla. Dec. 5, 2011) (excluding evidence or argument as to plaintiff's "good acts").

**VLSI MIL No. 3.4—References To VLSI's Request For Damages As Increasing The Price Of Intel's Products,** █████████████████████████████████████████
█████████████

The Court should preclude any evidence or argument suggesting that if the jury were to
award VLSI the damages it is seeking, it would purportedly increase the price of Intel's products,
████████████████████████████████████████████. VLSI previously submitted
a motion on this in the prior case as VLSI MIL No. 3.4, which this Court granted.  *See VLSI Case
1*, D.I. 365, VLSI Mot. at 10; D.I. 507, Order at 3.  The Court's prior ruling was well-founded and
should be entered again here.

Intel previously represented that "Intel does not intend to make any of these claims at trial."
*VLSI Case 1*, D.I. 488, Intel Opp. at 9.  It is thus unclear why Intel has insisted the parties re-brief
this motion.  In any event, suggestions that requiring Intel to pay VLSI's requested damages would
purportedly increase the price of Intel's products, ████████████████████████
█████████████████ are not relevant to any issue in the case and would serve no purpose other
than to unduly prejudice VLSI and to cause juror confusion.  *See* FED. R. EVID. 401, 402, 403.
As such, this Court and courts in this Circuit routinely preclude the admission of such evidence.
*See, e.g., MV3 Partners LLC v. Roku, Inc.,* No. 6:18-cv-00308-ADA, ECF No. 332, slip op. at 2
(W.D. Tex. Sep. 29, 2020) (Albright, J.) (precluding suggestion "that a Damages Award may
Increase the Price of Roku's Products, put Roku's Manufacturers Out of Business, or Lead to the
Loss of Jobs"); *Mars, Inc. v. TruRX LLC*, No. 6:13-CV-526-RWS-KNM, 2016 WL 4055675, at
*2 (E.D. Tex. Apr. 29, 2016) (prohibiting "suggest[ion] that any company will experience adverse
consequences as a result of the jury's verdict"); *Core Wireless Licensing S.A.R.L. v. LG Elecs.,*

*Inc.*, No. 2:14-CV-911-JRG-RSP, 2016 WL 4718963, at *2 (E.D. Tex. July 12, 2016) (prohibiting defendant from arguing "that a verdict for Core would result in higher costs to the consumer").

VLSI further notes that this motion concerns issues related to those addressed in VLSI MIL No. 1.6, which the Court previously granted, prohibiting any abstract or qualitative assertions or suggestions that, due to hypothetical stacking of royalties and/or other costs, Intel purportedly cannot pay VLSI's requested royalties for its infringement while still remaining profitable. Here too, vague allegations that paying VLSI's requested royalties would purportedly increase the price of Intel's products, ██████████████████████████████, would be precisely the kind of "abstract recitations" and "qualitative testimony" the Federal Circuit has prohibited, as such sweeping assertions are not "sufficiently tied to the facts of the case" and lack the "quantitative market valuation" the Federal Circuit requires for damages arguments. *Commonwealth Sci. & Indus. Research Org. v. Cisco Sys., Inc. ["CSIRO"]*, 809 F.3d 1295, 1302 (Fed. Cir. 2015) (quoting *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015)). Accordingly, this VLSI MIL No. 3.4 should also be granted for the same reasons as VLSI MIL No. 1.6.

**VLSI MIL No. 4.3—Intel's Patents**

VLSI moves to exclude any reference to specific patents as being Intel patents, including any allegation that Intel's patents relate to or are practiced by Intel's products. VLSI previously submitted a motion on this topic in the prior case as VLSI MIL No. 4.3, which this Court granted. *See VLSI Case 1*, D.I. 368, VLSI Mot. at 7-9; D.I. 507, Order at 4. In doing so, the Court ruled that "Intel must raise it with the Court before they put on any expert 'who might mention a specific patent,'" and "VLSI may then object at that time." *VLSI Case 1*, D.I. 507, Order at 4. As the Court further explained: "Statements that certain patents exist is allowed, but no need to mention they're Intel patents. Intel must notify the court if they plan to discuss one of their patents and VLSI has

an opportunity to object." *Id.*  The Court's prior ruling was well-founded and should be entered again here.

Settled law establishes that Intel's patents are not relevant to VLSI's infringement claims. *See, e.g.*, *Bio-Tech. Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1559 (Fed. Cir. 1996) ("The existence of one's own patent does not constitute a defense to infringement of someone else's patent."); *Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*, 265 F.3d 1294, 1309 (Fed. Cir. 2001) ("The fact that [accused infringer's] patent might read on the [accused device] is totally irrelevant to the question of whether [the accused infringer] willfully infringed another patent."). Indeed, Intel was forced to concede that "an alleged infringer's patents are not themselves a defense to direct infringement." *VLSI Case 1*, D.I. 489, Intel Opp. at 7.  Intel then resorted to making vague and generalized arguments in opposing VLSI's prior motion, grasping at straws trying to justify telling the jury about irrelevant Intel patents.  *Id.* at 7-8.  Intel's arguments continue to be meritless.

First, Intel previously argued that "it should be permitted to convey to the jury the fact that it has been granted thousands of patents arising from its work developing innovative products over the years."  *VLSI Case 1*, D.I. 489, Intel Opp. at 7.  This was and continues to be a strawman. As the Court ruled in granting VLSI's prior motion, "Intel is allowed to say accurate historical information about their patent portfolio," but "is not going to connect, intimate or say explicitly that the fact that they have patent has any impact on the value" of VLSI's patents.  *VLSI Case 1*, D.I. 507, Order at 4.  The Court's prior ruling was well-founded.  The concern here is not about Intel's patent portfolio, but rather about the undue prejudice and risk of confusion that would result from Intel directing the jury to specific Intel patents that are not relevant to any issue in the case. *See* Fed. R. Evid. 403.  For example, permitting evidence of specific Intel patents could cause the jurors to mistakenly conclude that the existence of Intel's patents weighs against a finding of

infringement, even though that conclusion would clearly be contrary to the law.  *See, e.g.*, *Retractable Techs. Inc. v. Becton, Dickinson & Co.*, 2009 WL 8725107, at *7 (E.D. Tex. Oct. 8, 2009) (granting motion to exclude "any argument by Defendant that it does not infringe because the accused product is purportedly covered by patents that Defendant owns or licenses").

Second, Intel previously argued that "evidence relating to Intel's patent portfolio is relevant to damages," purportedly because in its view "Intel's own patents contribute to the value of the Intel products at issue." *VLSI Case 1*, D.I. 489, Intel Opp. at 7.  To the extent Intel is referring to the simple fact that it owns patents, then this Court's prior ruling fully addresses this issue by allowing Intel to "say accurate historical information about their patent portfolio."  *VLSI Case 1*, D.I. 507, Order at 4.   To the extent Intel intends to go further, the Court should again reject it. Specific Intel patents are not relevant to calculating damages.  Intel does not calculate damages in any way based on its patents, does not attempt to quantify the purported value of its patents, and does not attempt to quantify the alleged contribution of Intel's patents to its products separate and apart from the contributions of the actual features in those products.  *See Georgia Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).  Further, any discussion of Intel's patents and the details of whether the accused products practice those patents would waste time and cause undue delay.  ██████████████████████████████████████████ ████████████████████████████████████████████████████████ ███████████████████████████  If this testimony is admitted, the parties would need to spend significant time litigating how these ████████████ supposedly cover, or do not cover, the accused products, whether they are valid, and what their commercial impact might be.  Neither the Court, the jury, nor VLSI should be burdened by collateral litigation about ████████ not in suit.

Moreover, Intel's assertion that "Intel's own **patents** contribute to the value of the Intel products at issue" misses the point (*VLSI Case 1*, D.I. 489, Intel Opp. at 7), because the relevant question is the value of the accused **feature** separate from other **features** in the accused products. *See, e.g.*, *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014) (citing *Garretson v. Clark*, 111 U.S. 120, 121 (1884)) (explaining that damages evidence should "separate or apportion the defendant's profits and the patentee's damages between the patented **feature** and the unpatented **features**").  As a hypothetical example, while it may be appropriate to compare the values of the accused feature and "Feature X" in the accused products, it would be inappropriate for Intel to further argue that Intel has its own patent on Feature X.  The introduction of gratuitous and irrelevant information about the existence of an Intel patent would serve no purpose other than to cause undue prejudice and risk juror confusion.  *See, e.g.*, *Hochstein v. Microsoft Corp.*, 2009 WL 2022815, at *2 (E.D. Mich. July 7, 2009) ("Microsoft may argue that its own 'later and greater' specific features drove the commercial success of the Xbox, but Microsoft cannot use the terms 'patents' or 'patented' in discussing the features. Use of the term 'patent,' in this context, is irrelevant, prejudicial, and will cause jury confusion."); *Cook Inc. v. Endologix, Inc.*, N2012 WL 4514036, at *5-6 (S.D. Ind. Oct. 1, 2012) ("[T]he Court disagrees that Endologix will be independently prejudiced if it is not allowed to present evidence of its patent history. … While Endologix understandably wants to present evidence of its own development history of the accused products, evidence of its patents specifically is not necessary.").

Third, Intel previously made the vague assertion that "evidence of a defendant's own patents on the accused features are evidence that the difference between the accused feature and the claims of the patent is substantial for purposes of the doctrine of equivalents."  *VLSI Case 1*, D.I. 489, Intel Opp. at 7.  This is a red herring, as no such argument against DoE infringement has

been asserted by Intel in this case.  An accused infringer's patent can ***potentially*** be relevant to the issue of DoE infringement, but such relevance is neither universal nor automatic.  *See Fiskars, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318 (Fed. Cir. 2000) (district court did not err by excluding evidence of accused infringer's patent, because "it is well established that separate patentability does not avoid equivalency as a matter of law").  Rather, the question of "[w]hether a modified device is within the scope of the prior patent, literally or by equivalency, ***depends on the particular facts***." *Nat'l Presto Indus., Inc. v. West Bend Co.*, 76 F.3d 1185, 1192 (Fed. Cir. 1996).  And because "the doctrine of equivalents must be applied to individual limitations of the claim, not to the invention as a whole," *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997), any such argument against DoE would require Intel to first lay a foundation showing that Intel separately patented ***the specific alleged equivalent element*** accused of infringing a claim element under DoE. As Judge Nies helpfully explained in *Roton Barrier*:

> It is a truism that the fact that an accused device is itself patented does not preclude a finding that such device infringes an earlier patent of another.  However, the fact of a second patent, depending on its subject matter, may be relevant to the issue of whether the changes are substantial.  If the second patent requires practice of the first i.e., the second merely adds an element "D" to a patented combination A + B + C, the combination A + B + C + D clearly infringes. Conversely, if the second patent is granted for A + B + ***D*** over one claiming A + B + ***C***, the ***change from C to D*** must not have been obvious to be validly patented.

*Roton Barrier, Inc. v. Stanley Works*, 79 F.3d 1112, 1128 (Fed. Cir. 1996) (Nies, J., concurring) (cited with approval in *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1570 (Fed. Cir. 1996) and *Minnesota Min. & Mfg. Co. v. Fellowes Mfg. Co.*, 76 F. Supp. 2d 972, 982 (D. Minn. 1999)).  Here, Intel's experts have not even pointed to a single Intel patent to argue against DoE infringement in this case, and they certainly have not performed the fact-specific, element-by-element analysis that would be required to support such an argument.

Finally, VLSI notes that there are two Intel patents that Intel elected, under the Court's case

10923295

- 15 -

narrowing order, to rely on as alleged prior art to the '522 Patent in this case. *See* Ex. 82, Intel's Second Identification of Prior Art Combinations (Oct. 14, 2020) at 9 (electing U.S. Patent Nos. 6,664,775 ("Clark '775") and 6,484,265 ("Borkar"), which list Intel as their original assignee). To be clear, VLSI's motion does not seek to exclude validity arguments regarding those patents. But as this Court previously held, there is "no need to mention they're Intel patents." *VLSI Case 1*, D.I. 507, Order at 4.  In presenting its purported invalidity defenses based on those patents, Intel should not be permitted to mention or otherwise highlight that those references are Intel patents. Simply put, the identity of a patent's original assignee is of no relevance to the validity analysis, and highlighting it would serve only to cause undue prejudice and risk juror confusion.

**VLSI MIL No. 5.1—Lay Witness Infringement Opinions**

VLSI moves to exclude improper noninfringement and invalidity opinions from Intel's fact witnesses.  VLSI previously submitted a motion on this exact topic in the prior case as VLSI MIL No. 5.1, which this Court granted. *See VLSI Case 1*, D.I. 369 at 1-4; D.I. 507, Order at 4.  In doing so, the Court ruled that "fact witnesses may only testify about facts." *VLSI Case 1*, D.I. 507, Order at 5.  The same ruling should apply here.

Here, as before, several of the Intel fact witnesses listed on Intel's trial witness list were given the patents-in-suit by litigation counsel, had discussions with litigation counsel regarding the patents, and then parroted arguments at their deposition that particular patent claim elements were not infringed by Intel's accused products. *See, e.g.,* ████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████[2]

None of these witnesses testified that their jobs involve analyzing third party patents for infringement.  None of these witnesses testified that they had knowledge of these patents before they were provided by litigation counsel.  None of these facts witnesses provided expert reports under Federal Rule of Civil Procedure 26(a)(2)(B), and Intel did not serve the required disclosure for these witnesses as required by Rule 26(a)(2)(C).  This testimony should be excluded under FRE 701, 702, 403, and 602.  *See Dentsply Sirona, Inc. v. Edge Endo, LLC,* No. 1-17-cv-1041, 2020 WL 6392764 at 24 (D. N.M. Nov. 2, 2020) (holding that witnesses not designated as experts would be prohibited from offering expert testimony); *SimpleAir Inc. v. AWS Convergence Techs.*, No. 2-09-cv-289, 2012 WL 13207358, at *1 (E.D. Tex. Apr. 3, 2012) ("The parties are precluded from offering expert testimony from witnesses (including their own employees and their party witnesses) other than their designated experts").

Intel will argue that it is simply presenting "factual" testimony regarding the "fact" that they have an opinion on infringement.  But this turns the rule on its head.  Further highlighting the

---

[2] ████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
███

dangers of this testimony, Intel, in the first trial, actually attempted to characterize its lay witnesses as "*experts*."  Intel has identified ███████████████████████████ as trial witnesses in the upcoming trial.  Ex. 76, 2021-03-17 Intel's Amended Trial Witness List.

*First*, opinions regarding infringement fall within the realm of expert testimony, not lay witness testimony.  Applying a technical understanding of a product to the limitations of patent claims is a quintessential expert function, including because claims must be understood from the standpoint of a person of skill in the art at the time of the effective filing date of the patent application, in view of the intrinsic evidence.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005); FED. R. EVID. 702; *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980-81 (Fed. Cir. 1995); *Advanced Cardiovascular Sys. Inc. v. Scimed Life Sys., Inc.*, 887 F.2d 1070, 1076 (Fed. Cir. 1989).

Courts routinely hold that comparison of patent claims or claim language to an instrumentality by fact witnesses is inappropriate under Rule 701.  *See Air Turbine Tech., Inc. v. Atlas Copco AB*, 410 F.3d 701, 713-14 (Fed. Cir. 2005) (district court properly excluded testimony of lay witness as to "both the structural components of the accused device and to their respective functions"); *Briese Lichttechnik Vertriebs GmbH v. Langton*, No. 09 Civ. 99790(LTS)(MHD), 2012 WL 5457681, at *6 (S.D.N.Y. Nov. 8, 2012) (granting motion to strike lay witness testimony

"to the extent that it offers any infringement opinion or claim construction" because a lay witness cannot "parse the terms of the patent claims to opine as to whether the patent reads on" the products); *Cybergym Rsch., LLC v. ICON Health and Fitness, Inc.*, No. 2:05-CV-527 (DF), 2007 WL 9724237, at *2 (E.D. Tex. Oct. 7, 2007) (precluding a "technical" lay witness from "providing a legal determination of infringement" under Rule 701).   Moreover, Federal Rule of Civil Procedure 26 obligates parties to disclose the identity of witnesses who will present expert testimony and provide these witnesses' written reports or disclosures, and Intel did not comply with these requirements for these fact witnesses.  *See* Fed. R. Civ. P. 26(a)(2).

*Second*, these lay opinions should be excluded under Rule 403 because each witness admitted that they did not consider the proper evidence.  For example, ███████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████        Those  engineers  also  testified  that  ████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████  Improper lay

opinions regarding infringement and validity should be excluded as prejudicial where the witness

fails to understand, consider the relevant evidence, and/or apply the proper claim constructions. *See SSL Servs., LLC v. Citrix Sys., Inc.*, 940 F. Supp. 2d 480, 500-01 (E.D. Tex. 2013).

**Third**, Intel's witnesses testified that ████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

**Fourth**, even if such lay witness opinion testimony were permissible, Intel's fact witnesses lack personal knowledge regarding the patents, and it should therefore be excluded under Rule 602.  As the citations above demonstrate, these witnesses ████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████  ██████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████ Accordingly, the testimony is improper. Intel should not be permitted to have its employees parrot noninfringement expert opinions that were prepared with assistance from counsel, while also shielding themselves from full discovery into these conversations. *See, e.g., In re Seagate Tech., LLC*, 497 F.3d 1360, 1371, 1367-68 (Fed. Cir. 2007) (finding subject matter waiver when the advice-of-counsel defense is used to rebut a an allegation of willful

infringement). As a result, there is no admissible evidence to establish that these witnesses have the appropriate personal knowledge or foundation for testifying on these matters. *See UNF W., Inc. v. NLRB*, 844 F.3d 451, 463-64 (5th Cir. 2016) (affirming exclusion of testimony in part because "testimony is admissible only when there is evidence to show the witness has personal knowledge of the matter to which she testifies" and the witnesses "seemingly lacked" such personal knowledge) (citing Fed. R. Evid. 602).

**VLSI MIL No. 5.4—Predecessor Owners' Non-Assertion Of Patents Against Intel**

Intel should be precluded from offering evidence or argument that predecessor owners of the patents-in-suit did not assert the patents against Intel either in a lawsuit or in negotiation, as it is not relevant to any issue in the case and would serve no purpose other than to unduly prejudice VLSI and cause jury confusion. *See* Fed. R. Evid. 401 & 403. VLSI previously submitted a motion on this exact topic in the prior case as VLSI MIL No. 5.4, which this Court granted. *See VLSI Case 1*, D.I. 369 at 9; D.I. 507, Order at 4. The Court's prior ruling was well-founded and should be entered again here. Intel's arguments to the contrary are meritless.

For example, in opposing VLSI's prior motion, Intel argued that non-assertion of the patents-in-suit against Intel by predecessor owners purportedly "could be viewed as compelling ***circumstantial evidence that the prior owners*** (sophisticated entities who were well aware of Intel and its product offerings) ***did not view*** the asserted patents as infringed by Intel and/or were concerned that the asserted patents might be found invalid if asserted against Intel." *VLSI Case 1*, D.I. 490, Intel Opp. at 5. Intel further argued that "[t]he jury should be able to decide for itself ***whether these factual inferences are reasonable***, and if so, ***what weight, if any, to give them***." *Id.* Intel is wrong, both as a factual matter and as a matter of law.

First, as a factual matter, even if views of predecessor owners were relevant (they are not), Intel has not laid any foundation to establish that non-assertion by the predecessor owners here

suggests anything whatsoever about their (irrelevant) views regarding Intel's liability in this case. For example, Intel has presented no evidence showing that the predecessor owners ever recognized their rights against Intel, that they ever evaluated the specific patents-in-suit against the specific Intel accused products at issue in this litigation, or that they had expertise and materials—like Intel source code and documents—sufficient to conduct that analysis.  Notably, VLSI's Complaint in this case evidenced Intel's infringement by citing dozens of references, including references which did not yet exist when the patents-in-suit were in the hands of predecessor owners (*see, e.g.,* D.I. 1 at ¶ 17, 21, 32, 25 (reference to Cannon Lake)), and references regarding accused Intel products that were new to market (*see, e.g., id.* ¶¶ 49-50, 51-66 (reference to Broadwell)).  *See* D.I. 1; *Cf. TQP Dev., LLC v. Intuit Inc.*, 2014 U.S. Dist. LEXIS 84054, at *31-37 (E.D. Tex. June 20, 2014) (rejecting similar argument in laches context that prior owner did not piece together numerous elements to assess infringement).  Having laid no foundation, Intel seeks to highlight non-assertion by predecessor owners in order to improperly invite the jury to speculate as to what (if any) information the prior owners had, what (if any) analyses they undertook, what conclusions (if any) they drew from those analyses regarding Intel's liability, and "whether these factual inferences are reasonable, and if so, what weight, if any, to give to them."  D.I. 490, Intel Opp. at 5.

Second, as a matter of law, even if the views of prior owners were known (they are not), those views by non-party, non-testifying lay individuals would be both irrelevant and inadmissible as unqualified expert testimony.  To assess infringement, "the court first interprets the claims to determine their scope and meaning," and "[n]ext, ***the jury compares*** the properly construed ***claims*** to the allegedly infringing ***device***."  *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1358 (Fed. Cir. 2012).  Likewise, the jury's "invalidity inquiry [is] focused on the relationship between the ***prior art*** and the ***claims***, as construed by the court."  *TiVo, Inc. v.*

*EchoStar Commc'ns Corp.*, 516 F.3d 1290, 1312 (Fed. Cir. 2008).  And while it "is often helpful to have a technical expert explain" technological details to the jury, "a witness who is '***not qualified as an expert*** by knowledge, skill, experience, training, or education' in the pertinent art … ***[cannot] 'assist the trier of fact*** to understand the evidence or to determine a fact in issue.'"  *HVLPO2, LLC v. Oxygen Frog, LLC*, 949 F.3d 685, 688-89 (Fed. Cir. 2020) (quoting *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1361-62 (Fed. Cir. 2008) (quoting Fed. R. Evid. 702)).   "Thus, 'it is an ***abuse of discretion*** to permit a witness to testify as an expert on the issues of noninfringement or invalidity ***unless that witness is qualified as an expert in the pertinent art***.'"  *Id.* (quoting *Sundance*, 550 F.3d at 1363).  Further, "[t]he prohibition of unqualified witness testimony ***extends to the ultimate conclusions of infringement and validity*** as well as to the underlying technical questions." *Id.*  Here, Intel wants to go even further and ask the jury to wildly speculate about what unnamed, non-party lay individuals may have thought, despite that such unnamed individuals will not even be offering testimony in this case, much less be qualified as experts in this litigation.

The same problems discussed above also apply equally with respect to Intel's argument that non-assertion by predecessor owners purportedly is relevant to VLSI's damages claims. *See* D.I. 490, Intel Opp. at 6 ("If the patents in suit were truly worth billions of dollars, … presumably the prior owners would have sought to collect ….").  Once again, Intel has not laid any foundation to establish that non-assertion by prior owners here suggests anything whatsoever about their (irrelevant) views regarding damages in this case.  Likewise, even if the views of prior owners were known (they are not), those views by non-party, non-testifying lay individuals would again be irrelevant and inadmissible as unqualified expert testimony.  Nor do any of the cases Intel cites hold otherwise.  For example, Intel misstates the holding of *Advanced Technology Incubator,*

*Inc. ["ATI"] v. Sharp Corp.*, 2010 WL 11451797, at *1-2 (E.D. Tex. 2010), as allegedly "finding failure to assert patents relevant to damages analysis." D.I. 490, Intel Opp. at 6. Not so. The court there held precisely the opposite, concluding that "LG's failure to sue Sharp" was "irrelevant," whereas "***ATI's negotiations and agreements*** with other parties may be probative of a reasonable royalty." *ATI*, 2010 WL 11451797, at *1-2. In other words, evidence of ***actual*** negotiations and agreements ***by the plaintiff*** may be relevant to the hypothetical negotiation, not the ***absence*** of assertion by a predecessor owner as Intel alleges. *See also Integra Lifescis. I, Ltd. v. Merck KGaA*, 331 F.3d 860, 871 (Fed. Cir. 2003) (similarly not discussing prior non-assertion).

Finally, by arguing that non-assertion by predecessor patent owners purportedly weighs in Intel's favor on liability, Intel would in effect be making a surreptitious laches argument, which is impermissible. *See SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prod., LLC*, 137 S. Ct. 954, 967 (2017) ("Laches cannot be interposed as a defense against damages where the infringement occurred within the period prescribed by § 286."). As it has conceded, "Intel is not alleging a laches defense." D.I. 490, Intel Opp. at 6. Intel should not be permitted to improperly imply such a defense to the jury by highlighting non-assertion by predecessor owners.

## VLSI MIL No. 6.2—Absence of Inventors From Trial

VLSI moves to preclude Intel from making any references to the absence from trial of the three inventors on the patents-in-suit. VLSI previously submitted a motion on this topic in the prior case as VLSI MIL No. 6,2, which this Court granted. *See VLSI Case 1*, D.I. 370, VLSI Mot. at 2-3; D.I. 507, Order at 4-5. In doing so, the Court ruled that "I do not want Intel to ask anything that would intimate to the jury that VLSI could have brought those people, that they should have brought those people, or anything along those – or anything is amiss because those people are not there," and "I will not permit Intel to intimate to the jury that – either that VLSI's hiding something

because they don't call a witness." *VLSI Case 1*, 1/20/2021 Hr'g Tr. at 32:25-33:23, 35:1-16.  The Court's reasoning and rulings are equally as applicable here as they were in the first case.

The three inventors are not employed by, or under the control of, either VLSI, NXP, or Intel; however, two of the inventors took time from their busy schedules to be deposed in connection with this action, and because they were deposed, the parties will be able to play their deposition testimony at trial if they wish.  Intel did not seek to depose the third inventor at all during fact discovery, and so should be precluded from referencing his absence.

For ease of reference, the prior motion, which the court granted, said the following:

Whether an inventor is testifying at trial is irrelevant to infringement, damages, or any other issue to be decided in this action, and evidence on this point would serve only to confuse the jury and unfairly prejudice VLSI. *See* FED. R. EVID. 401-403. Courts routinely grant motions in limine excluding references to inventors' absence at trial as irrelevant under Rules of Evidence 401-403. *See Intellectual Ventures II LLC v. FedEx Corp.*, No. 2:16-CV-00980-JRG, 2018 WL 10638138, at *4 (E.D. Tex. Apr. 26, 2018) ("Preclude FedEx from commenting on the absence of any of the Asserted Patents' non-party inventors throughout the litigation, including at trial. This motion *in limine* is GRANTED."); *In re Biogen '755 Patent Litig.*, No. 10-2734 (CCC) (JBC), 2018 WL 3613162, at *2 (D.N.J. July 26, 2018) (excluding evidence or arguments that any inference can be drawn against plaintiff because of the absence at trial of the sole named inventor of the patent); *Changzhou Kaidi Elec. Co. v. Okin Am., Inc.*, No. CIV. CCB-13-1798, 2015 WL 2168840, at *2 (D. Md. May 7, 2015) ("motion to exclude any comment on the absence of the patent's inventor … from the trial … is GRANTED").

### VLSI MIL No. 7—Excluding Intel's Experts From Relying On Undisclosed Hearsay Conversations With Intel Employees

Intel's experts rely on undisclosed interviews with Intel's engineers and on off-the-record

conversations with Intel employees. ███████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████ It is improper for Intel's experts to rely on undisclosed

statements to lend credence to their opinions is improper.

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

"Although … experts are afforded some leeway with respect to hearsay evidence, Fed.R.Evid. 702, 703, 'a party cannot call an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony.'" *United States v. Kantengwa*, 781 F.3d 545, 561 (1st Cir. 2015) (quoting *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 136 (2d Cir. 2013)); *see also Boltex Mfg. Co., L.P. v. Ulma Piping USA Corp.*, No. 4:17-CV-1400, 2019 WL 2716313, at *3 (S.D. Tex. June 28, 2019) ("While an expert under Rule 703 may obviously rely on hearsay, he or she cannot be made a vehicle for getting otherwise inadmissible testimony before the jury.  Therefore, the contents of Britven's employee interviews, as an example, will not be admissible through him merely because he relied upon them."); *Bianco v. Globus Med., Inc.*, 30 F. Supp. 3d 565, 570 (E.D. Tex. 2014) ("Although expert witnesses are permitted to rely on hearsay to form their opinions, 'their testimony is not a vehicle by which evidence that is otherwise inadmissible may be introduced.'") (quoting *Presley v. Commercial Moving & Rigging, Inc.*, 25 A.3d 873, 893 (D.C. 2011)); *Island Intellectual Prop. LLC v. Deutsche Bank AG*, No. 09 CIV. 2675 KBF, 2012 WL 526722, at *2 (S.D.N.Y. Feb. 14, 2012) ("It is also inappropriate for experts to act as mere conduits for others' hearsay"); *see also* Fed. R. Evid. 703.

Neither ███████████████████ are disclosed on Intel's trial witness list, and Intel should not be allowed to rely on hearsay (and undisclosed) statements made by these individuals. With respect to ███████████████████ Intel has identified them as trial witnesses.  As such, Intel should be required to have them testify as to their alleged statements, and should not be allowed to use its experts to use their undisclosed statements as alleged support for the experts' positions.

**VLSI MIL No. 8—**████████████████████████████████

████████████████████████████████████████████████████



**VLSI MIL No. 9—Fortress Investment Group LLC**

Consistent with this Court's prior ruling for the Case 1 trial, VLSI respectfully moves the Court *in limine* for an order excluding from the trial of the -255 Case any reference, evidence, testimony (both lay and expert), or arguments concerning Fortress Investment Group LLC ("Fortress"), ████████████████████████████████████████ ████████████████████████████████████████.[3] *See, e.g.*, *VLSI Case 1*, Trial Tr. 1030:5-15 ("Before you all start, let me tell you I spent the evening

---

[3] VLSI hereby incorporates its D.I. 364 (Motions In Limine Nos. 2.1, 2.2, 2.3, 2.4, and 2.5) from the lead case, and the Court's rulings granting same. *VLSI Case 1*, D.I. 507.

reviewing the depositions. … [W]ith respect to Fortress, the Court is going to **not permit the issue of Fortress to come into the trial**. And so anything -- any reference to Fortress that is in the depositions, those portions need to not appear in front of the jury." ).

Notwithstanding the Court's prior rulings excluding evidence concerning Fortress, Intel has made clear that it intends to "double-down" on this issue at the upcoming trial.  But the Court's rulings excluding evidence regarding Fortress were entirely correct and apply equally here as well. As Intel is well aware, ███████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ████████████████████████████████████████████.

But not only is the Fortress issue irrelevant, it would be also hugely prejudicial to VLSI and confusing to the jury. ███████████████████████████████████ ███████████████████████████████████████████████████ ██████████████. Such evidence would be both inherently prejudicial and unfairly confusing to the jury.  VLSI therefore respectfully submits that the Court should not deviate here from its prior ruling excluding evidence concerning Fortress in the first trial.

### A.     Prejudicial and Irrelevant References to Fortress

VLSI brings this motion to ensure – just as in the first case – that irrelevant and prejudicial references to Fortress Investment Group LLC ("Fortress") are not made during the trial in the -255 Case.  This is particularly important to address in advance because Intel has made clear that it does not intend to abide by the Court's prior ruling excluding evidence relating to Fortress.  To the

contrary, despite the Court's clear ruling, Intel has ████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████



- ████████████████████

████████████████████████████████████████████

████████

████████████████████████████████████

██████████████████████████████████

Such allegations are irrelevant to any of the issues to be tried in the upcoming patent

infringement case. ██████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████   Thus, most of Intel's arguments about Fortress are not only

irrelevant, they are also false.

Moreover, even if any of Intel's allegations about Fortress had any probative value, which

they do not, such "probative value is substantially outweighed by a danger of … unfair prejudice,

confusing the issues, misleading the jury, undue delay, or wasting time." FED. R. EVID. 403.  Any

attempts by Intel to cast Fortress ████████████████████████ and then link Fortress

---

9, 2020.  Indeed, courts have recognized that "hedge funds … have been pejoratively likened to
'gunslingers sitting at a trading table' and 'gunslinging risk-takers.'" *Rocker Mgmt., LLC v. Lernout
& Hauspie Speech Prod. N.V.*, 2007 WL 2814653, at *7 (D.N.J. Sept. 24, 2007).

with VLSI, would be unduly prejudicial, and – just as this Court did in the lead case – other courts have excluded evidence or argument that would unfairly link a party to other entities that may evoke a negative reaction in jurors.  *See, e.g.*, *Securian Fin. Grp., Inc. v. Wells Fargo Bank, N.A.*, 2015 WL 13637330, at *4 (D. Minn. Feb. 10, 2015) (in litigation between investor and investment advisor, excluding evidence about Bear Stearns under Rule 403).  Likewise, Intel's attempts to refer to Fortress's expected investment returns are entirely irrelevant and also highly prejudicial. D.I. 364 (Case No. 1:19-cv-977-ADA) at 1-3.

As in the lead case, Intel should be precluded from making any mention of Fortress,

██████████████████████████████████████████████████████████████████

██████████████████████████████.  D.I. 507.

### B.    Prejudicial And Irrelevant Deposition Plays Of Fortress Employees

In connection with the *VLSI v. Intel* cases, Intel has subpoenaed, and deposed, numerous current and former Fortress employees.  Intel has now designated 6 hours and 25 minutes of testimony from those Fortress depositions, as well as numerous additional lines of testimony concerning Fortress from NXP and VLSI employees, to be played at the trial of the -255 Case. The vast majority of this testimony serves only to show ████████████████████████████, and to establish other facts relating to Fortress, all of which are issues that the Court has already ruled are excluded.  Moreover, the small amount of testimony that Intel seeks to offer from Fortress witnesses about VLSI (rather than Fortress) is cumulative of testimony from VLSI witnesses, and therefore is clearly only being offered as a means to get a Fortress witness (or multiple Fortress witnesses) in front of the jury.  This is not a proper purpose, and VLSI respectfully requests that the proffered testimony be excluded in its entirety.

**In this regard, VLSI notes that in the trial in the first trial, Intel only offered deposition plays totaling under 8 minutes from *two* Fortress employees:** ████████████████

████████. Ex. 86, 87, 88.  The Court personally reviewed the proffered testimony and ordered it

excluded.  Trial Tr. at 1030:5-15 ("Before you all start, let me tell you I spent the evening reviewing

the depositions. … [W]ith respect to Fortress, the Court is going to *not permit the issue of Fortress*

*to come into the trial*.  And so anything -- any reference to Fortress that is in the depositions, those

portions need to not appear in front of the jury.").

    **For the second trial, Intel is now proposing to offer deposition plays totaling *6 hours***

***and 26 minutes* from *six* Fortress witnesses**, including not just ████████████████████, but

also current and former Fortress employees ██████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████.  In other words, Intel has not just

doubled-down on trying to inject irrelevant testimony about Fortress into this case but, despite the

Court's ruling excluding the Fortress issues, has now designated ***more than forty times*** as much

Fortress testimony for the second trial as it offered at the first trial.  Among other things, the fact

that Intel made no effort to offer any testimony from four of these six witnesses at trial in the lead

case is itself compelling, *prima facie* evidence that their testimony is not relevant here either.

    Just by way of example, Intel has designated 70 minutes of testimony from ██████████████

(despite only offering ***32 seconds*** of his testimony at the first trial, Ex. 88), a Fortress employee

who has no involvement with or knowledge about either of the VLSI patents at issue in this

litigation – and whose deposition testimony the Court already read and ruled on during trial in the

lead case. ██████████████████████████████████████████.  The gravamen

of the testimony that Intel seeks to offer from ██████████ is that he, a Fortress employee, ██

████████████████████████████████████████████████████.  However,

since ██████████████████████████ are irrelevant to this case, it is obvious that Intel's real reason for offering ████████ is so that Intel can talk about Fortress.  The testimony that Intel seeks to offer from other Fortress witnesses is more of the same.

Simply put, having lost on the merits in the first trial, Intel now seeks to introduce at the second trial dramatically more irrelevant and prejudicial testimony concerning Fortress, all of which is as improper in the second trial as it was in the first.  VLSI respectfully submits that the Court should adhere in this case to its existing rulings on the identical subject from the lead case.

Dated: March 22, 2021

By:      _/s/ Andy Tindel_____


Morgan Chu (*pro hac vice*)
Benjamin W. Hattenbach  (*pro hac vice*)
Iian D. Jablon  (*pro hac vice*)
Alan J. Heinrich  (*pro hac vice*)
Ian Robert Washburn  (*pro hac vice*)
Amy E. Proctor  (*pro hac vice*)
Elizabeth C. Tuan  (*pro hac vice*)
Dominik Slusarczyk  (*pro hac vice*)
Charlotte J. Wen  (*pro hac vice*)
Brian Weissenberg  (*pro hac vice*)
Benjamin Monnin  (*pro hac vice*)
Jordan Nafekh  (*pro hac vice*)
**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, California   90067
Telephone: (310) 277-1010
Facsimile: (310) 203-7199
mchu@irell.com
bhattenbach@irell.com
ijablon@irell.com
aheinrich@irell.com
iwashburn@irell.com
aproctor@irell.com
etuan@irell.com
dslusarczyk@irell.com
cwen@irell.com
bweissenberg@irell.com
bmonnin@irell.com
jnafekh@irell.com

Babak Redjaian  (*pro hac vice*)
**IRELL & MANELLA LLP**
840 Newport Center Drive, Suite 400
Newport Beach, California   92660
Telephone: (949) 760-0991
Facsimile: (949) 760-5200
bredjaian@irell.com

J. Mark Mann (Texas Bar No. 12926150)
mark@themannfirm.com
G. Blake Thompson (Texas Bar No. 24042033)
blake@themannfirm.com
**MANN | TINDEL | THOMPSON**
300 W. Main Street
Henderson, TX 75652
Telephone: (903) 657-8540
Facsimile:  (903) 657-6003

Andy Tindel (Texas Bar No. 20054500)
atindel@andytindel.com
**MANN | TINDEL | THOMPSON**
112 E. Line Street, Suite 304
Tyler, Texas 75702
Telephone: (903) 596-0900
Facsimile:  (903) 596-0909

Craig D. Cherry (Texas Bar No. 24012419)
ccherry@swclaw.com
**STECKLER, WAYNE, COCHRAN, CHERRY, PLLC**
100 N. Ritchie Road, Suite 200
Waco, Texas 76701
Telephone: (254) 776-3336
Facsimile:  (254) 776-6823

*Attorneys for VLSI Technology LLC*

## <u>CERTIFICATE OF SERVICE</u>

A true and correct copy of the foregoing instrument was served or delivered electronically via email, to all counsel of record, on March 22, 2021.


        /s/  *Jordan Nafekh*
        Jordan Nafekh