# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

**PUBLIC VERSION**

VLSI TECHNOLOGY LLC,

          Plaintiff,

v.

INTEL CORPORATION,

          Defendant.

Lead Case: 1:19-cv-977-ADA

(*Consolidated for pretrial purposes only with* Nos. 6:19-cv-254-ADA, 6:19-cv-255-ADA, 6:19-cv-256-ADA)

████████████████████

---

## DEFENDANT INTEL CORPORATION'S OPPOSED MOTIONS *IN LIMINE*[1]

---

[1] These motions address issues in C.A. No. 6:19-cv-00255.  Pursuant to the Court's consolidation Order (D.I. 280), Intel has filed these motions only in the consolidated proceeding, C.A. No. 1:19-cv-00977.  All citations to docket filings are on the docket in C.A. No. 1:19-cv-00977, unless otherwise noted.

# TABLE OF CONTENTS

**Page**

I.      MIL NO. 1: EXCLUDE REFERENCES TO OTHER LITIGATIONS AND
        PROCEEDINGS ............................................................................................ 1

II.     MIL NO. 2: EXCLUDE REFERENCES TO JUDGE ALBRIGHT'S PRIOR
        REPRESENTATION OF SIGMATEL AND INVOLVEMENT IN SIGMATEL ITC
        LITIGATION ................................................................................................ 3

III.    MIL NO. 3: EXCLUDE REASONS FOR WITNESSES BEING UNAVAILABLE
        LIVE AT TRIAL ........................................................................................... 3

IV.     MIL NO. 4: EXCLUDE OPINION COMMENTARY ON CASE PUBLICITY OR
        IMPORTANCE ............................................................................................. 5

V.      MIL NO. 5: EXCLUDE REFERENCES TO IRRELEVANT TEXAS
        CONNECTIONS DURING VOIR DIRE ........................................................... 6

VI.     MIL NO. 6: EXCLUDE USE OF DEMONSTRATIVES THAT CONTAIN
        UNDESIGNATED OR OTHERWISE INADMISSIBLE DEPOSITION
        TESTIMONY ............................................................................................... 7

VII.    MIL NO. 7: EXCLUDE INCOMPLETE, SELECTIVE REFERENCES TO
        ENTITIES THAT MAY BENEFIT FROM POTENTIAL RECOVERY BY VLSI ........ 7

VIII.   MIL NO. 8: EXCLUDE EXPERT OPINION ON INFRINGEMENT UNDER
        DOCTRINE OF EQUIVALENTS ..................................................................... 11

IX.     MIL NO. 9: EXCLUDE ARGUMENT OR EVIDENCE OF WILLFUL
        INFRINGEMENT ........................................................................................... 13

X.      MIL NO. 10: EXCLUDE ARGUMENT, TESTIMONY, OR SUGGESTION THAT
        INTEL IS A "PATENT HOLDOUT" OR REFUSES TO TAKE A LICENSE
        OUTSIDE OF LITIGATION ........................................................................... 14

XI.     MIL NO. 11: EXCLUDE IRRELEVANT AND PREJUDICIAL REFERENCES TO
        INTEL'S SIZE, WEALTH, AND FINANCIAL PERFORMANCE ............................ 16

XII.    MIL NO. 12:  EXCLUDE RELIANCE ON IRRELEVANT AND PREJUDICIAL
        REFERENCES TO TOTAL REVENUES FOR THE ACCUSED PRODUCTS ............ 17

XIII.   MIL NO. 13:  EXCLUDE RELIANCE ON PRIOR INTEL LITIGATION
        SETTLEMENTS AND, IF THEY ARE ADMITTED OVER INTEL'S
        OBJECTION, REQUIRE VLSI TO RAISE LITIGATION SETTLEMENTS IN ITS
        CASE-IN-CHIEF ........................................................................................... 19

XIV.    MIL NO. 14:  EXCLUDE RELIANCE ON DR. SULLIVAN'S UNDISCLOSED
        AND UNDULY PREJUDICIAL PER-UNIT DAMAGES NUMBERS ........................ 24

XV.     MIL NO. 15:  EXCLUDE REFERENCES TO INNOGRAPHY PATENT
        STRENGTH SCORES ..................................................................................... 26

XVI.    MIL NO. 16:  EXCLUDE REFERENCES TO DISCOVERY DISPUTES ................... 32

XVII.   MIL NO. 17: EXCLUDE REFERENCES TO INTEL'S PURPORTED BAD ACTS
        AND CONDUCT OUTSIDE THIS LITIGATION ........................................................... 33

XVIII.  MIL NO. 18: EXCLUDE REFERENCES TO EXPERT TESTIMONY IN OTHER
        CASES ........................................................................................................................ 35

XIX.    MIL NO. 19: EXCLUDE COMPARISONS OF BURDEN OF PROOF
        STANDARDS ............................................................................................................. 37

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Acceleration Bay LLC v. Activision Blizzard Inc.*,
   No. 1:16-cv-00453-RGA, 2018 WL 5045186 (D. Del. Oct. 17, 2018) ...................................30

*Apple Inc. v. Samsung Elecs. Co.*,
   2014 WL 794328 (N.D. Cal. 2014) .........................................................................................21

*Belden Inc. v. Berk-Tek LLC*,
   805 F.3d 1064 (Fed. Cir. 2015)..........................................................................................22, 24

*Biscotti Inc. v. Microsoft Corp.*,
   No. 2:13-CV-01015-JRG-RSP, 2017 WL 2537021 (E.D. Tex. May 30, 2017).......................2

*Brighton Collectibles, Inc. v. Marc Chantal USA, Inc.*,
   2009 WL 10674074 (S.D. Cal. 2009) ......................................................................................33

*Canon Inc. v. Avigilon Fortress Corp.*,
   IPR2017-01833, Paper No. 31 (P.T.A.B. 2019) ......................................................................28

*Cates v. Sears, Roebuck, Co.*,
   928 F.2d 679 (5th Cir. 1991) ...................................................................................................23

*Chamberlain Grp., Inc. v. Lear Corp.*,
   2011 WL 13254690 (N.D. Ill. Mar. 22, 2011)........................................................................14

*CoreLogic Info. Sols., Inc. v. Fiserv, Inc.*,
   2012 WL 4761739 (E.D. Tex. Sept. 20, 2012) ........................................................................20

*Creative Kingdoms, LLC v. ITC*,
   588 F. App'x 993 (Fed. Cir. 2014) ..........................................................................................28

*DataTreasury Corp. v. Wells Fargo & Co.*,
   2010 WL 11538713 (E.D. Tex. 2010) ......................................................................................35

*DNT, LLC v. Sprint Spectrum, LP*,
   2010 WL 582164 (E.D. Va. Feb. 12, 2010)..............................................................................11

*Eason v. Fleming Cos.*,
   1993 WL 360736 (5th Cir. Aug. 24, 1993)........................................................................23, 24

*Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*,
   946 F.3d 1367 (Fed. Cir. 2020)................................................................................................14

*Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC*,
    927 F.3d 1292 (Fed. Cir. 2019)..........................................................................20

*Fenner Invs., Ltd. v. Hewlett-Packard Co.*,
    2010 WL 1727916 (E.D. Tex. Apr. 28, 2010) ......................................................22

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
    2015 WL 4129193 (N.D. Cal. 2015) ...................................................................11

*Flexuspine, Inc. v. Globus Med., Inc.*,
    2016 WL 9282314 (E.D. Tex. Aug. 5, 2016) ......................................................20

*Fractus, S.A. v. AT&T Mobility LLC*,
    2019 WL 4805910 (E.D. Tex. 2019) ..................................................................36

*Gemalto S.A. v. HTC Corp.*,
    754 F.3d 1364 (Fed. Cir. 2014)..........................................................................12

*Genband US LLC v. Metaswitch Networks Corp.*,
    2016 WL 3475688 (E.D. Tex. 2016) ..................................................................12

*In re GPAC Inc.*,
    57 F.3d 1573 (Fed. Cir. 1995)............................................................................27

*GREE, Inc. v. Supercell Oy*,
    2020 WL 4288345 (E.D. Tex. 2020) ..................................................................21

*HTC Corp. v. Tech. Properties Ltd.*,
    2013 WL 4782598 (N.D. Cal. Sept. 6, 2013) ....................................................17

*Idenix Pharms. LLC v. Gilead Sciences Inc.*,
    941 F.3d 1149 (Fed. Cir. 2019)..........................................................................28

*Intamin, Ltd. v. Magnetar Techs. Corp.*,
    623 F. Supp. 2d 1055 (C.D. Cal. 2009) .............................................................34

*Intel Corp. v. VLSI Tech. LLC*,
    IPR2018-01035, Paper No. 32 (P.T.A.B. 2020) .................................................28

*Intel Corp. v. VLSI Tech. LLC*,
    IPR2018-01105, Paper No. 44 (P.T.A.B. 2019) .................................................28

*Ion, Inc. v. Sercel, Inc.*,
    No. 5:06-cv-236, 2009 WL 10677596 (E.D. Tex. July 22, 2009) ....................2, 34

*Karlo v. Pittsburgh Glass Works, LLC*,
    2016 WL 69651 (W.D. Pa. Jan. 6, 2016)...........................................................10

*LaserDynamics, Inc. v. Quanta Comp., Inc.*,
694 F.3d 51 (Fed. Cir. 2012) ........................................................................ *passim*

*Little v. Ford Motor Co.*,
2017 WL 6994586 (N.D. Ga. Dec. 21, 2017) ............................................................24

*Lucent Techs., Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009) ...............................................................17, 21, 22, 24

*Mars, Inc. v. Trurx LLC*,
2016 WL 4055675 (E.D. Tex. Apr. 29, 2016) ..........................................................16

*Mendenhall v. Cedarapids, Inc.*,
5 F.3d 1557 (Fed. Cir. 1993) ...................................................................................16

*MLC Intell. Prop., LLC v. Micron Tech., Inc.*,
2019 WL 2437073 (N.D. Cal. June 11, 2019) ..........................................................15

*Mobile Telecomms. LLC v. ZTE (USA) Inc.*,
2016 WL 8260584 (E.D. Tex. July 22, 2016) ..............................................2, 10, 34

*MV3 Partners LLC v. Roku, Inc.*,
No. 6:18-cv-00308-ADA, Dkt. 332 (W.D. Tex.) .......................................................1

*Neology, Inc. v. ITC*,
767 F. App'x 937 (Fed. Cir. 2019) ..........................................................................28

*Oil-Dri Corp. of Am. v. Nestle Purina Petcare Co.*,
2019 WL 5206273 (N.D. Ill. Mar. 13, 2019) ..........................................................16

*Old Chief v. United States*,
519 U.S. 172 (1997) ................................................................................................10

*Orchestrate HR, Inc. v. Trombetta*,
2017 WL 273669 (N.D. Tex. 2017) ....................................................................32, 33

*Personalized Media Commc'ns, L.L.C. v. Zynga, Inc.*,
No. 2:12-cv-00068, D.I. 232 (E.D. Tex. 2013) ........................................................27

*Radware, Ltd. v. F5 Networks, Inc.*,
2016 WL 590121 (N.D. Cal. 2016) ..........................................................................35

*Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*,
725 F.3d 1377 (Fed. Cir. 2013) ...............................................................................26

*ResQNet.com, Inc. v. Lansa, Inc.*,
594 F.3d 860 (Fed. Cir. 2010) ...........................................................................20, 21

*Retractable Techs., Inc. v. Becton, Dickinson & Co.*,
  No. 2:07-cv-00250, D.I. 253 (E.D. Tex. 2009) ...................................................................30

*Retractable Techs. v. Becton, Dickinson & Co.*,
  2009 WL 8725107 (E.D. Tex. Oct. 8, 2009) ......................................................................16

*Rimfrost AS. v. Aker Biomarine Antarctic AS.*,
  IPR2018-01730, Paper No. 35 (P.T.A.B. 2020) ..................................................................28

*Robroy Indus.-Tex., LLC v. Thomas & Betts Corp.*,
  2017 WL 1319553 (E.D. Tex. Apr. 10, 2017) ....................................................................31

*Rodgers v. Beechcraft Corp.*,
  2017 WL 592225 (N.D. Okla. Feb. 14, 2017) ....................................................................10

*United States v. Sadler*,
  488 F.2d 434 (5th Cir. 1974) .............................................................................................24

*Sanchez v. Swift Transp. Co. of Ariz., LLC*,
  2017 WL 5643554 (W.D. Tex. 2017) ..................................................................................36

*Sensormatic Elecs., LLC v. Wyze Labs, Inc.*,
  No. 1:19-cv-01543, D.I. 97 (D. Del. 2020) ........................................................................28

*Sentius Int'l, LLC v. Microsoft Corp.*,
  2015 WL 451950 (N.D. Cal. Jan. 27, 2015) .................................................................16, 21

*Settling Devotional Claimants v. Copyright Royalty*,
  797 F.3d 1106 (D.C. Cir. 2015) .........................................................................................23

*Siemens Med. Sols. USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*,
  637 F.3d 1269 (Fed. Cir. 2011) .........................................................................................25

*Smartflash LLC v. Apple Inc.*,
  2014 WL 7336213 (E.D. Tex. 2014) ..................................................................................21

*Smith & Nephew, Inc. v. Arthrex, Inc.*,
  2010 WL 457142 (E.D. Tex. 2010) ....................................................................................12

*Stragent, LLC v. Intel Corp.*,
  No. 6:11-cv-421-TBD-JDL, D.I. 274 (E.D. Tex. 2014) ......................................................37

*TC Tech. LLC v. Sprint Corp.*,
  2019 WL 2515779 (D. Del. 2019) ......................................................................................12

*Tex. Instr. Inc. v. Cypress Semiconductor Corp.*,
  90 F.3d 1558 (Fed. Cir. 1996) ...........................................................................................12

*Tramonte v. Fibreboard Corp.*,
   947 F.2d 762 (5th Cir. 1991) ................................................................24

*Uniloc USA, Inc. v. Microsoft Corp.*,
   632 F.3d 1292 (Fed. Cir. 2011).....................................................16, 18

*Union Carbide Corp. v. Montell N.V.*,
   28 F. Supp. 2d 833 (S.D.N.Y 1998)......................................................17

*Univ. Secure Registry LLC v. Apple Inc.*,
   No. 1:17-cv-00585, D.I. 167 (D. Del. 2020).........................................28

*Utah Med. Prods., Inc. v. Graphic Controls Corp.*,
   350 F.3d 1376 (Fed. Cir. 2003).............................................................21

*Van v. Language Line Servs., Inc.*,
   2016 WL 3566980 (N.D. Cal. 2016) ......................................................32

*Wellogix, Inc. v. Accenture, L.L.P.*,
   716 F.3d 867 (5th Cir. 2013) ................................................................15

*Whitewater W. Indus., Ltd. v. Pac. Surf Designs, Inc.*,
   2019 WL 2211897 (S.D. Cal. 2019) .......................................................35

**Federal Statutes**

35 U.S.C. § 287 ...........................................................................................2

**Other Authorities**

Fed. R. Civ. P. 26 ............................................................................. *passim*

Fed. R. Civ. P. 37 ......................................................................................9

Fed. R. Civ. P. 47 ......................................................................................7

Fed. R. Evid. 702 ...............................................................................12, 30

Fed. R. Evid. 401 ............................................................................. *passim*

Fed. R. Evid. 402 ............................................................................. *passim*

Fed. R. Evid. 403 ............................................................................. *passim*

Fed. R. Evid. 801 ...............................................................................30, 36

Fed. R. Evid. 802 ....................................................................................30

Fed. R. Evid.  803 ....................................................................................30

## PRELIMINARY STATEMENT

Plaintiff VLSI Technology LLC ("VLSI") accuses Defendant Intel Corporation ("Intel") of infringing two patents and seeks ███ ████████ ████████.  The case involves several of Intel's complex microprocessors and numerous complicated issues, including parallel litigations. Intel brings the motions *in limine* below in an effort to narrow the trial to the issues and evidence that are relevant, admissible, and will assist the jury.

## I.   MIL NO. 1: EXCLUDE REFERENCES TO OTHER LITIGATIONS AND PROCEEDINGS

Pursuant to FRE 401, 402, and 403, this Court should exclude from trial any reference to or presentation of evidence before the jury regarding other litigations or proceedings involving either party, including the decisions by the Patent Trial and Appeal Board ("PTAB") on Intel's petitions for *inter partes* review of the patents-in-suit; Intel's challenge to the PTAB's discretionary denial practices under the Administrative Procedure Act; VLSI's lawsuits against Intel in the -254 and -256 Western District of Texas actions, including any reference to the -254 case, to the fact that a witness testified in the -254 case, or to the jury's infringement verdict or damages award in that case;[2] VLSI's actions against Intel in the District of Delaware, Northern District of California, and China; Intel's antitrust case against Fortress Investment Group; or any other previous or current lawsuits, proceedings, or investigations involving Intel.

Courts, including this one, routinely exclude references to other litigations and proceedings involving the parties, including PTAB proceedings, because any probative value would be outweighed by the substantial risk of prejudice and confusion.  *See, e.g., MV3 Partners*

---

[2] Although a witness's testimony from the -254 trial may be used for impeachment purposes, that can and should be done without reference to the -254 trial, e.g., without reference to the testimony having been given the -254 trial, or any other specifics on where or when the testimony was given.  For example, the prior testimony would just be referred to as "prior testimony" or "prior testimony under oath," without reference to the circumstances under which that testimony was given.

*LLC v. Roku, Inc.*, No. 6:18-cv-00308-ADA, Dkt. 332 at 4 (W.D. Tex.) (granting motion *in limine* to exclude references to "*Inter Partes* Review Concerning the Patent-in-Suit" and to preclude "any references to a parallel proceeding"); *Biscotti Inc. v. Microsoft Corp.*, No. 2:13-CV-01015-JRG-RSP, 2017 WL 2537021, at *1 (E.D. Tex. May 30, 2017) (finding the probative value in allowing the plaintiff to reference PTAB findings was "substantially outweighed by the danger of the unfair prejudice"); *Mobile Telecomms. LLC v. ZTE (USA) Inc.*, 2016 WL 8260584, at *2 (E.D. Tex. July 22, 2016) (precluding any references or evidence "regarding unrelated litigations, investigations, or accusations involving the parties or their affiliates or principles"); *Ion, Inc. v. Sercel, Inc.*, 2009 WL 10677596, at *3 (E.D. Tex. July 22, 2009) ("The parties' actions in other cases are irrelevant to the present case."). Indeed, in the -254 case, the Court granted both parties' motions to exclude evidence of prior litigation, including "[o]ther litigation involving VLSI or Intel." 12/15/20 Hr'g Tr. at 194:12-14 (granting VLSI's motion to exclude "Other Litigation In Which VLSI Is A Party" (D.I. 364)); 2021-01-20 Hr'g Tr. at 50:5-51:25 (stating that what the Court allowed "with respect to litigations and procedures that involved VLSI" would "go both ways").

In the -254 case, VLSI argued that Intel was attempting "to have it both ways" because Intel in the -255 case (for its marking defense) relies on the ITC's determination that Sigmatel's 35XX chips practice the '522 and '187 patents (the "Sigmatel ITC litigation"). D.I. 381-02 at 2. VLSI's criticism is unfounded. ***First***, the ITC proceeding did not involve either VLSI or Intel, but instead was between SigmaTel and Actions Semiconductor Co. D.I. 258, Ex. 114. ***Second***, VLSI has never disputed that the 35XX chips practice the '522 and '187 patents, and Intel's marking defense should be granted as a matter of law—as explained in Intel's pending Motion for Summary Judgment of No Pre-Complaint Damages Under 35 U.S.C. § 287 (D.I. 258).

However, if the Court were to deny Intel's motion and VLSI were to refuse to stipulate that Sigmatel's 35XX chips practice at least one claim of each of the '522 and '187 patents, then the ITC's determination that the 35XX products practiced the '522 and '187 patents to satisfy the domestic industry requirement is (1) directly relevant to Intel's marking defense, and (2) would not be unduly confusing for the jury to consider, particularly because the ITC case involved entirely different parties and entirely different products.

## II.     MIL NO. 2:  EXCLUDE  REFERENCES  TO  ███████████████████████ ████████████

Early in this case, the Court made the parties aware that, when in private practice, ████ ████████████████████████████████████████.  C.A. No. 19-cv-00254, 7/31/19 Hrg. Tr. at 5:10-6:6.  This representation included the SigmaTel ITC investigation referenced above (relevant to Intel's marking defense).  To avoid the obvious and severe prejudice to Intel that would result if the jury were made aware of that prior representation, which is not relevant to any issue at stake in this case, Intel respectfully requests an order precluding any mention of the Court's prior representation of SigmaTel and involvement with respect to the asserted patents, including during *voir dire*.

## III.    MIL NO. 3: EXCLUDE REASONS FOR WITNESSES BEING UNAVAILABLE LIVE AT TRIAL

In the -254 case, VLSI included Michael Stolarski, VLSI's CEO, as "will call" on its witness list and, during opening statements, introduced Mr. Stolarski and told the jury that they may not see him "every day" because he may be watching trial "in an adjacent courtroom" due to Covid restrictions.  (C.A. No. 21-cv-00057, D.I. 565, 2/22/21 Trial Tr. at 208:19-25 ("Because of certain safety precautions that limit the number of people from each side who can be in the courtroom, there are times certain witnesses need to be here, support personnel or certain

lawyers, so you may not see Mr. Stolarski every day.  But he can watch what's going on in an

adjacent courtroom.  This is a very important case for VLSI.").)

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████  (C.A. No. 21-cv-00057-ADA, D.I. 520-1.)

Yet, during its rebuttal case, VLSI had its damages expert, Mr. Chandler, volunteer that he

"spoke with Mr. Stolarski" "[b]efore he had to leave for a medical issue[.]"  (C.A. No. 21-cv-

00057, D.I. 570, 3/1/21 Trial Tr. [Chandler] at 1652:7-8.)   And during rebuttal closing

arguments, counsel for VLSI showed the jury a slide stating that Mr. Stolarski was ████████

████████████████████  "[g]ave two full days of deposition Intel could have used," and

was "[w]atching trial on Zoom."  (C.A. No. 21-cv-00057, D.I. 553-07 at PDX10.72; C.A. No.

21-cv-00057, D.I. 570, 3/1/21 Trial Tr. at 1616:20-25 ("They took his deposition for two full

days under oath.  They were able to, if they wanted to, play any or all of that deposition

testimony, and it's considered as much weight as if he was testifying in a court of law.").)  There

was no evidence in the record before the jury concerning this deposition and was improper

argument, to which Intel objected.  This was clearly an important issue to the jury, given that

juror note #1 asked "Could we see Stalarsky's [sic] deposition?"  (C.A. No. 21-cv-00057, D.I.

559.)

        To prevent VLSI from again misleading the jury regarding a witness's attendance at

trial—and misleading the jury further about deposition designations that Intel may decide not to

play—Intel requests an order precluding VLSI from offering argument or evidence (including

during *voir dire*, or in opening and closing statements, witness testimony, or demonstratives)

concerning facts not in evidence about why a witness is not present live at trial, including, for

example, (1) whether a witness may be watching trial in the overflow room or remotely,

(2) whether a witness has ███████████████████ for not being present at trial, or

(3) whether deposition testimony exists that could be played for a witness not present live at trial.

VLSI's experts also should be precluded from offering information or commentary that is not in

their reports about the availability or unavailability of other witnesses, including the reasons a

witness may not be present in the courtroom.

## IV.    MIL NO. 4: EXCLUDE OPINION COMMENTARY ON CASE PUBLICITY OR IMPORTANCE

The jury in this case, as in every case, will be instructed not to review or consider news

reports about the case or discuss the case with anyone, including fellow jurors.  In the -254 case,

however, references were made by the Court and by VLSI to the jury about the importance of the

case, the wide publicity it was receiving, and the large number of people across the country who

were watching the trial.  *See, e.g.*, C.A. No. 6:21-cv-00057, D.I. 566, 2/23/21 Trial Tr. at 405:10-

13 ("If you are listening in, the jury -- so you know, this is being broadcast by phone. People all

across the United States are listening in to this trial, wishing they had your seats on the jury and

could be here. And so we are going to cut that feed off at this time, and we'll resume it when we

unseal the courtroom."), D.I. 569, 2/26/21 Tr. at 1305:11-14 ("It's been reported in the

Washington -- Waco Tribune.  It's been reported other places, and I don't want you to see

anything that's being published about the case other than what you've seen in the courtroom."),

D.I. 570, 3/1/21 Tr. at 1626:8-10 ("You've heard His Honor say that this trial is being broadcast.

And many, many people who aren't in the courtroom because of safety protections are watching

every day.").   Comments like these would not only make it more likely that jurors will

improperly try to consult inadmissible out-of-court sources for additional information about the

case, but also would risk severe prejudice to Intel by misleading the jury into concluding that the asserted patents are so important and valuable that they have captivated widespread attention across the country.  Intel therefore requests an order precluding any commentary before the jury, including during *voir dire*, concerning the amount of publicity the case is receiving, the number of people watching or listening to the trial, the importance of the case to those who are watching or listening, and other similar issues.

## V.   MIL NO. 5: EXCLUDE REFERENCES TO IRRELEVANT TEXAS CONNECTIONS DURING VOIR DIRE

During jury empanelment in the -254 trial, counsel for VLSI volunteered to the venire several tangential and irrelevant personal connections to Texas—including cases he had previously tried in Texas counties and the details of prior cases in which he had represented Texas companies and prestigious individuals against larger corporations.  (*E.g.*, C.A. No. 6:21-cv-00057, D.I. 565, 2/22/21 Trial Tr. at 28:4-14 ("I've been lucky enough to have cases -- or to try cases in a number of places in Texas: Dallas, Houston, Austin, Marshall, Tyler, Texarkana and some other places.  And of course right now in Waco.  So I've also had the privilege of representing numbers of companies here. … I've had the privilege of representing Texas Instruments on a number of matters, including a big case against Samsung.); *id.* at 29:13-30:2 ("There was an inventor at Texas Instruments.  His name is Jack Kilby.  In 1958 he invented the integrated circuit, won the Nobel Prize. …  I've also had the privilege of representing the folks at Baylor College of Medicine. …  I've had the privilege of working with Compaq Computer….  That became one of the world's largest computer companies before they merged with Hewlett Packard. …  They were based in Houston.").)

These comments were improper.  They were not calculated to discover or assess jury bias or prejudice, but were instead clearly targeted at currying favor with the venire and attempting to

impress them with prior representations and credentials—to suggest that if counsel for VLSI had represented important Texas companies and individuals in the past, it was doing so again in this litigation, and that those companies needed defending from larger corporations.   This type of gamesmanship is improper and should be precluded.  *See* Fed. R. Civ. P. 47(a).

## VI.   MIL NO. 6:  EXCLUDE USE OF DEMONSTRATIVES THAT CONTAIN UNDESIGNATED OR OTHERWISE INADMISSIBLE DEPOSITION TESTIMONY

During the -254 trial, VLSI repeatedly attempted to have its experts offer demonstratives that referenced hearsay deposition testimony that VLSI had not designated for trial.  After Intel objected (C.A. No. 6:21-cv-00057, D.I. 511 at 1), the Court agreed that VLSI could not introduce testimony in this manner unless the testimony was separately offered to the jury during trial. (C.A. No. 6:21-cv-00057, D.I. 566, 2/23/21 Trial Tr. at 311:19-312:12 ("[I]f an expert is going to rely on deposition testimony -- whatever he was going to rely on, whether it's something someone said in the courtroom that we all heard, or he's going to say that X -- Joe Smith said this in his deposition, that testimony is going to have to be put into the record during the course of the trial, or I agree with you, it is hearsay.  … [E]xperts will only be able to rely on deposition testimony that the jury actually hears and is actually in the record."); *id.* at 318:19-22 ("All of the testimony that anyone is going to rely on has to be put in, because whatever snippet you want to use of a deposition, Mr. Lee and his team may feel like they need to cross-designate some other portion from a deposition.").)  Consistent with that ruling, Intel respectfully requests an order that precludes from the -255 trial any demonstratives that contain deposition testimony that VLSI has not designated for use at trial, or any other testimony that is not separately admitted during trial.

## VII.   MIL NO. 7:  EXCLUDE INCOMPLETE, SELECTIVE REFERENCES TO ENTITIES THAT MAY BENEFIT FROM POTENTIAL RECOVERY BY VLSI

Pursuant to FRE 401, 402, and 403, Intel requests that VLSI be precluded from presenting arguments, evidence, or testimony to the jury regarding selective, incomplete references to supposed "investors" that stand to benefit from any recovery by VLSI.  For example, in the -254 trial, VLSI's first witness Jim Spehar testified that "teachers['] unions," "pension funds, I guess" and "I guess . . . Texas A&M" all stood to benefit from VLSI's recovery in the litigation— ███████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████  VLSI's counsel then repeated this speculative testimony during its closing argument, even though the Court had precluded Intel from offering additional evidence directed to providing a complete picture of those who actually stood to benefit from the case.  (C.A. No. 6:21-cv-00057, D.I. 569, 2/26/21 Trial Tr. at 1030:11-15 (precluding Intel from offering evidence concerning Fortress), D.I. 570, 3/1/21 Trial Tr. [Closing] at 1623:17-24 (referring to "teachers' unions," "pension funds," and "Texas A&M" when discussing "where … the moneys [generated from this lawsuit] go").)

For the reasons below, similar evidence and argument should be excluded from the upcoming -255 trial, or if VLSI is permitted to address these matters at trial, Intel at the very least must be allowed to complete the picture and rebut VLSI's incomplete characterizations with evidence regarding ███████████████████.

*First*, during discovery, ██████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████.

VLSI ████████ should not be permitted to withhold discovery on VLSI's "investors" while having witnesses offer testimony on that exact issue at trial—particularly from witnesses who previously disclaimed any knowledge on the issue. Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless.").

*Second*, beyond this discovery stonewalling, isolated and incomplete references to non-

parties that might obtain recovery through their investments in companies that may invest in VLSI should be excluded as irrelevant because they have no bearing on any issue the jury will be asked to decide.   Evidence related to these purported "investors" also should be excluded because any minimal probative value would be outweighed by the risk of unfair prejudice, misleading the jury, and confusing the issues.  FRE 403.  Any attempt by VLSI to suggest that the lawsuit will benefit sympathetic groups such as teachers' unions and an in-state college would be an improper emotional appeal and unfairly prejudicial to Intel.  *See Old Chief v. United States*, 519 U.S. 172, 180 (1997) (noting need to avoid unfair prejudice under FRE 403 based on "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one").[3]

  ***Finally***, if the Court permits VLSI to offer such testimony, Intel should at least be permitted to rebut these mischaracterizations, ████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████.  *See Rodgers v. Beechcraft Corp.*, 2017 WL 592225, at *4 (N.D. Okla. Feb. 14, 2017), *aff'd*, 759 F. App'x 646 (10th Cir. 2018) ("Plaintiffs should be not be permitted to use [certain evidence] as a means to bolster their own case, while preventing defendants from using [similar evidence] as a defense."); *Karlo v. Pittsburgh Glass Works, LLC*, 2016 WL 69651, at *10 (W.D. Pa. Jan. 6, 2016) (denying plaintiffs' attempt to "have it both ways" by "introduc[ing] testimony and evidence" to support their case while also "ask[ing] the Court to

---

[3] VLSI should not be permitted to argue that Intel has opened the door on this issue merely by inquiring as to whether Mr. Stolarski or other potential trial witnesses stand to benefit personally depending on the outcome of the case—classic facts of witness bias that Intel should be allowed to probe without risk of claims that it has opened the door more broadly to the involvement of other "investors."

hide from the jury the full picture"); *Mobile Telecomms. Techs.*, 2016 WL 8260584, at *3 (permitting defendant to "provid[e] a fair and factual overview of [plaintiff's] business model"); *Finjan, Inc. v. Blue Coat Sys., Inc.*, 2015 WL 4129193, at *2 (N.D. Cal. 2015) ("[F]actual evidence concerning Plaintiff's business . . . is relevant to a damages analysis under the *Georgia-Pacific* factors."); *DNT, LLC v. Sprint Spectrum, LP*, 2010 WL 582164, at *4 (E.D. Va. Feb. 12, 2010) (corporate structure and business of patent owner "is relevant to the issue of witness bias").

Further, if VLSI offers evidence or argument regarding "teachers' unions," "pension funds," "Texas A&M," or any other "investors" who allegedly stand to benefit from this case, Intel also should be allowed to introduce other evidence that the Court has previously excluded at VLSI's request—including as to ███████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████. If VLSI opens the door with respect to "investors," all this evidence would be necessary to provide the complete picture of the money trail for this case (involving both where the money is coming from and where it may go). (D.I. 364 at 1-3 (VLSI MIL 2.1); *id.* at 6 (VLSI MIL 2.5); D.I. 365 at 6-9 (VLSI MIL 3.2); D.I. 369 at 8-9 (VLSI MIL 5.4); C.A. No. 21-cv-00057, D.I. 508 at 3-4.)  VLSI cannot suggest that sympathetic entities would benefit from a verdict in VLSI's favor while simultaneously preventing Intel from demonstrating how it has contributed to and positively impacted the community.███████████████████████████████████.

## VIII.  MIL NO. 8: EXCLUDE EXPERT OPINION ON INFRINGEMENT UNDER DOCTRINE OF EQUIVALENTS

In their reports, ███████████████████████████████████████████████ ████████████████████████████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

Given this lack of disclosure, VLSI's experts should be precluded from offering any infringement theory at trial under the doctrine of equivalents—which would violate FRCP 26's requirement for expert reports to provide "a complete statement of all opinions the witness will express and the basis and reasons for them" and "the facts or data considered by the witness in forming them." (*See also* D.I. 268, 337-02 (Intel's *Daubert* motion seeking to exclude VLSI's experts' conclusory doctrine of equivalents analysis); D.I. 257, 326-02 (Intel's motion seeking summary judgment of no infringement under the doctrine of equivalents).)

This type of conclusory placeholder paragraph also fails to provide the type of "particularized testimony and linking argument" required to sustain a proper equivalents theory—which "must be presented on a limitation-by-limitation basis," and for which "[g]eneralized testimony … will not suffice." *Gemalto S.A. v. HTC Corp.*, 754 F.3d 1364, 1374 (Fed. Cir. 2014); *Tex. Instr. Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996); *see Genband US LLC v. Metaswitch Networks Corp.*, 2016 WL 3475688, at *2 (E.D. Tex. 2016) (striking barebones equivalents theory because "[c]onclusory opinions unsupported by 'facts or data' and based on no discernable 'principles and methods' are not admissible under Fed. R. Evid. 702"); *Smith & Nephew, Inc. v. Arthrex, Inc.*, 2010 WL 457142, at *7-9 (E.D. Tex. 2010) (precluding "boilerplate and conclusory" equivalents opinions "no more meaningful than [the expert] merely stating that the doctrine of equivalents is met for a particular element" to avoid "unfairly prejudice[ing] [the defendant] and defeat[ing] one of the primary purposes that the expert report serves"); *TC Tech. LLC v. Sprint Corp.*, 2019 WL 2515779, at *10-11 (D. Del. 2019) (excluding "conclusory" equivalents theory as not "based on sufficient facts or data").

## IX.   MIL NO. 9: EXCLUDE ARGUMENT OR EVIDENCE OF WILLFUL INFRINGEMENT

VLSI should be precluded from offering evidence at trial concerning (1) Intel's alleged "policy" of discouraging its engineers from reviewing the patents of other companies, and (2) the fact that Intel continued manufacturing the accused products after the filing of this litigation. The Court has already held that Intel's purported policy is legally insufficient to show willful blindness—i.e., the sole theory under which VLSI has claimed the policy is relevant. (D.I. 52 at 1 ("The Court finds that Intel's policy that forbids its employees from reading patents held by outside companies or individuals is insufficient to meet the test of willful blindness.").) The Court also has already determined that mere continued manufacturing of accused products after the commencement of litigation cannot support a claim of post-suit willfulness—i.e., the only post-suit evidence that VLSI has cited in support of its willfulness claims. (12/15/20 Hr'g Tr. at 86:2-5 ("I'm not going to permit VLSI to argue . . . in support of . . . willfulness that Intel continued to manufacture the products . . . after they were sued.").)[4]  Therefore, both categories of evidence should be excluded at trial.[5]

Nevertheless, if the Court permits VLSI to offer evidence and/or argument at trial directed to its willfulness claims, Intel's fact witnesses should be allowed testify that they have reviewed the asserted patents and formed a belief that Intel does not infringe—based on their own personal knowledge of the accused products (and without offering expert testimony).  In

---

[4] VLSI alleges that "Intel has long had knowledge of" the asserted patents. Ex. 19 [VLSI's Resp. to Interrog. No. 1] at 9.  But it tellingly fails to identify any date prior to its assertion of the asserted patents on which Intel allegedly obtained that purported knowledge, any evidence to support any such date, or any facts even remotely suggesting that Intel pressed forward with its accused conduct despite believing it infringed or otherwise consistent with the conduct of a "pirate."  *See Halo Elecs., Inc. v. Pulse Elecs.*, Inc., 136 S. Ct. 1923, 1932 (2016).

[5] Because these two items are the ***only*** categories of evidence that VLSI has identified in support of its willfulness claims, VLSI should not be permitted to offer any evidence or argument regarding willful infringement to the jury, as Intel has previously explained.  (D.I. 252, 321-02.)

other words, if the Court permits VLSI to allege that Intel is knowingly infringing the asserted patents, VLSI cannot fairly seek to bar Intel's fact witnesses from offering rebuttal factual testimony within the scope of their personal knowledge that refutes those allegations. *See, e.g.*, *Chamberlain Grp., Inc. v. Lear Corp.*, 2011 WL 13254690, at *4 (N.D. Ill. Mar. 22, 2011) (denying motion *in limine* to exclude "testimony by . . . any corporate representative or witness that Lear was not willful because it believed it did not infringe" and permitting witnesses to provide "the basis of their testimony"); *see also Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367, 1377 (Fed. Cir. 2020) (facts relevant to willfulness include "[w]hether or not [defendant] reasonably believed it did not infringe").

The same result also should apply if VLSI otherwise "opens the door" to this type of fact testimony.  For example, if VLSI offers evidence or argument at trial in an attempt to suggest that Intel failed to take sufficient steps to "avoid" infringement, Intel should be permitted to offer evidence and argument responding to that allegation—including by having Intel fact witnesses testify about their own personal belief that Intel does not infringe based on the accused products (which confirms that Intel did not need to take any steps to avoid infringement because there was no infringement to avoid in the first instance).

## X.  MIL NO. 10: EXCLUDE ARGUMENT, TESTIMONY, OR SUGGESTION THAT INTEL IS A "PATENT HOLDOUT" OR REFUSES TO TAKE A LICENSE OUTSIDE OF LITIGATION

VLSI should be precluded at trial (including at *voir dire*) from offering evidence or argument suggesting that Intel refuses to license patents outside of litigation, only pays meaningful royalties in litigation settlement agreements, forces patent owners to file suit, or has a "wait and see" attitude when approached with a patent (including by using the terms "patent holdout," "unwilling licensee," or other similar labels).

**First**, any of these characterizations would violate the Court's existing *Daubert* ruling, which prohibits VLSI from offering argument or testimony suggesting that Intel is a holdout or is "unwilling[] to license absent a lawsuit." (C.A. No. 21-cv-00057, D.I. 507 at 2.) VLSI should not be permitted to evade this ruling at trial by using similar phrases or labels used to make the same type of argument.

**Second**, any suggestion that Intel refuses to take a license outside of litigation, will not pay meaningful royalties outside of litigation settlements, or has a "wait and see" attitude is irrelevant and highly prejudicial. Intel's decisions about whether and/or when to license other patents, or to settle other cases involving other patents, have nothing to do with the merits of this case. Indeed, VLSI concedes that it has not identified a single Intel litigation settlement that is either economically or technically comparable to the hypothetical negotiation in this case. (D.I. 252-58 [Chandler Dep.] at 236:8-22, 236:25-237:23.) A suggestion that Intel refuses to take a license outside of litigation would create the (incorrect) impression that Intel improperly refuses to license patents unless it is sued, is a serial litigant/infringer, or is somehow to blame for this case going to trial and the jury being asked to serve during a pandemic. *Wellogix, Inc. v. Accenture, L.L.P.,* 716 F.3d 867, 882 (5th Cir. 2013) ("A district court may exclude relevant evidence if its probative value is substantially outweighed by a danger of … unfair prejudice, confusing the issues, [or] misleading the jury" (citations omitted)); *MLC Intell. Prop., LLC v. Micron Tech., Inc.*, 2019 WL 2437073, at *4 (N.D. Cal. June 11, 2019) (granting motion *in limine* seeking to exclude characterization of accused infringer as a patent "holdout" as prejudicial).

**Finally**, as set forth in Intel's motion *in limine* No. 1, VLSI should not be permitted to offer evidence or argument referring to other litigations involving either party, which would

unduly prejudice Intel and present a substantial risk of confusing the jury.  References to instances in which Intel decided to go to court to defend itself or decided to settle litigation would do just that.  *See Mendenhall v. Cedarapids, Inc*., 5 F.3d 1557, 1574-75 (Fed. Cir. 1993) (holding evidence from other litigations risked confusing jury); *Sentius Int'l, LLC v. Microsoft Corp*., 2015 WL 451950, *7 (N.D. Cal. Jan. 27, 2015) (excluding opinion based on settlement from other litigation because the agreement would "confuse the jury about the facts and circumstances of that dispute and prejudice the jury by suggesting that Microsoft is a serial infringer"); *Retractable Techs. v. Becton, Dickinson & Co*., 2009 WL 8725107, at *2-3 (E.D. Tex. Oct. 8, 2009) (excluding references to prior litigations involving accused infringer that could mislead jury into thinking accused infringer had "a character … to violate laws warranting suit").

## XI.    MIL NO. 11: EXCLUDE IRRELEVANT AND PREJUDICIAL REFERENCES TO INTEL'S SIZE, WEALTH, AND FINANCIAL PERFORMANCE

Pursuant to FRE 402 and 403, Intel requests that the Court preclude VLSI from referring to Intel's total company revenues, referencing Intel's size, financial performance, and/or market/competitive position, or using pejorative characterizations like "dominant," "monopolist," "goliath," or "bully" pertaining to Intel's size, wealth, and financial performance that would unfairly "skew the damages horizon for the jury."  *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320 (Fed. Cir. 2011).  Courts routinely exclude such evidence and argument because any probative value is substantially outweighed by the risk of unfair prejudice, confusion of the issues, and misleading the jury.  *See id.* at 1320-21; *Oil-Dri Corp. of Am. v. Nestle Purina Petcare Co.*, 2019 WL 5206273, at *2 (N.D. Ill. Mar. 13, 2019) (precluding evidence of defendant's "size and wealth" because portraying defendant as a "multi billion dollar multinational company" would "inflame the jury"); *Mars, Inc. v. Trurx LLC*, 2016 WL 4055675,

at *1 (E.D. Tex. Apr. 29, 2016) (precluding "derogatory remarks" such as "'Goliath,' 'Monopolist,' or 'Bully.' Additionally, Defendants are not permitted to address [plaintiff's] total revenue."); *HTC Corp. v. Tech. Properties Ltd.*, 2013 WL 4782598, at *6 (N.D. Cal. Sept. 6, 2013) ("Federal Circuit case law does not permit the use of a company's overall size or revenue as a check to confirm the reasonableness of a jury award. … [T]he probative value of evidence related to [the company's] size, wealth, or overall revenues is substantially outweighed by the risk of unfair prejudice … necessitating its exclusion … ."); *Union Carbide Corp. v. Montell N.V.*, 28 F. Supp. 2d 833, 841 (S.D.N.Y 1998) (precluding reference to company's "dominant" position in the industry).[6]

## XII.   MIL NO. 12:   EXCLUDE RELIANCE ON IRRELEVANT AND PREJUDICIAL REFERENCES TO TOTAL REVENUES FOR THE ACCUSED PRODUCTS

It is well-settled law that a plaintiff can refer to the defendant's total accused product revenues only if the plaintiff satisfies the "entire market value rule"—by showing that the specific accused features are "the basis" for customer demand for the accused products. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1336 (Fed. Cir. 2009) (patentee can introduce all accused revenues only if it "prove[s] that the patent-related feature is the basis for customer demand.") (internal quotation and citation omitted).

It is undisputed that the entire market value rule does ***not*** apply here. 





---

[6] The Court granted a similar motion *in limine* in the -254 case (D.I. 362, Intel MIL No. 6), and precluded VLSI from relying on overall Intel revenues (1/20/21 Hr'g Tr. at 58:17-24 ("The fact that Intel made a gazillion billion dollars or anything that's general that is unnecessary for the damages calculation needs to be kept out ….")). The Court also granted a motion *in limine* preventing both parties from making pejorative statements about either party's business model. D.I. 364, VLSI MIL 2.3; 12/15/20 Hr'g Tr. at 194:7-8. The same rulings are warranted here as well.

███████████████████████████████████████████████ It should
be precluded from doing so.

Where the entire market value rule does not apply, evidence and argument directed to the total accused revenues are (1) wholly irrelevant—as they can include the value of features (in this case, thousands of features) of the accused products that are not accused, and (2) highly prejudicial—as they can improperly encourage the jury to award damages based on large numbers that are disconnected from the value of the specific accused features at issue. *LaserDynamics, Inc. v. Quanta Comp., Inc.*, 694 F.3d 51, 68 (Fed. Cir. 2012) ("Admission of such overall revenues, which have no demonstrated correlation to the value of the patented feature alone, only serve to make a patentee's proffered damages amount appear modest by comparison, and to artificially inflate the jury's damages calculation beyond that which is adequate to compensate for the infringement.") (internal citation and quotation omitted).

These risks are particularly the case here, where despite accusing only two of the thousands of different features of Intel's microprocessors, VLSI seeks to introduce ████████ ███████████████████—far greater than the revenues at issue in cases like *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1319-20 (Fed. Cir. 2011), where the Federal Circuit granted a new trial after the plaintiff improperly introduced total accused revenues without satisfying the entire market value rule.  632 F.3d at 1295, 1320 (affirming new trial where introduction of $19 billion in accused revenues "fundamentally tainted" and "skew[ed]" the damages award).

In contrast to the significant prejudice to Intel that will result if VLSI is permitted to refer to Intel's total accused revenues, VLSI will not be prejudiced if precluded from doing so.

███████████████████████████████████████████████

███████████████████████████████████████████████

[REDACTED]

Because Intel's total accused revenues are irrelevant and would be prejudicial if evidence or argument about them is permitted in violation of the entire market value rule, VLSI should be precluded from referring to Intel's total accused revenues at trial.

## XIII.  MIL NO. 13:   EXCLUDE RELIANCE ON PRIOR INTEL LITIGATION SETTLEMENTS AND, IF THEY ARE ADMITTED OVER INTEL'S OBJECTION, REQUIRE VLSI TO RAISE LITIGATION SETTLEMENTS IN ITS CASE-IN-CHIEF

Pursuant to FRE 402 and 403, VLSI should be precluded from introducing evidence of Intel's prior litigation settlements, which are irrelevant to the hypothetical negotiation, the determination of a reasonable royalty, and damages generally—given VLSI's *admission* they are *not comparable* to a hypothetical license to the asserted patents.[7]  If the Court allows evidence concerning the settlement agreements (over Intel's objection), VLSI should be required to raise these agreements in its affirmative case to avoid undue prejudice to Intel.

*First*, evidence and argument concerning Intel's settlement agreements should be excluded at trial given the settled law that a party may rely on a prior agreement to prove a reasonable royalty *only after* showing the agreement is "*sufficiently comparable*" to a hypothetical license to the asserted patents—both technologically and economically.

---

[7] [REDACTED]

*LaserDynamics, Inc.*, 694 F.3d at 80 (district court "erroneously permitted continued reliance on [patent license] where comparability between it and a hypothetical license to the [Asserted] Patent was absent"); *Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC*, 927 F.3d 1292, 1299 (Fed. Cir. 2019) ("[P]rior licenses or settlements need to be 'sufficiently comparable' for evidentiary purposes and any differences in circumstances must be soundly accounted for.")

For these reasons, courts routinely and consistently exclude ***non***-comparable agreements as:

(1)     irrelevant because they have no bearing on a proper damages analysis, *see LaserDynamics*, 694 F.3d at 80 (disallowing non-comparable licenses because such licenses "simply [had] no place in [the] case"); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 870-73 (Fed. Cir. 2010) (cautioning trial court not to rely on "unrelated licenses" on remand); *Flexuspine, Inc. v. Globus Med., Inc.*, 2016 WL 9282314, at *3 (E.D. Tex. Aug. 5, 2016) (precluding reliance on an agreement because "it was not sufficiently comparable to circumstances of a hypothetical negotiation in this case to aid the trier of fact"); *CoreLogic Info. Sols., Inc. v. Fiserv, Inc.*, 2012 WL 4761739, at *2 (E.D. Tex. Sept. 20, 2012) (excluding settlement agreements and holding "no party may introduce the amount of a settlement or royalty

payment until the technical and economic comparability of the settlement or license has been established or will not be disputed");[8] and

(2)     unfairly prejudicial to the accused infringer and confusing to the jury because the agreements "inflate the reasonable royalty analysis with conveniently selected licenses without an economic or other link to the technology in question," *ResQNet.com, Inc.,* 594 F.3d at 872; *see Utah Med. Prods., Inc. v. Graphic Controls Corp.*, 350 F.3d 1376, 1385-86 (Fed. Cir. 2003) (similar); *LaserDynamics, Inc.*, 694 F.3d at 80 (affirming exclusion of non-comparable licenses that "would mislead and confuse the jury"); *Lucent Techs., Inc.*, 580 F.3d at 1328-29 (vacating damages award "in the ballpark" of payment from non-comparable agreement admitted into evidence).

While non-comparability is a sufficient reason to exclude these settlements, they should further be excluded because settlement agreements, by their nature, are highly prejudicial and confusing to jurors. *LaserDynamics*, 694 F.3d at 77 ("The propriety of using prior settlement agreements to prove the amount of a reasonable royalty is questionable."). References to large amounts paid in settlement agreements can be used unfairly and improperly to (a) suggest that the accused infringer is a serial infringer who only agrees to pay when sued, and/or (b) inject into the case highly-inflated dollar amounts that reflect the additional consideration of avoiding burdensome litigation in an effort to have the jury improperly associate those large irrelevant

---

[8] Although some district courts have permitted using non-comparable agreements to demonstrate the form of a reasonable royalty (e.g., lump sum vs. running royalty), ███████████████████ ███████████████████████████████. Moreover, even where non-comparable agreements are admitted for this purpose, these district courts have made clear that the agreements may ***not*** be used to establish the ***amount*** of a reasonable royalty. *E.g.*, *GREE, Inc. v. Supercell Oy*, 2020 WL 4288345, at *3-4 (E.D. Tex. 2020) (precluding any "reference [to] the dollar amount" of non-comparable licenses); *Smartflash LLC v. Apple Inc.*, 2014 WL 7336213, at *3 (E.D. Tex. 2014) (similar); *Apple Inc. v. Samsung Elecs. Co.*, 2014 WL 794328, at *11 (N.D. Cal. 2014) (similar).

amounts with an appropriate reasonable royalty. *See id.* at 78 (excluding settlement that was "six times larger than the next highest amount paid for a license to the patent-in-suit and ostensibly reflects not the value of the claimed invention but the strong desire to avoid further litigation under the circumstances"); *Sentius Int'l*, 2015 WL 451950, at *1-9 (excluding opinion based on non-comparable settlement agreement because admission would "confuse the jury about the facts and circumstances of that dispute and prejudice the jury by suggesting that Microsoft is a serial infringer").

In addition, settlement agreements—even if comparable—are generally disfavored and admissible only in "limited" circumstances where they are "uniquely relevant and reliable." *LaserDynamics, Inc.*, 694 F.3d at 77 (noting Federal Circuit's "longstanding disapproval of relying on settlement agreements to establish reasonable royalty damages"); *Fenner Invs., Ltd. v. Hewlett-Packard Co.*, 2010 WL 1727916, at *2 (E.D. Tex. Apr. 28, 2010) ("Settlement agreements are generally not relevant 'because in the usual course they do not provide an accurate reflection of what a willing licensor would do in an arm's length transaction.'" (citation omitted)). Because no such evidence of uniqueness exists here, VLSI should be precluded from offering evidence or argument at trial directed to Intel's settlement agreements.

**Second**, if the Court permits VLSI to offer evidence or argument concerning Intel's settlement agreements (to which Intel objects), then VLSI should be required to raise the agreements in its case-in-chief. VLSI has the burden to prove damages. *Lucent Techs., Inc.*, 580 F.3d at 1324. If VLSI maintains that the agreements are relevant to its damages arguments, it should be required to offer them *in its case-in-chief*—and not be allowed to first spring them on Intel during VLSI's rebuttal case. *See Belden Inc. v. Berk-Tek LLC*, 805 F.3d 1064, 1081–82 (Fed. Cir. 2015) (holding rebuttal evidence is limited to "that which is responsive to the

adversary's evidence"); *Eason v. Fleming Cos.*, 1993 WL 360736, at *7 (5th Cir. Aug. 24, 1993) ("[R]ebuttal evidence may not be used merely to continue the plaintiff's case-in-chief, and such evidence is not admissible merely to remedy a defect in the plaintiff's case."); *Cates v. Sears, Roebuck, Co.*, 928 F.2d 679, 685 (5th Cir. 1991) (same); *see also Settling Devotional Claimants v. Copyright Royalty*, 797 F.3d 1106, 1118-19 (D.C. Cir. 2015) (rejecting argument that "weighty evidence may be saved for the rebuttal case").

The impropriety of allowing VLSI to introduce the non-comparable agreements in its rebuttal case is clear from the manner in which the agreements were introduced in the first trial (C.A. No. 6:21-cv-00057) and their effect on the jury. ████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████ ███████████████████████████████ At this late hour, and without the opportunity for a surrebuttal case, the interjection of irrelevant, non-comparable settlement and other agreements after Intel's damages expert had concluded his direct examination greatly prejudiced Intel and misled the jury into believing that these non-comparable, high-dollar amount, agreements were relevant to the determination of reasonable royalty damages.  For example, the jury awarded $1.5 billion in damages for the '373 patent, ████████████████ ████████████████████████████████████████ which VLSI's attorneys and Mr. Chandler repeated multiple times.  (*Id.* [Closing] at 1622:4-8 ("Intel also paid $1.5 billion to Nvidia for a license to their patents"); ████████████████████████ ████████████████████████████████████████████████ ████████████████████████ If the Court allows these non-comparable agreements into

evidence over Intel's objections, VLSI should be required to introduce these settlements during its case-in-chief so that Intel has an opportunity to address them during its case-in-chief.

That same result should apply even if Intel offers evidence in its affirmative case directed to Intel license agreements that are, in fact, comparable to a hypothetical license for the asserted patents.  Because VLSI and its experts do not contend that any of Intel's settlement agreements are comparable—either technologically or economically—it would be improper to allow VLSI to introduce evidence or argument in its rebuttal case based on the pretext of supposedly responding to Intel's comparability analysis.  *See United States v. Sadler*, 488 F.2d 434, 435 (5th Cir. 1974); *Belden Inc.*, 805 F.3d at 1082 (noting proper rebuttal evidence must "explain, repel, counteract, or disprove" facts first offered in defendant's case-in-chief); *Eason*, 1993 WL 360736, at *7 (excluding rebuttal testimony where "the actual purpose of this testimony was to corroborate" plaintiff's evidence, not rebut defendant's evidence); *Tramonte v. Fibreboard Corp.*, 947 F.2d 762, 764-65 (5th Cir. 1991) (excluding rebuttal testimony of plaintiff's expert that did not address specific testimony provided by defendant's expert); *Little v. Ford Motor Co.*, 2017 WL 6994586, at *8 (N.D. Ga. Dec. 21, 2017) (holding plaintiff's expert's "opinions on design documents are not proper rebuttal testimony" where "[n]one of Defendant's experts offered opinions on these design documents").

## XIV.   MIL NO. 14:  EXCLUDE RELIANCE ON DR. SULLIVAN'S UNDISCLOSED AND UNDULY PREJUDICIAL PER-UNIT DAMAGES NUMBERS

Intel requests that the Court preclude VLSI and its damages expert Ryan Sullivan from presenting "per-unit" damages numbers at trial—███████████████████████████ ████████████████████ Intel has not had any opportunity to evaluate or respond to any per-unit numbers.

Specifically, a ***per-unit royalty*** (a payment made for each unit sold) is fundamentally different than a ***lump sum*** royalty (a single final payment amount for all units sold)—which means that the evidence necessary to respond to a damages opinion based on a per-unit rate can be very different than the evidence necessary to respond to a lump sum opinion.  *Lucent Techs., Inc.*, 580 F.3d at 1326 ("Significant differences exist between a running royalty license and a lump-sum license[,]"; "[c]ompared to a running royalty analysis, a lump-sum analysis involves different considerations.").[9]

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████.  As a result, Intel did not question Dr. Sullivan about per-unit numbers at his deposition and Intel's experts did not evaluate or respond to per-unit numbers in their reports.

Federal Rule of Civil Procedure 26 specifically precludes parties from offering new, previously undisclosed theories at trial.  Fed. R. Civ. P. 26 (a)(2); *Siemens Med. Sols. USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.,* 637 F.3d 1269, 1286-87 (Fed. Cir. 2011) (affirming expert "could not testify on matters not disclosed in his expert report or deposition").  This rule

---

[9] For example, where the plaintiff timely discloses a per-unit damages theory, the defendant can explain (1) the reasons the parties to the hypothetical negotiation may not have agreed to a per-unit structure (including because of the administrative difficulty and uncertainty of per-unit payments); (2) the royalty stacking issues presented by the per-unit number; and (3) evidence showing that even if a per-unit rate is appropriate, a lower unit rate should apply.

was designed for precisely this type of situation.  Intel has had no opportunity (or reason) to consider or respond to any per-unit damages number in this case—including (through either its own experts or Dr. Sullivan's deposition) to develop an evidentiary record explaining why the parties to the hypothetical negotiation would not have agreed to a per-unit structure, the royalty stacking problems presented by a per-unit rate, or to rebut the amount of any per-unit rate that Dr. Sullivan might offer.

To avoid the obvious and significant prejudice to Intel that would result if VLSI and/or Dr. Sullivan are permitted to present evidence or argument at trial directed to a ████████ ██████████████ per-unit damages number or theory, VLSI should be precluded from doing so.  *See Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*, 725 F.3d 1377, 1381-82 (Fed. Cir. 2013) (precluding expert testimony on undisclosed theories because "[t]he purpose of the expert disclosure rule is to," among other things, "arrange for expert testimony from other witnesses.").

## XV.   MIL NO. 15:  EXCLUDE REFERENCES TO INNOGRAPHY PATENT STRENGTH SCORES

VLSI should be precluded from introducing any evidence or argument regarding third-party CPA Global's "patent strength" scores generated by that company's "Innography" software suite (which purports to measure ████████████████████████████████ Any such evidence or argument concerning the Innography scores for the '187 and '522 patents should be excluded as undisclosed by any expert (for the '522 patent), irrelevant, unfairly prejudicial and confusing to the jury, and inadmissible hearsay.

████████████████████████████████████████████████

████████████████████.  As a result, Federal Rule of Civil Procedure 26 bars VLSI and its experts from attempting to disclose those scores or make any argument based on them for

the first time at trial.  Fed. R. Civ. P. 26 (a)(2); *Siemens*, 637 F.3d at 1286 (Federal Circuit affirming expert "could not testify on matters not disclosed in his expert report or deposition").

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████  But VLSI has identified no evidence that the Innography scores have the required nexus to any supposed merits of the claimed inventions.  *In re GPAC Inc.*, 57 F.3d 1573, 1580 (Fed. Cir. 1995) ("For objective evidence to be accorded substantial weight, its proponent must establish a nexus between the evidence and the merits of the claimed invention.").

In particular, there is ***no evidence*** that the Innography score-generating algorithm rests in any way on the actual substantive disclosure of the patent and/or the scope of its claims.  Instead, the record shows that the algorithm only considers criteria such as how many claims a patent has, how many references it cites, and, even more remarkably, how many times it has been asserted in litigation, without regard to the merit or outcome of such litigation (meaning the score would increase if a patent owner files a series of lawsuits, even if baseless).  (Ex. 12 at 68419.)  Such a fundamentally flawed metric—wholly divorced from any supposed merits of the specific patent claims at issue here—is not probative of the claims' alleged non-obviousness.  *See Personalized Media Commc'ns, L.L.C. v. Zynga, Inc.*, No. 2:12-cv-00068, D.I. 232, at 1 (E.D. Tex. 2013) (excluding third-party "Patent Quality Inventor Study" that purported to rank asserted patent inventor as "the top rated inventor in the wireless invention category" because "it lacks the

requisite nexus to the claims at issue in this case").

The Innography scores also are not probative of the patents' supposed validity because there is no correlation between an Innography patent score and whether the underlying patent is valid or invalid.  Indeed, the Federal Circuit, U.S. Patent Office, and district courts have found patents invalid—including patents that VLSI has asserted against Intel—even though the patents received Innography scores *equal to or higher* than those for the two asserted patents.  Below are just a few examples (Ex. 17):

| Patent | Innography Score | Found Invalid |
|---|---|---|
| 7,608,597 | 95 | *Idenix Pharms. LLC v. Gilead Sciences Inc.*, 941 F.3d 1149 (Fed. Cir. 2019) |
| 8,856,539 | 95 | *Univ. Secure Registry LLC v. Apple Inc.*, No. 1:17-cv-00585, D.I. 167 (D. Del. 2020) |
| 7,936,370 | 94 | *Sensormatic Elecs., LLC v. Wyze Labs, Inc.*, No. 1:19-cv-01543, D.I. 97 (D. Del. 2020) |
| 7,954,129 | 94 | *Sensormatic Elecs., LLC v. Wyze Labs, Inc.*, No. 1:19-cv-01543, D.I. 97 (D. Del. 2020) |
| 6,970,083 | 93 | *Canon Inc. v. Avigilon Fortress Corp.*, IPR2017-01833, Paper No. 31 (P.T.A.B. 2019) |
| 8,208,019 | 93 | *Sensormatic Elecs., LLC v. Wyze Labs, Inc.*, No. 1:19-cv-01543, D.I. 97 (D. Del. 2020) |
| 9,100,826 | 93 | *Universal Secure Registry LLC v. Apple Inc.*, No. 1:17-cv-00585, D.I. 167 (D. Del. 2020) |
| 7,268,588 (VLSI patent) | 92 | *Intel Corp. v. VLSI Tech. LLC*, IPR2018-01035, Paper No. 32 (P.T.A.B. 2020) |
| 7,709,303 (VLSI patent) | 92 | *Intel Corp. v. VLSI Tech. LLC*, IPR2018-01105, Paper No. 44 (P.T.A.B. 2019) |
| 8,577,813 | 92 | *Univ. Secure Registry LLC v. Apple Inc.*, No. 1:17-cv-00585, D.I. 167 (D. Del. 2020) |
| 8,610,772 | 92 | *Sensormatic Elecs., LLC v. Wyze Labs, Inc.*, No. 1:19-cv-01543, D.I. 97 (D. Del. Sept. 3, 2020) |
| 8,587,436 | 91 | *Neology, Inc. v. ITC*, 767 F. App'x 937 (Fed. Cir. 2019) |
| 7,896,742 | 91 | *Creative Kingdoms, LLC v. ITC*, 588 F. App'x 993 (Fed. Cir. 2014) |
| 9,072,752 | 91 | *Rimfrost AS. v. Aker Biomarine Antarctic AS.*, IPR2018-01730, Paper No. 35 (P.T.A.B. 2020) |
| 9,530,137 | 91 | *Univ. Secure Registry LLC v. Apple Inc.*, No. 1:17-cv-00585, D.I. 167 (D. Del. 2020) |

| Patent | Innography Score | Found Invalid |
|--------|------------------|---------------|
| 8,325,044 | 90 | *Neology, Inc. v. ITC*, 767 F. App'x 937 (Fed. Cir. 2019) |

These examples demonstrate that the Innography scores have no probative value with respect to a patent's validity—including with respect to the two asserted patents at issue here.[10]

The Innography scores also should also be excluded under FRE 403 because they are misleading and unduly prejudicial. ███████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████ But even CPA Global acknowledges that its algorithm is ████████████████████████████████████ and the term "patent strength score" itself presents a high risk of juror confusion by falsely suggesting objectivity and numerical precision for what is an inherently unquantifiable property—i.e., a patent's "strength."  Indeed, ██████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

█████████████████████████████████████████.

There also would be significant risk jurors would consider the Innography scores for impermissible purposes, rather than ███████████████████████████████████████

---

[10] To the extent VLSI belatedly tries to argue that its experts should be permitted to address Innography scores as relevant to damages issues, including as "background" or part of the patents' "stories" (as it did in the -254 case), any such new argument would be waived and barred under Rule 26.  The argument also should rejected as factually implausible given that the relevant scores were generated in 2020—i.e., ***two decades after*** the '187 and '522 patent applications were filed (in 2000)—and Innography itself was not even founded until years later in 2007.  The newly-generated scores thus cannot have anything to do with the invention story (or, as discussed above, with the value of the asserted patents).

██████████████████████████████████ The scores purport to reduce a patent's "strength" or value in the marketplace into a single (misleading) number. It would be easy and tempting for the jury to latch onto these simple inflated scores and improperly use them as a proxy for the patents' value when calculating damages—despite the jury's obligation to consider all relevant evidence on that issue, including the plentiful real-world evidence suggesting that the patents' *actual* value is quite low. *See Retractable Techs., Inc. v. Becton, Dickinson & Co.*, No. 2:07-cv-00250, D.I. 253, at 7 (E.D. Tex. 2009) (rejecting argument that "optimism" about an infringing product is probative of patent "value," noting that "any possible relevance in this regard is substantially outweighed by the danger of unfair prejudice and jury confusion").

*Third*, even if VLSI could overcome these many other preclusive hurdles, the Innography scores still should be excluded as inadmissible hearsay under FRE 801 and 802. The scores are themselves out-of-court statements made by a third party (CPA Global) offered for the truth of the matter asserted—namely, that the patents have high scores and are thus "strong." No hearsay exception applies, moreover—including the business record exception—because no trial witness is qualified to lay a foundation for the document. FRE 803(6); *Acceleration Bay LLC v. Activision Blizzard Inc.*, No. 1:16-cv-00453-RGA, 2018 WL 5045186, at *2-3 (D. Del. Oct. 17, 2018). ████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████

That VLSI proffers the Innography score for the '187 patent through Dr. Reinman does

---

11 ████████████████████████████████████████████████████
██████████████████ Intel also filed a *Daubert* motion seeking to exclude the opinions on that ground, D.I. 266, which the Court denied, Case No. 21-cv-00057, D.I. 507 at 2.

not make it admissible.  Although experts can rely on hearsay in certain circumstances, they cannot serve as simple conduits to introduce hearsay evidence.  *Robroy Indus.-Tex., LLC v. Thomas & Betts Corp.*, 2017 WL 1319553, at *9 (E.D. Tex. Apr. 10, 2017) ("Rule 703 'was not intended to abolish the hearsay rule and to allow a witness, under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion." (quoting *Factory Mut. Ins. Co. v. Alon USA L.P.*, 705 F.3d 518, 524 (5th Cir. 2013)).  Thus, "[a]n expert witness may not simply summarize the out-of-court statements of others as his testimony," as Dr. Reinman purports to do here.  *Id.* (quoting *United States v. Smith*, 869 F.2d 348, 355 (7th Cir. 1989)).

*Finally*, failure to exclude this evidence will result in a time-consuming, confusing, and unnecessary sideshow because, if VLSI is permitted to present the jury with the Innography scores for the asserted patents, then Intel should be able to present evidence showing that the Innography scores are unreliable.  In particular, Intel would need to place the Innography scores in context by presenting ███████████████████████████████████████████ ████████████████████████████████, as well as the many cases—enumerated above—in which the Federal Circuit, U.S. Patent Office, and district courts have invalidated patents with similarly high scores.  Further, in response to ███████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████ Intel would have to present evidence demonstrating why its own patents are more valuable than the asserted patents.

To be clear, ***none*** of the Innography evidence ought to be presented at trial because the evidence is inadmissible under the Federal Rules of Civil Procedure and Federal Rules of

Evidence.   But if references and testimony regarding the Innography scores for the asserted patents are permitted at trial (over Intel's objection), then, as a matter of fairness, **all** of the evidence discussed above should be permitted.   This context is vital for the jury's proper evaluation of the weight to be given to Innography scores if VLSI is permitted to present them. Because that would result in a needless "trial within a trial" that would distract the jury and the Court from the main issues in the case, this further counsels in favor of excluding the scores altogether.

* * *

VLSI never took fact discovery on the Innography scores and has no percipient witness who can testify as to how they were created.   Instead, it seeks to use its expert as conduits to channel evidence that has obvious substantive flaws—and that would confuse rather than assist the jury.   Whatever purported probative value the scores do have, if any, is therefore substantially outweighed by the danger of unfair prejudice, juror confusion, and wasting time. The scores should be excluded.

## XVI.   MIL NO. 16:  EXCLUDE REFERENCES TO DISCOVERY DISPUTES[12]

Intel requests that the Court preclude VLSI from presenting evidence and testimony to the jury referring to any discovery disputes.   Such evidence would be irrelevant, unfairly prejudicial to Intel, and likely to confuse the jury.   *See* FRE 401, 402, 403.

**First**, all discovery disputes in this litigation should be excluded for their lack of relevance to the trial issues.   *See* FRE 401, 402.   Because the discovery disputes have no bearing on any issues that the jury will be asked to decide (such as infringement, invalidity, and damages), they should be excluded.   *See, e.g.*, *Orchestrate HR, Inc. v. Trombetta*, 2017 WL

---

[12] This MIL was filed as Intel MIL No. 2 in the -254 litigation.  (D.I. 362 at 3.)  In the -254 case, the Court ruled, "Granted."  (C.A. No. 21-cv-00057, D.I. 507 at 5.)

273669, at *9 (N.D. Tex. 2017) (granting motion in limine to exclude discovery disputes because they "are not relevant to any issue to be decided by the jury"); *Van v. Language Line Servs., Inc.*, 2016 WL 3566980, at *4 (N.D. Cal. 2016) (granting motion in limine to exclude discovery disputes because "this evidence is irrelevant to Plaintiff's claims at trial").

**Second**, any purported relevance of discovery disputes in this litigation is far outweighed by the potential for undue prejudice to Intel and jury confusion. *See Orchestrate HR*, 2017 WL 273669, at *9 ("[A]ny relevance [discovery disputes] may have for impeachment purposes are substantially outweighed by the risk of unfair prejudice."); *Brighton Collectibles, Inc. v. Marc Chantal USA, Inc.*, 2009 WL 10674074, at *3 (S.D. Cal. 2009) (excluding evidence regarding the discovery process and finding that such evidence could paint one party "in a negative light," and that the "prejudice would clearly outweigh any probative value"). To prevent potential jury confusion and to ensure that trial time is focused on the issues that the jury will be asked to decide, any reference to discovery disputes should be excluded under FRE 403.

## XVII.  MIL NO. 17: EXCLUDE REFERENCES TO INTEL'S PURPORTED BAD ACTS AND CONDUCT OUTSIDE THIS LITIGATION[13]

VLSI has indicated that it intends to offer evidence at trial involving a host of allegations concerning Intel that have ***nothing*** to do with this ███████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████  VLSI should be

precluded from referring to or otherwise presenting evidence to the jury directed to these

---

[13] This MIL was filed as Intel MIL No. 3 in the -254 litigation. (D.I. 362 at 3.) In the -254 case, the Court ruled, "Granted – unless Intel opens the door." (C.A. No. 21-cv-00057, D.I. 507 at 5.)
[14] Intel also filed a *Daubert* motion to exclude such testimony. (*See* D.I. 267.) That motion was "Converted to motions-in-limine, which were Granted." (C.A. No. 21-cv-00057, D.I. 507 at 2.)

inadmissible allegations.

*First*, evidence and argument concerning these purported "bad acts" should be excluded as irrelevant under FRE 402.  None of these allegations bears on whether Intel infringes the asserted patents, whether the asserted claims are valid, or the amount of damages at stake.  Therefore, they should be excluded as irrelevant.  *See Mobile Telecomms. Techs.*, 2016 WL 8260584, at *2 (excluding references and argument regarding "unrelated litigations, investigations, or accusations involving the parties or their affiliates or principles"); *Ion, Inc.*, 2009 WL 10677596, at *3 ("The parties' actions in other cases are irrelevant to the present case.").



VLSI argues in its discovery responses ███████████████████████████████████ ██████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████  But this mischaracterizes  Intel's  argument.  ████████████████████████████████ ██████████████████████████████████████████████████████████████████████ █████████████████████████████████████████  VLSI has alternatively suggested that these allegations are relevant to willfulness.  But Intel's supposed conduct in other, unrelated contexts is irrelevant to whether Intel infringes the specific asserted claims here (willfully or otherwise).

████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████

███████   *See Intamin, Ltd. v. Magnetar Techs. Corp.*, 623 F. Supp. 2d 1055, 1072-73, 1078 n.7 (C.D. Cal. 2009) (rejecting attempt to counter unclean hands defense with defendant's conduct in

a different litigation, because "allegations of unrelated misconduct by [defendant] are not relevant to the issues before the Court"), *aff'd*, 404 F. App'x 496 (Fed. Cir. 2010).

**Second**, such evidence and argument also should be excluded under FRE 403 as misleading and highly prejudicial given that VLSI plainly intends to use the evidence and argument solely in an effort to cast Intel in an unfavorable light, and to "invite an emotion[al] response from the jury[.]" *DataTreasury Corp. v. Wells Fargo & Co.*, 2010 WL 11538713, at *14 (E.D. Tex. 2010) (excluding unfavorable references to defendant unrelated to disputed issues). Failure to exclude this evidence also will result in a time-consuming, confusing, and unnecessary sideshow, as Intel will need to spend trial time placing VLSI's allegations in context.

Thus, whatever probative value VLSI claims the evidence has, it is substantially outweighed by the likely resulting prejudice, confusion, and waste of resources. *Whitewater W. Indus., Ltd. v. Pac. Surf Designs, Inc.*, 2019 WL 2211897, at *4 (S.D. Cal. 2019) (excluding references to party's alleged "misrepresentations and intentional misconduct" because they would likely "have a significant improper influence on the jury's determination of the issues in this case," as well as "complicate the issues and confuse the jury"); *Radware, Ltd. v. F5 Networks, Inc.*, 2016 WL 590121, at *11 (N.D. Cal. 2016) ("[A]ny marginal relevance of Radware's alleged bad acts would be greatly outweighed by the associated unfair prejudice, waste of time, and confusion.").

## XVIII. MIL NO. 18: EXCLUDE REFERENCES TO EXPERT TESTIMONY IN OTHER CASES[15]

Before the jury, both parties should be precluded from offering any argument or evidence about, or otherwise making any reference to the deposition testimony or expert reports of experts

---

[15] This MIL was filed as Intel MIL No. 10 in the -254 litigation. (D.I. 362 at 3.) In the -254 case, the Court ruled, "Granted." (C.A. No. 21-cv-00057, D.I. 507 at 6.)

who are not offering opinions at the -255 trial.  For example, ███████████████████

████████████████████████████████████████████████████████████

███████████. The analyses, opinions, and testimony of such experts should be excluded as hearsay and under FRE 401, 402, and 403.

*First*, statements made by experts who will not be testifying at trial constitute hearsay under FRE 801 and should be excluded. *Fractus, S.A. v. AT&T Mobility LLC*, 2019 WL 4805910, at *2-3 (E.D. Tex. 2019) (excluding deposition testimony of non-testifying experts as hearsay).

*Second*, even if statements of experts who are not testifying in this trial were not hearsay, they should be excluded under FRE 401 and/or 402.  Expert opinions pertaining to the claims and defenses associated with patents ***not*** at issue in this trial have no probative value and/or would be cumulative of the evidence already being presented in this case.  ███████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████ Further, Dr. Farrens does not have any unique "vantage point" on these issues that would make his testimony non-cumulative.  *See Sanchez v. Swift Transp. Co. of Ariz., LLC*, 2017 WL 5643554 (W.D. Tex. 2017).

*Third*, these statements should be excluded under FRE 403.  There is a substantial risk of undue prejudice and juror confusion if statements made by experts opining about different patents and products than those at issue here are divorced from the context in which those opinions have been offered.  *See, e.g.*, *Fractus*, 2019 WL 4805910, at *3 (holding that deposition

testimony of non-testifying experts "should be excluded under FRE 403" because "[s]uch statements are likely to confuse the issues before the jury").

## XIX.   MIL NO. 19: EXCLUDE COMPARISONS OF BURDEN OF PROOF STANDARDS[16]

Intel respectfully requests that the Court exclude evidence, argument, suggestion, references, or elicitation of testimony characterizing the burden of proof or other legal standards with reference to areas of law other than Title 35 of the U.S. Code (including but not limited to child custody and mental commitment proceedings).   FRE 401-03.   There is no reason to depart from the properly articulated burdens of proof in this case, which the Court will provide to the jury.   For example, analogizing the legal standard for finding invalidity of a patent to the legal standard for termination of parental rights would be unduly prejudicial, confusing, and inflammatory, and also would mislead the jury.   It may also improperly influence the jury's decision-making process by inviting a comparison with their past experiences or preconceptions from those unrelated areas of law to this case.   *See Stragent, LLC v. Intel Corp.*, No. 6:11-cv-421-TBD-JDL, D.I. 274, at 2 (E.D. Tex. 2014) (excluding "[r]eferences to the 'clear and convincing' standard in the Texas Family Code").

---

[16] This MIL was filed as Intel MIL No. 14 in the -254 litigation.  (D.I. 362 at 3.)  In the -254 case, the Court ruled, "Denied."  (C.A. No. 21-cv-00057, D.I. 507 at 6.)

Dated: March 22, 2021

OF COUNSEL:

William F. Lee (*Pro Hac Vice*)
Louis W. Tompros (*Pro Hac Vice*)
Kate Saxton (*Pro Hac Vice*)
WILMER CUTLER PICKERING HALE
   & DORR LLP
60 State Street
Boston, Massachusetts 02109
Tel: (617) 526-6000
Email: william.lee@wilmerhale.com
Email: louis.tompros@wilmerhale.com
Email: kate.saxton@wilmerhale.com

Gregory H. Lantier (*Pro Hac Vice*)
Amanda L. Major (*Pro Hac Vice*)
WILMER CUTLER PICKERING HALE
   & DORR LLP
1875 Pennsylvania Avenue
Washington DC 20006
Tel: (202) 663-6000
Email: gregory.lantier@wilmerhale.com
Email: amanda.major@wilmerhale.com

Respectfully submitted,

/s/ *J. Stephen Ravel*

J. Stephen Ravel
Texas State Bar No. 16584975
Kelly Ransom
Texas State Bar No. 24109427
KELLY HART & HALLMAN LLP
303 Colorado, Suite 2000
Austin, Texas 78701
Tel: (512) 495-6429
Email: steve.ravel@kellyhart.com
Email: kelly.ransom@kellyhart.com

James E. Wren
Texas State Bar No. 22018200
1 Bear Place, Unit 97288
Waco, Texas 76798
Tel: (254) 710-7670
Email: james.wren@baylor.edu

*Attorneys for Intel Corporation*

## CERTIFICATE OF CONFERENCE

Defendant Intel Corporation's counsel conferred with opposing counsel regarding the foregoing Motion *in Limine*, and opposing counsel indicated that Plaintiff is opposed to the Motions *in Limine*. Accordingly, Intel's Motions *in Limine* and the relief requested herein are opposed.

/s/ *J. Stephen Ravel*
J. Stephen Ravel

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record are being served with a copy of the foregoing

document via electronic mail on March 22, 2021.

/s/ *J. Stephen Ravel*

J. Stephen Ravel