**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

|  |  |
|---|---|
| VLSI TECHNOLOGY LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>INTEL CORPORATION,<br><br>        Defendant. | **Lead Case:** 1:19-cv-977-ADA<br><br>**No. 6:19-cv-256-ADA**<br><br>(*Consolidated for pretrial purposes only with* 6:19-cv-254-ADA, 6:19-cv-255-ADA) |

## DEFENDANT INTEL CORPORATION'S RULE 51(C) OBJECTIONS TO THE COURT'S CLOSING JURY INSTRUCTIONS

Pursuant to Federal Rule of Civil Procedure 51(c), Defendant Intel Corporation ("Intel") respectfully objects to the Court's Final Jury Instructions.[1]

The following chart sets forth Intel's specific objections to and proposed alternative for each objected-to instruction.

| No. | Disputed Portion(s) | Intel's Objection(s) | Proposed Alternative |
|---|---|---|---|
| 3 | Likewise, the fact that Intel has raised arguments against the claims asserted is not evidence that Intel is entitled to a judgment.  The act of making defensive arguments, by itself, does not in any way tend to establish that such arguments have merit and is not evidence. | The instruction inappropriately comments on the evidence and addresses a theory that neither party has presented. Intel has not presented any evidence or argument that the fact that it made defensive arguments is evidence of those arguments' merit. By suggesting that Intel did so, the instruction unfairly prejudices Intel. *See, e.g., Quercia v. United States*, 289 U.S. 466, 470 (1933) (limiting commentary on the evidence in instructions to jury); *United States v. Buchanan*, 585 F.2d 100, 102 (5th Cir. 1978) (comment on the evidence by trial judge is error if prejudicial). | [This portion of the instruction should not be given.] |
| 4 | You have heard certain arguments and evidence regarding Intel's patents. The fact that Intel has patents does not mean that | The instruction inappropriately comments on the evidence and addresses a theory that neither party has | [This instruction should not be given.] |

---

[1] On December 6, 2021, Intel provided its written objections to Plaintiff VLSI Technology LLC's Proposed Jury Charge.  *See* Dkt. No. 587.  On November 7, 2022, Intel provided its objections to the Court's Preliminary Jury Charge.  *See* Dkt. No. 654.  On November 14, 2022, the Court held an off-the-record charge conference to address its final jury instructions.  At that conference, Intel renewed its written objections.  Intel expressly reasserts and does not waive any of its objections to the Court's preliminary or final jury instructions.

| No. | Disputed Portion(s) | Intel's Objection(s) | Proposed Alternative |
|---|---|---|---|
| | it has a right to use VLSI's patented technology and has no impact on whether Intel has or has not infringed the asserted patent. | presented. Intel has not presented any evidence or argument that its patents gave it "a right to use VLSI's patented technology." By suggesting that Intel did so, the instruction unfairly prejudices Intel. In addition, by singling out Intel's patents alone for a separate limiting instruction during the jury charge, the instruction unfairly prejudices Intel by wrongly implying that Intel has been making some form of improper argument. *See, e.g.*, *Quercia v. United States*, 289 U.S. 466, 470 (1933) (limiting commentary on the evidence in instructions to jury); *United States v. Buchanan*, 585 F.2d 100, 102 (5th Cir. 1978) (comment on the evidence by trial judge is error if prejudicial). | |
| 13 | VLSI has the burden of proving patent infringement and damages for any alleged patent infringement by a preponderance of the evidence. | The instruction confusingly suggests that the analysis of patent infringement and damages are a single combined inquiry. | VLSI has the burden of proving patent infringement by a preponderance of the evidence. VLSI further has the burden of proving damages for any alleged patent infringement by a preponderance of the evidence |
| 14 | The burden of proof for invalidity applicable to Intel in this case is known as clear and convincing evidence. Intel has the | The instruction confusingly suggests that the analysis of validity and whether a product or publication is prior art are | The burden of proof for invalidity applicable to Intel in this case is known as clear and convincing evidence. Intel has the |

| No. | Disputed Portion(s) | Intel's Objection(s) | Proposed Alternative |
|---|---|---|---|
| | burden of proving patent invalidity and that an alleged product or publication is prior art by clear and convincing evidence. | a single combined inquiry. Additionally, the instruction is confusing and inapplicable where, as here, there is no dispute that the only asserted prior art reference is a patent application, not a product or publication. | burden of proving patent invalidity by clear and convincing evidence. Intel also has the burden of proving that an alleged product or publication is prior art by clear and convincing evidence |
| 16 | You are to use the plain and ordinary meaning of the words of the patent claims as understood by a person of ordinary skill in the art, which is to say, in the field of technology of the patent at the time of the invention. | The instruction inappropriately comments on the evidence by referring to the alleged invention as "the invention" without including the word "alleged." *See, e.g., Quercia v. United States*, 289 U.S. 466, 470 (1933) (limiting commentary on the evidence in instructions to jury); *United States v. Buchanan*, 585 F.2d 100, 102 (5th Cir. 1978) (comment on the evidence by trial judge is error if prejudicial). | You are to use the plain and ordinary meaning of the words of the patent claims as understood by a person of ordinary skill in the art, which is to say, in the field of technology of the patent at the time of the alleged invention. |
| 17* | "AN INDICATION OF A/THE SPECIFIED ORDER" TERM<br><br>[This entirety of the instruction proposed by Intel was not adopted.] | Intel's instruction reflects the proper construction of the "an indication of a/the specified order" term, verbatim to the construction that Intel proposed at the claim construction phase. Defendant Intel Corporation's Opening Claim Construction Brief, *VLSI Tech. v. Intel Corp.*, 19-cv-00977 (W.D. Tex. Oct. 30, 2019) (D.I. 82); Defendant Intel Corporation's Reply Claim Construction Brief, | The claim term "an indication of a/the specified order" means "a second, different indication that indicates a/the specified order. |

| No. | Disputed Portion(s) | Intel's Objection(s) | Proposed Alternative |
|---|---|---|---|
| | | *VLSI Tech. v. Intel Corp.*, 19-cv-00977 (W.D. Tex. Dec. 2, 2019) (D.I. 89); *Iridescent Networks, Inc. v. AT&T Mobility, LLC*, 933 F.3d 1345, 1352–53 (Fed. Cir. 2019) ("Any explanation, elaboration, or qualification presented by the inventor during patent examination is relevant, for the role of claim construction is to 'capture the scope of the actual invention' that is disclosed, described, and patented."); *id.* (prosecution statements "inform the claim construction analysis by demonstrating how [the applicant] understood the scope of the disputed term"). | |
| 17 | "COMPRISING" CLAIMS<br><br>[Entire instruction] | The instruction is prejudicial, redundant, misleading, and likely to confuse the jury because there is no infringement or invalidity dispute that concerns the claim term "comprising."  The instruction also does not provide a balanced explanation of how infringement is to be assessed for "comprising" claims. | [This instruction should not be given.] |
| 18 | **Structure**: "a memory circuit, device or system, or equivalents thereof" . . .<br>**Structure**: "a processor, or equivalents thereof" . . . | The "equivalents thereof" language of the instruction improperly permits the jury to find that the structure of one or more of the means-plus-function limitations of | **Structure**: "a memory circuit, device or system" . . .<br>**Structure**: "a processor" . . .<br>**Structure**: "a memory controller, controller |

| No. | Disputed Portion(s) | Intel's Objection(s) | Proposed Alternative |
|---|---|---|---|
| | **Structure**: "a memory controller, controller for other shared resources, or equivalents thereof" | claim 9 of the '983 patent may be met by equivalent structures. The Court has already held that Intel is entitled to judgment as a matter of law of no equivalents, because of VLSI's failure to introduce any evidence of equivalents in its case in chief. *See* 11/09 Trial Tr. (unedited) at 719:23-25 ("[Y]ou should assume I'm going to direct a verdict on the Doctrine of Equivalents issue"). "Structural equivalents and the doctrine of equivalents are 'closely related.'" *Welker Bearing Co. v. PHD, Inc.*, 550 F.3d 1090, 1099 (Fed. Cir. 2008); *see also Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1321 (Fed. Cir. 1999) ("[T]he doctrine of equivalents and structural equivalents under § 112, ¶ 6, though different in purpose and administration, can at times render the same result.") Because VLSI presented no evidence concerning equivalents (structural or otherwise) in its case-in-chief, and because the Court has granted JMOL of no infringement by equivalents in Intel's favor, an instruction on equivalents would be improper. | for other shared resources" |

| No. | Disputed Portion(s) | Intel's Objection(s) | Proposed Alternative |
|---|---|---|---|
| 20 | A party can directly infringe a patent without knowing of the patent or without knowing that what the party is doing is patent infringement. There is no intent element to direct infringement. Evidence of independent development is not relevant to an infringement determination. Copying is not a required element of infringement. Even if the party independently creates the accused product, it can still infringe. | The instruction deviates from the model and is repetitive. As a result, it has the effect of improperly commenting on the evidence by placing undue argumentative weight on the instruction. *See, e.g.*, *Quercia v. United States*, 289 U.S. 466, 470 (1933) (limiting commentary on the evidence in instructions to jury); *United States v. Buchanan*, 585 F.2d 100, 102 (5th Cir. 1978) (comment on the evidence by trial judge is error if prejudicial). | A party can directly infringe a patent without knowing of the patent or without knowing that what the party is doing is patent infringement. |
| 22 | LEVEL OF ORDINARY SKILL<br><br>[Entire instruction] | The level of ordinary skill in the art is a disputed question of fact for the jury, not the proper subject of an instruction by the Court. *See, e.g.*, *Acorda Therapeutics, Inc. v. Roxane Lab'ys, Inc.*, 903 F.3d 1310, 1328 (Fed. Cir. 2018) ("questions of fact" include "level of ordinary skill in the art). The Court's commentary on a question of fact is improper. *See, e.g.*, *Quercia v. United States*, 289 U.S. 466, 470 (1933) (limiting commentary on the evidence in instructions to jury); *United States v. Buchanan*, 585 F.2d 100, 102 (5th Cir. 1978) (comment on the evidence | [This instruction should not be given.] |

| No. | Disputed Portion(s) | Intel's Objection(s) | Proposed Alternative |
|---|---|---|---|
| | | by trial judge is error if prejudicial). | |
| 26[a] | The prior art must clearly and unequivocally disclose the elements as arranged in the claim, without needing to pick, choose, or combine various embodiments from the prior art. | The instruction is prejudicial, redundant, misleading, and likely to confuse the jury because it is duplicative of language referring to limitations "arranged as in the claim" that is already in this instruction.  In addition, the language suggesting that it is improper to "pick, choose, or combine various embodiments" is contrary to law.  The "pick, choose, or combine" language is nowhere in applicable case law or model instructions, and anticipation often requires "pick[ing]" or "choos[ing]" to identify embodiments "arranged as" in the claim.  Nor is there any heightened requirement of "unequivocal" disclosure. Rather, all that is required is that the prior art reference disclose "all of the limitations arranged or combined in the same way as recited in the claim." *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1371 (Fed. Cir. 2008) (emphasis added). | [This portion of the instruction should not be given.] |
| 26[b] | A prior art patent application, like the Khare application, is presumed to be enabled.  VLSI | The instruction improperly introduces the issue of enablement of Khare into the case, where | [This portion of the instruction should not be given.] |

| No. | Disputed Portion(s) | Intel's Objection(s) | Proposed Alternative |
|---|---|---|---|
| | argues that the Khare patent application is not enabled because its subject matter cannot be produced without undue experimentation. The burden is on VLSI, not Intel, to show that that undue experimentation is required. Factors to be considered in determining whether a disclosure would require undue experimentation include: (1) the quantity of experimentation necessary; (2) the amount of direction or guidance disclosed in the printed publication or patent; (3) the presence or absence of working examples in the printed publication or patent; (4) the nature of the invention; (5) the state of the prior art; (6) the relative skill of those in the art; (7) the predictability of the art; and (8) the breadth of the claims. If you conclude that VLSI has met its burden to show undue experimentation, then the Khare patent application is not prior art and cannot be used to invalidate the claims of the '983 patent. However, if you find that VLSI has not met its burden to overcome the presumption, then you must consider the Khare patent application as prior art. | VLSI failed to meet its burden to show that the Khare was not enabled. *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1355 (Fed. Cir. 2003) ("A prior art patent application is presumed to be enabled. We hold that an accused infringer should be similarly entitled to have the district court presume the enablement of unclaimed (and claimed) material in a prior art patent defendant asserts against a plaintiff. Thus, a court cannot ignore an asserted prior art patent in evaluating a defense of invalidity for anticipation, just because the accused infringer has not proven it enabled.") Where, as here, VLSI failed to introduce evidence to overcome the presumption of enablement, an instruction on enablement is improper. | |

| No. | Disputed Portion(s) | Intel's Objection(s) | Proposed Alternative |
|---|---|---|---|
| 27*<br>[original no. 31] | PATENT INVALIDITY—OBVIOUSNESS<br><br>[This entirety of the instruction proposed by Intel was not adopted.] | Failure to give this instruction limits the jury's consideration of the full record.  The jury is entitled to consider all of the evidentiary record as a whole, and is not limited to the specific theories advanced by the parties. *Cf. Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1378 (Fed. Cir. 2005) (jury not bound to adopt theory advanced by either party); *Unisplay, S.A. v. Am. Elec. Sign Co.*, 69 F.3d 512, 519 (Fed. Cir. 1995) (jury may consider "record as a whole").<br><br>The Court's determination that Intel had failed to advance an obviousness case was error.  *See* Dkt. 633, at 7:7-10:9 (argument explaining that Intel had preserved single-reference obviousness defense) | Intel contends in this case that the asserted claims of the VLSI Patent are invalid as being obvious.  Even though a claimed invention may not have been identically disclosed or described in a single prior art reference before it was made by an inventor, the invention may have been obvious to a person of ordinary skill in the field of technology of the patent at the time the invention was made.  A patent claim with several elements is not proved obvious merely by demonstrating that each of the elements was known.  Most, if not all, inventions rely on the building blocks of prior art.<br>In determining whether a claim is invalid because of obviousness, you must consider the scope and content of the prior art, the differences between the prior art and the claimed invention, and the level of ordinary skill in the art.  In determining the level of ordinary skill in the art, you should consider the person of ordinary skill as one who is presumed to be aware of all the pertinent prior art.  The skill of the actual inventor is irrelevant because inventors may possess something that |

9

| No. | Disputed Portion(s) | Intel's Objection(s) | Proposed Alternative |
|-----|---------------------|---------------------|---------------------|
|  |  |  | distinguishes them from workers of ordinary skill in the art.  Do not use hindsight; consider only what was known at the time of the alleged invention. |
|  |  |  | In considering whether a claimed invention is obvious, you should consider whether as of the priority date of the asserted patent there was a reason that would have prompted a person of ordinary skill in the field to combine the known elements in a way that the claimed invention does taking into account such facts as: (1) whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s); (2) whether the claimed invention provides an obvious solution to a known problem in the relevant field; (3) whether the prior art teaches or suggests the desirability of combining elements claimed in the invention; (4) whether the prior art teaches away from combining elements in the claimed invention; (5) whether it would have been obvious to try the combinations of elements, such as when there is a design incentive or market pressure to solve a |

| No. | Disputed Portion(s) | Intel's Objection(s) | Proposed Alternative |
|---|---|---|---|
| | | | problem and there are a finite number of identified, predictable solutions.  To find it rendered the claimed invention obvious, you must find that the prior art provided a reasonable expectation of success. In determining whether the claimed invention was obvious, consider each claim separately and consider only what was known at the time of the invention.  In determining whether the claimed invention was obvious, do not use hindsight. In other words, you should not consider what a person of ordinary skill in the art would know now. In making these assessments, you must also take into account any objective evidence, sometimes called secondary considerations, that may have existed at the time of the invention and afterwards that shed light on non-obviousness. These include: (1) Whether the claimed invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market-pressure advertising or similar activities); |

| No. | Disputed Portion(s) | Intel's Objection(s) | Proposed Alternative |
|---|---|---|---|
| | | | (2)  Whether the claimed invention satisfied a long-felt need; (3) Whether others had tried and failed to make the claimed invention; (4) Whether others invented the claimed invention at roughly the same time; (5) Whether others copied the claimed invention; (6) Whether the claimed invention achieved unexpected results; (7) Whether others in the field praised the claimed invention; (8)  Whether persons having ordinary skill in the art of the claimed invention expressed surprise or disbelief regarding the claimed invention; (9) Whether others actively sought or obtained rights to the patent from the patent owner; and (10) Whether the named inventor proceeded contrary to accepted wisdom in the field. These objective indicia can show that the invention is not obvious. While these objective indicia must be taken into account, you must consider all of the evidence related to obviousness before you reach a decision, and the |

| No. | Disputed Portion(s) | Intel's Objection(s) | Proposed Alternative |
|-----|---------------------|----------------------|----------------------|
| | | | absence of any factor is neutral. For these objective indicia to be accorded substantial weight, VLSI must establish a nexus between the evidence and the merits patented invention as recited in the claims. VLSI therefore bears the burden of establishing a nexus between the patented invention and any evidence of commercial success, industry praise, or other secondary considerations. Commercial success and industry praise are only relevant to obviousness considerations if there is proof that the success or praise was a direct result unique characteristics of the patented invention recited in the claims. If only a component of a commercially successful machine or process, holder must show a nexus between the patented feature and the commercial success or industry praise. If the commercial success or industry praise is due to an unclaimed feature of the device, the commercial success is irrelevant. Similarly, if the feature that creates the commercial success was known in the prior art, the success is not relevant to invalidity. |

| No. | Disputed Portion(s) | Intel's Objection(s) | Proposed Alternative |
|---|---|---|---|
| | | | You must apply the same meaning to the claim terms for both your determination of infringement and validity. In other words, a claim cannot have one meaning to determine infringement, and another meaning to determine validity. In determining whether the claimed invention was obvious, consider each claim separately. |
| 27 | [A portion of this instruction proposed by Intel was not adopted.] | By omitting the that court does not agree that the royalty VLSI seeks is "reasonable," the instruction improperly comments on the evidence.  Without Intel's proposed additional clarification, the instruction is likely to confuse the jury by implying that the royalty amount VLSI seeks is reasonable. *See, e.g.*, *Quercia v. United States*, 289 U.S. 466, 470 (1933) (limiting commentary on the evidence in instructions to jury); *United States v. Buchanan*, 585 F.2d 100, 102 (5th Cir. 1978) (comment on the evidence by trial judge is error if prejudicial). | Please also note that when I say that VLSI is seeking damages that it contends to be a reasonable royalty, that does not mean I agree that VLSI is seeking a reasonable amount. If you reach the issue of damages, it will be up to you the jury to determine what a reasonable amount would be. |
| 28[a] | Unlike in a real world negotiation, all parties to the hypothetical negotiation are presumed to believe that the patent | The instruction is contrary to law and improperly comments on the evidence by instructing the jury that the hypothetical | [This portion of the instruction should not be given.] |

| No. | Disputed Portion(s) | Intel's Objection(s) | Proposed Alternative |
|---|---|---|---|
|  | is valid and infringed and that both parties were willing to enter into an agreement | negotiation is "unlike . . . a real-world negotiation."  It is well-established that comparable real-world licensing negotiations and evidence are highly relevant to determining damages. *See Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1228 (Fed. Cir. 2014) (finding real-world licensing evidence relevant to damages and holding that "[m]aking real world, relevant licenses inadmissible on the grounds DLink urges would often make it impossible for a patentee to resort to license-based evidence"); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1313 (Fed. Cir. 2011) (rejecting the 25% rule of thumb for determining damages because, among other reasons, it did not reflect the value of the patent in a "real-world negotiation"). Intel's proposed alternative is verbatim from Federal Circuit Bar Association Model Jury Instructions § B.5.6 (2020). |  |
| 28[b] | The reasonable royalty award must be based on the incremental value that the patented invention adds to the end product. When the infringing products have both patented and unpatented | The instruction is contrary to law by stating that damages must be based on "the incremental value" of the alleged invention, when damages may be determined based on other evidence, including | [This portion of the instruction should not be given.] |

| No. | Disputed Portion(s) | Intel's Objection(s) | Proposed Alternative |
|---|---|---|---|
| | features, measuring this value requires a determination of the value added by the patented features. An appropriate combination of royalty base and royalty rate must reflect the value attributable to the infringing features, if any, of the Intel products, and no more. | comparable agreements involving comparable technology. *E.g., Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009) ("We review the damages award within the *Georgia-Pacific* framework. . . . The Second *Georgia-Pacific* factor is the rates paid by the licensee for the use of other patents comparable to the patents in suit." (internal citation and quotation omitted)). The instruction also improperly comments on the evidence and ignores Intel's damages theory of the case predicated on a lump sum royalty, rather than a "combination of royalty base and royalty rate." *See also* Federal Circuit Bar Association Model Jury Instructions § B.5.7 (2020). | |
| 28[c] | [A portion of this instruction proposed by Intel was not adopted.] | The instruction improperly omits a correct statement of the law and failure to include this portion of this instruction is misleading and likely to confuse the jury. *See Radio Steel & Mfg. Co. v. MTD Prods., Inc.*, 788 F.2d 1554, 1557 (Fed. Cir. 1986) ("The determination of a reasonable royalty" should be "based not on the infringer's profit, but on the royalty to which a | A patent plaintiff is not allowed to recover the profits the defendant made on the accused products. And VLSI here has not sought to recover any lost profits of its own. The profitability of Intel's products is not relevant to the question you are asked to decide here. |

| No. | Disputed Portion(s) | Intel's Objection(s) | Proposed Alternative |
|-----|--------------------|--------------------|--------------------|
| | | willing licensor and a willing licensee would have agreed at the time the infringement began."); *see also Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 770 (Fed. Cir. 2014) (rejecting a reasonable royalty calculation based on infringer's profits); *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 673 (Fed. Cir. 1988) ("[T]he infringer's profits are not, as such, a measure of the patent owner's damages."); *Contour IP Holding, LLC v. GoPro, Inc.*, 2020 WL 5106845, at *14 (N.D. Cal. Aug. 30, 2020) (holding it was "unreasonable and unreliable" to "conclude that 100% of profits associated with the infringing technology would go to [the patentee]"); *Looksmart Grp., Inc. v. Microsoft Corp.*, 2019 WL 4009263, at *2-4 (N.D. Cal. Aug. 5, 2019) (rejecting reasonable royalty analysis that "simply assume[d] that the patentee would recoup the entire value" of the alleged patented benefit as "insupportable" "as a matter of both rudimentary economics and common sense" and because it "would flunk the *VirnetX* test"); | |

| No. | Disputed Portion(s) | Intel's Objection(s) | Proposed Alternative |
|-----|---------------------|----------------------|----------------------|
| | | Matthews Annotated Patent Digest § 30:2—Disgorgement of Infringer's Profits Is Not the Measure of Damages (2021) (collecting cases). | |
| 29 | Any amount of damages must be based on the value attributable to the patented invention, as distinct from unpatented features of the accused products or other factors such as marketing or advertising. | The instruction is contrary to law, because it does not inform the jury that a party's size or market position is not an appropriate consideration in determining the appropriate amount of damages. *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 3120 (Fed. Cir. 2011) (evidence of company's revenue from sales of accused product "cannot help but skew the damages horizon for the jury, regardless of the contribution of the patented component to this revenue"); *Oil-Dri Corp. of Am. v. Nestle Purina Petcare Co.*, 2019 WL 5206273, at *2 (N.D. Ill. Mar. 13, 2019) (precluding evidence of defendant's "size and wealth" because portraying defendant as a "multi-billion dollar multinational company" would "inflame the jury"); Federal Circuit Bar Association Model Jury Instructions § B.5.12. | Any amount of damages must be based on the value attributable to the patented invention, as distinct from unpatented features of the accused products or other factors such as marketing or advertising, or either party's size or market position. |
| 30[a] | REASONABLE ROYALTY— RELEVANT FACTORS

[Entire instruction] | The instruction deviates from the much simpler and understandable standard instruction, and includes factors that are | In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time |

| No. | Disputed Portion(s) | Intel's Objection(s) | Proposed Alternative |
|---|---|---|---|
| | | not relevant and/or misleading on the factual record. *See Energy Trasp. Group, Inc. v. William Demant Holding A/S/*, 697 F.3d 1342, 1357 (Fed. Cir. 2012); *Ericsson, Inc. v. D-Link Sys.*, 773 F.3d 1201, 1231 (Fed. Cir. 2014); Federal Circuit Bar Association Model Jury Instructions § B.5.8 (2020). | the alleged infringement began. Some of the kinds of factors that you may consider in making your determination are: (1) The value that the claimed invention contributes to the Accused Products. (2) The value that factors other than the claimed invention contribute to the Accused Products. (3) Comparable license agreements or other transactions, such as those covering the use of the claimed invention or similar technology.<br><br>No one factor is dispositive, and you can and should consider the evidence that has been presented to you in this case on each of these factors.  You may also consider any other factors which in your mind would have increased or decreased the royalty the alleged infringer would have been willing to pay and the patent owner would have been willing to accept, acting as normally prudent business people. |
| 30[b] | Any reasonable royalty you award must compensate for the use made of the invention by the accused infringer. | The instruction is misleading and likely to confuse the jury by stating that damages must be based on "the use made of the invention by the accused infringer," when | [This portion of the instruction should not be given.] |

19

| No. | Disputed Portion(s) | Intel's Objection(s) | Proposed Alternative |
|-----|---------------------|----------------------|----------------------|
|     |                     | damages may be determined based on other evidence, including comparable agreements involving comparable technology.  *E.g.*, *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009) ("We review the damages award within the *Georgia-Pacific* framework."); *see also Radio Steel & Mfg. Co. v. MTD Prods., Inc.*, 788 F.2d 1554, 1557 (Fed. Cir. 1986) ("The determination of a reasonable royalty" should be "based not on the infringer's profit, but on the royalty to which a willing licensor and a willing licensee would have agreed at the time the infringement began."); *see also Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 770 (Fed. Cir. 2014) (rejecting a reasonable royalty calculation based on infringer's profits); *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 673 (Fed. Cir. 1988) ("[T]he infringer's profits are not, as such, a measure of the patent owner's damages."); *Contour IP Holding, LLC v. GoPro, Inc.*, 2020 WL 5106845, at *14 (N.D. Cal. Aug. 30, 2020) (holding it was "unreasonable and unreliable" to "conclude |  |

| No. | Disputed Portion(s) | Intel's Objection(s) | Proposed Alternative |
|---|---|---|---|
|  |  | that 100% of profits associated with the infringing technology would go to [the patentee]"); *Looksmart Grp., Inc. v. Microsoft Corp.*, 2019 WL 4009263, at *2-4 (N.D. Cal. Aug. 5, 2019) (rejecting reasonable royalty analysis that "simply assume[d] that the patentee would recoup the entire value" of the alleged patented benefit as "insupportable" "as a matter of both rudimentary economics and common sense" and because it "would flunk the *VirnetX* test"); Matthews Annotated Patent Digest § 30:2— Disgorgement of Infringer's Profits Is Not the Measure of Damages (2021) (collecting cases). |  |
| 31 | The existence of any comparable damage agreement or other transactions may inform your decision as to the proper amount and form of the reasonable royalty award. Whether a particular patent agreement or other transaction is comparable to the hypothetical license depends on many factors, such as whether they involve comparable technologies, comparable economic circumstances, comparable structures and | The instruction misstates the law governing comparable agreements and litigation settlements, and deviates from the more complete standard instruction addressing comparable agreements and litigation agreements. *See, e.g., ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860 (Fed. Cir. 2010) (licenses must be related to patent at issue to be relevant to reasonable royalty); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. | While the parties to the hypothetical negotiation assume a patent is valid and infringed, an agreement may be comparable even if there has been no determination or assumption by the parties to the agreement that the patent is valid and infringed or used. The question is whether the agreement is sufficiently comparable that it provides a reasonable indication of how the parties to the hypothetical negotiation would have |

| No. | Disputed Portion(s) | Intel's Objection(s) | Proposed Alternative |
|---|---|---|---|
| | comparable scope.  An agreement may be comparable even if the patented technology and economic circumstances of the agreement are not identical to the hypothetical negotiation. The question is whether the agreement is sufficiently comparable. However, if you choose to rely upon evidence from any license agreements, you must account for any differences between those licenses and the hypothetically negotiated license between the patent owner and the accused infringed, including in terms of the technologies and economic circumstances of the contracting parties when you make your reasonable royalty determination. While the parties to the hypothetical negotiation assume a patent is valid and infringed, an agreement may be comparable even if there has been no determination or assumption by the parties to the agreement that the patent is valid and infringed.  However, this is one of the differences you may consider in whether a license agreement is comparable to the hypothetically negotiated license. | 2009); *Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360 (Fed. Cir. 2017); *see also* Federal Circuit Bar Association Model Jury Instructions § B.5.9 (2020); *Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys.*, LLC, 927 F.3d 1292, 1299 (Fed. Cir. 2019) ("[P]rior licenses or settlements need to be 'sufficiently comparable' for evidentiary purposes and any differences in circumstances must be soundly accounted for."); *LaserDynamics, Inc. v. Quanta Comp., Inc.*, 694 F.3d 51, 80 (Fed. Cir. 2012) (district court "erroneously permitted continued reliance on [patent license] where comparability between it and a hypothetical license to the [Asserted] Patent was absent"); *Flexuspine, Inc. v. Globus Med., Inc.*, 2016 WL 9282314, at *3 (E.D. Tex. Aug. 5, 2016); *Retractable Techs. v. Becton, Dickinson & Co.*, 2009 WL 8725107, at *2-3 (E.D. Tex. Oct. 8, 2009); Intel's Motion *in Limine* No. 22 to Preclude Evidence Regarding Non-Comparable Agreements. | negotiated a license to the asserted patent.  To the extent that an agreement is not comparable to the hypothetical license to the Asserted Patent, it should not be used to determine the amount or form of any reasonable royalty award. The hypothetical license is deemed to be a voluntary agreement. When determining if a license agreement is comparable to the hypothetical license, you may consider whether the license agreement is between parties who were involved in a lawsuit and whether any payment terms set forth in the license agreement were influenced by a desire to avoid the costs and burden of further litigation, and thus do not reflect the value that the parties attributed to the patented invention. |

| No. | Disputed Portion(s) | Intel's Objection(s) | Proposed Alternative |
|---|---|---|---|
| | The hypothetical license is deemed to be a voluntary agreement. When determining if a license agreement is comparable to the hypothetical license, you may consider whether the license agreement is or was between parties who were involved in a lawsuit. | | |
| 32 | Running royalty awards may also be calculated as a lump sum over a certain period of time as VLSI has done here. | This instruction improperly comments on the evidence by stating (incorrectly) that VLSI has calculated a lump sum royalty.  The instruction also improperly deviates from the model instructions without justification by suggesting that a per-unit royalty is the same as a lump sum. *See ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860 (Fed. Cir. 2010); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009); *Quercia v. United States*, 289 U.S. 466, 470 (1933) (limiting commentary on the evidence in instructions to jury); *United States v. Buchanan*, 585 F.2d 100, 102 (5th Cir. 1978) (comment on the evidence by trial judge is error if prejudicial); *see also* Federal Circuit Bar Association Model Jury Instructions § B.5.7 (2020). | [This portion of the instruction should not be given.] |

In addition, Intel respectfully objects to the extent that the instructions as read aloud to the jury deviate from the written instructions.  Finally, Intel reasserts its written objections to the jury verdict form (Dkt. No. 651-09), to the extent that the final jury verdict form deviates from Intel's proposed jury verdict form (Dkt. No. 651-10).

Dated: November 15, 2022

Respectfully submitted,

OF COUNSEL:
William F. Lee (*Pro Hac Vice*)
Louis W. Tompros (*Pro Hac Vice*)
Kate Saxton (*Pro Hac Vice*)
WILMER CUTLER PICKERING HALE
  & DORR LLP
60 State Street
Boston, Massachusetts 02109
Tel: (617) 526-6000
Email: william.lee@wilmerhale.com
Email: louis.tompros@wilmerhale.com
Email: kate.saxton@wilmerhale.com

Gregory H. Lantier (*Pro Hac Vice*)
Amanda L. Major (*Pro Hac Vice*)
WILMER CUTLER PICKERING HALE
  & DORR LLP
1875 Pennsylvania Avenue
Washington DC 20006
Tel: (202) 663-6000
Email: gregory.lantier@wilmerhale.com
Email: amanda.major@wilmerhale.com

Harry Lee Gillam, Jr.
Gilam & Smith,LLP
303 South Washington Avenue
Marshall, TX 75670
Tel: (903) 934-8450
Email: gil@gillamsmithlaw.com

/s/ *J. Stephen Ravel*
J. Stephen Ravel
Texas State Bar No. 16584975
Kelly Ransom
Texas State Bar No. 24109427
KELLY HART & HALLMAN LLP
303 Colorado, Suite 2000
Austin, Texas 78701
Tel: (512) 495-6429
Email: steve.ravel@kellyhart.com
Email: kelly.ransom@kellyhart.com

James E. Wren
Texas State Bar No. 22018200
1 Bear Place, Unit 97288
Waco, Texas 76798
Tel: (254) 710-7670
Email: james.wren@baylor.edu

*Attorneys for Intel Corporation*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record are being served with a copy of the foregoing document via the Court's CM/ECF system per Local Civil Rule CV-5(a)(3) on November 15, 2022.

*/s/ J. Stephen Ravel*
J. Stephen Ravel
