# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | |
|---|---|
| VLSI TECHNOLOGY LLC,<br><br>　　　　Plaintiff,<br><br><br>　　v.<br><br><br>INTEL CORPORATION,<br><br>　　　　Defendant. | **Lead Case:** 1:19-cv-977-ADA<br><br>**No. 6:19-cv-256-ADA**<br><br>(*Consolidated for pretrial purposes only with* 6:19-cv-254-ADA, 6:19-cv-255-ADA)<br><br>**CONTAINS CONFIDENTIAL INFORMATION** |

## JURY CHARGE

11/15/22
10:25 a.m.

**TABLE OF CONTENTS**

**Page**

JURY INSTRUCTION NO. 1.   JURY CHARGE ........................................................................3

JURY INSTRUCTION NO. 2.   SUMMARY OF PATENT ISSUES ...........................................5

JURY INSTRUCTION NO. 3.   EVIDENCE................................................................................6

JURY INSTRUCTION NO. 4.   OTHER PATENTS.....................................................................9

JURY INSTRUCTION NO. 5.   CHARTS AND SUMMARIES ................................................10

JURY INSTRUCTION NO. 6.   DEMONSTRATIVE EXHIBITS .............................................11

JURY INSTRUCTION NO. 7.   WITNESSES.............................................................................12

JURY INSTRUCTION NO. 8.   DEPOSITION TESTIMONY ...................................................14

JURY INSTRUCTION NO. 9.   EXPERT TESTIMONY ...........................................................15

JURY INSTRUCTION NO. 10.   STIPULATIONS OF FACT .....................................................16

JURY INSTRUCTION NO. 11.   BIAS-CORPORATE PARTY INVOLVED.............................17

JURY INSTRUCTION NO. 12.   BURDEN OF PROOF GENERALLY .....................................18

JURY INSTRUCTION NO. 13.   PREPONDERANCE OF THE EVIDENCE.............................19

JURY INSTRUCTION NO. 14.   CLEAR AND CONVINCING EVIDENCE.............................20

JURY INSTRUCTION NO. 15.   NATURE OF THE ACTION AND CONTENTIONS OF THE
                                              PARTIES ..................................................................................21

JURY INSTRUCTION NO. 16.   PATENTS—THE ROLE OF THE CLAIMS OF A PATENT
                                              AND WHAT IT COVERS .......................................................22

JURY INSTRUCTION NO. 17.   "COMPRISING" CLAIMS.......................................................24

JURY INSTRUCTION NO. 18.   CLAIM INTERPRETATION....................................................25

JURY INSTRUCTION NO. 19.   INFRINGEMENT—GENERALLY..........................................26

JURY INSTRUCTION NO. 20.   DIRECT INFRINGEMENT—KNOWLEDGE OF THE
                                              PATENT AND INFRINGEMENT ARE IMMATERIAL .......27

JURY INSTRUCTION NO. 21.   DIRECT INFRINGEMENT ......................................................28

JURY INSTRUCTION NO. 22.   LEVEL OF ORDINARY SKILL ..............................................29

JURY INSTRUCTION NO. 23.   PATENT INVALIDITY—GENERALLY .................................30

JURY INSTRUCTION NO. 24.   PATENT INVALIDITY—PRIOR ART ...................................31

JURY INSTRUCTION NO. 25.   PATENT INVALIDITY—PRIOR ART NOT CONSIDERED
                             BY THE PTO...................................................................32

JURY INSTRUCTION NO. 26.   PATENT INVALIDITY—ANTICIPATION............................33

JURY INSTRUCTION NO. 27.   DAMAGES—INTRODUCTION..............................................35

JURY INSTRUCTION NO. 28.   DAMAGES—REASONABLE ROYALTY .............................36

JURY INSTRUCTION NO. 29.   DAMAGES—APPORTIONMENT REQUIRED .....................37

JURY INSTRUCTION NO. 30.   REASONABLE ROYALTY—RELEVANT FACTORS ........38

JURY INSTRUCTION NO. 31.   DAMAGES—COMPARABLE AGREEMENTS.....................40

JURY INSTRUCTION NO. 32.   DAMAGES—LUMP SUM VS. RUNNING ROYALTY .......42

JURY INSTRUCTION NO. 33.   DUTY TO DELIBERATE..........................................................43

JURY INSTRUCTION NO. 34.   SOCIAL MEDIA INSTRUCTION ..........................................44

**STIPULATION**               ………………………………………………………………..45

**FINAL JURY INSTRUCTIONS**

**JURY INSTRUCTION NO. 1.    JURY CHARGE**

MEMBERS OF THE JURY:

It is my duty and responsibility to instruct you on the law you are to apply in this case.  The law contained in these instructions is the only law you may follow.  It is your duty to follow what I instruct you the law is, regardless of any opinion that you might have as to what the law ought to be.

Each of you is going to have your own printed copy of these final jury instructions that I am giving you now, so there is really no need for you to take notes unless you want to.

If I have given you the impression during the trial that I favor either party, you must disregard that impression.  If I have given you the impression during the trial that I have an opinion about the facts of this case, you must disregard that impression.  You are the sole judges of the facts of this case.  Other than my instructions to you on the law, you should disregard anything I may have said or done during the trial in arriving at your verdict.

You should consider all of the instructions about the law as a whole and regard each instruction in light of the others, without isolating a particular statement or paragraph.

The testimony of the witnesses and other exhibits introduced by the parties constitute the evidence.  The statements of counsel are not evidence; they are only arguments.  It is important for you to distinguish between the arguments of counsel and the evidence on which those arguments rest.  What the lawyers say or do is not evidence.  You may, however, consider their arguments in light of the evidence that has been admitted and determine whether the evidence admitted in this trial supports the arguments. You must determine the facts from all the testimony

that you have heard and the other evidence submitted. You are the judges of the facts, but in finding those facts, you must apply the law as I instruct you.

You are required by law to decide the case in a fair, impartial, and unbiased manner, based entirely on the law and on the evidence presented to you in the courtroom. You may not be influenced by passion, prejudice, or sympathy you might have for VLSI or Intel in arriving at your verdict.

After the remainder of these instructions, you will hear closing arguments from the attorneys. Statements and arguments of the attorneys, I remind you, are not evidence, and they are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

A verdict form has been prepared for you. You are to take this verdict form with you to the jury room; and when you have reached a unanimous decision or agreement as to the verdict, you are to have your foreperson fill in the blanks in the verdict form, date it, and sign it.

Answer each question in the verdict form from the facts as you find them to be. Do not decide who you think should win the case and then answer the questions to reach that result. Again, your answers and your verdict must be unanimous.

## JURY INSTRUCTION NO. 2.    SUMMARY OF PATENT ISSUES

I will now summarize the issues that you must decide and for which I will provide

instructions to guide your deliberations.  You must decide the following three main issues:

(1)    Whether VLSI has proven by a preponderance of the evidence
that any of the following claims are infringed by Intel:

- Claims 1 and 9 of the '983 Patent by the Skylake Server
and Cascade Lake Server products.

Patent infringement is determined on a claim-by-claim basis.  You may find that one claim

of a patent is infringed, while other claims of the same patent are not infringed.

(2)    Whether Intel has proven by clear and convincing evidence that
any of the following claims are invalid:

- Claims 1 and 9 of the '983 Patent.

Patent invalidity is determined on a claim-by-claim basis.  You may find that one claim of

a patent is invalid, while other claims of the same patent are not invalid.

(3)    If any claims of any patent are infringed and not invalid, what
amount of damages, if any, VLSI has proven by a
preponderance of the evidence for infringement of those claims.

5

## JURY INSTRUCTION NO. 3.    EVIDENCE

The evidence you are to consider consists of the testimony of the witnesses, the documents and exhibits that I admitted into evidence, and any facts the lawyers agreed or stipulated to. You are to apply any fair inferences and reasonable conclusions you draw from the facts and circumstances that you believe have been proven. Nothing else is evidence.

As a reminder, here are some examples of what is not evidence. The fact that VLSI filed a lawsuit is not evidence that it is entitled to a judgment. The act of making a claim in a lawsuit, by itself, does not in any way tend to establish that claim and is not evidence. Likewise, the fact that Intel has raised arguments against the claims asserted is not evidence that Intel is entitled to a judgment. The act of making defensive arguments, by itself, does not in any way tend to establish that such arguments have merit and is not evidence.

The statements, arguments, and questions by the attorneys are not evidence. Objections to questions are not evidence. The attorneys that are seated in front of you may object if they believe that documents or testimony that is attempted to be offered into evidence are improper under the rules of evidence.

During the trial I may not have let you hear the answers to some of the questions the lawyers asked. I may also have ruled that you could not see some of the exhibits that the lawyers wanted you to see. Further, sometimes I may have ordered you to disregard things that you saw or heard, or struck things from the record. You must follow my rulings and completely ignore all of these things. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

6

Generally speaking, there are two types of evidence. One is direct evidence, such as testimony of eyewitnesses. The other is indirect or circumstantial evidence. Circumstantial evidence is evidence that proves a fact from which you can logically conclude another fact exists. As a general rule, the law makes no distinction between direct and circumstantial evidence. It simply requires that you determine the facts from all of the evidence that you hear in this case, whether direct, circumstantial or any combination.

As I instructed you before the trial began, in judging the facts, you must consider all the evidence, both direct and circumstantial. That does not mean you have to believe all of the evidence. It is entirely up to you to give the evidence you receive in this case whatever weight you individually believe it deserves. It will be up to you to decide which witnesses to believe, which witnesses not to believe, the weight you give any testimony you hear, and how much of any witness's testimony you choose to accept or reject.

You should never be influenced by my ruling on any objection. If I sustained an objection, then just pretend the question was never asked. If there was an answer given, ignore it. If I overruled the objection, act like the objection was never made. If I gave you instructions that some item of evidence was received for a limited purpose, you must follow my instruction. If I gave any limiting instruction during trial, you must follow it. Any testimony I tell you to exclude or disregard is not evidence, may not be considered.

You must not conduct any independent research or investigation. You must make your decision based only on the evidence as I have defined it here, and nothing else.

Some evidence was admitted for a limited purpose only. When I instruct you that an item of evidence has been admitted for a limited purpose, you must consider it only for that limited purpose and for no other.

7

8

## JURY INSTRUCTION NO. 4.    OTHER PATENTS

You have heard certain arguments and evidence regarding Intel's patents. The fact that Intel has patents does not mean that it has a right to use VLSI's patented technology and has no impact on whether Intel has or has not infringed the asserted patent.

## JURY INSTRUCTION NO. 5.    CHARTS AND SUMMARIES

Certain charts and summaries have been shown to you solely to help explain or summarize the facts disclosed by the books, records, and other documents that are in evidence.  These charts and summaries are not evidence or proof of any facts unless I specifically admit a chart or summary into evidence.  You should determine the facts from the evidence.

**JURY INSTRUCTION NO. 6.     DEMONSTRATIVE EXHIBITS**

Certain exhibits shown to you, such as PowerPoint presentations, posters, or models, are illustrations of the evidence, but are not themselves evidence. It is a party's description, picture, or model used to describe something involved in this trial. If your recollection of the evidence differs from the exhibit, rely on your recollection.

## JURY INSTRUCTION NO. 7.    WITNESSES

You alone determine the questions of credibility or truthfulness of the witnesses. In weighing the testimony of witnesses, you may consider the witness's manner and demeanor on the witness stand, any feelings or interest in the case, any prejudice or bias about the case, and the consistency or inconsistency of the witness's testimony considered in the light of circumstances.

Has the witness been contradicted by other credible evidence?  Has the witness made statements at other times that are contrary to those made here on the witness stand?  You must give the testimony of each witness the credibility that you think it deserves.

Even though a witness may be a party to the action and therefore interested in the outcome, you may accept the testimony if it is not contradicted by direct evidence or by any inference that may be drawn from the evidence, if you believe the testimony.

You are not to decide this case by counting the number of witnesses who have testified for the opposing sides.  Witness testimony is weighed.  Witnesses are not counted.  The test is not the relative number of witnesses, but the relative convincing force of the evidence.  The testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses testify to the contrary, if after you have considered all of the other evidence you choose to believe the single witness.

In determining the weight to give to the testimony of a witness, consider whether there was evidence that at some time the witness said or did something or failed to say or do something that was at odds with the testimony given at trial.  A simple mistake by a witness does not necessarily mean that a witness did not tell the truth as he or she remembers it.  We're people.  We forget things.  We remember things inaccurately.  If a witness has made a misstatement, consider whether that was an intentional falsehood or simply an innocent mistake.  The significance of that may

12

depend on whether it has to do with something important or unimportant.  But again, this is exclusively in your province of whether or not you believe a witness is telling the truth.

## JURY INSTRUCTION NO. 8.    DEPOSITION TESTIMONY

Certain testimony has been presented to you through a deposition.  A deposition is the sworn, recorded answers to questions a witness was asked in advance of the trial.  Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness's testimony may be presented, under oath, in the form of a deposition.  Sometime before this trial, attorneys representing the parties in this case questioned this witness under oath.  A court reporter was present and recorded the testimony.  The questions and answers may be shown to you.  This deposition testimony is entitled to the same consideration and is to be weighed and otherwise considered by you in the same way as if the witness had been present and had testified from the witness stand in court.  In addition, some of the video recordings of witnesses you see may be of lower quality because the witnesses had their depositions taken from home.  This was due to COVID-19 restrictions in place at the time and in the location where the witness was located.  You should not hold the quality of the video, the location of the witness, or any other circumstances arising from COVID-19 restrictions against either party.

## JURY INSTRUCTION NO. 9.    EXPERT TESTIMONY

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession, or business.  This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness.

Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case.  You are not required to accept the opinion of any expert, rather, you are free to accept or reject the testimony of experts, just as with any other witness.

## JURY INSTRUCTION NO. 10.   STIPULATIONS OF FACT

A "stipulation" is an agreement. When there is no dispute about certain facts, the parties may agree or "stipulate" to those facts. You must accept a stipulated fact as evidence and treat that fact as having been proven here in court.

## JURY INSTRUCTION NO. 11.   BIAS-CORPORATE PARTY INVOLVED

Do not let bias, prejudice, or sympathy play any part in your deliberations. Whether you are familiar with one party or the other should not play any part in your deliberations. A corporation and all other persons are equal before the law and must be treated as equals in a court of justice.

## JURY INSTRUCTION NO. 12.    BURDEN OF PROOF GENERALLY

In any legal action, facts must be proved by a required amount of evidence known as the "burden of proof." The burden of proof in this case is on VLSI for some issues and on Intel for other issues. There are two burdens of proof that you will apply in this case. One is the preponderance of the evidence, and the other is clear and convincing evidence.

18

## JURY INSTRUCTION NO. 13.    PREPONDERANCE OF THE EVIDENCE

The burden of proof for infringement and damages applicable to VLSI in this case is known as the preponderance of evidence.  VLSI has the burden of proving patent infringement and damages for any alleged patent infringement by a preponderance of the evidence.

A preponderance of the evidence means to prove something is more likely so than not—i.e. evidence that persuades you that a claim is more probably true than not true.  Sometimes this is talked about as being the greater weight and degree of credible testimony.  You may think of this preponderance of the evidence standard as slightly greater than 50%.

.

## JURY INSTRUCTION NO. 14.   CLEAR AND CONVINCING EVIDENCE

The burden of proof for invalidity applicable to Intel in this case is known as clear and convincing evidence. Intel has the burden of proving patent invalidity and  that an alleged product or publication is prior art by clear and convincing evidence.

Clear and convincing evidence means evidence that produces in your mind a firm belief or conviction as to the truth of the matter sought to be established.  It is evidence so clear, direct, weighty and convincing as to enable you to come to a clear conviction without hesitancy.  This standard is different from the preponderance of the evidence standard which applies to VLSI's burden of proving infringement.

These standards are different from what you may have learned about in criminal proceedings where a fact is proven beyond a reasonable doubt.  On a scale of the various standards of proof, as you move from the preponderance of the evidence, where the proof need only be sufficient to tip the scales in favor of the party proving the fact, to at the other end beyond a reasonable doubt, where the fact must be proven to a very high degree of certainty, you may think of clear and convincing evidence as being between those two standards.

## JURY INSTRUCTION NO. 15.    NATURE OF THE ACTION AND CONTENTIONS OF THE PARTIES

As I did at the start of the case, I will now give you a summary of each side's contentions in this case. I will then provide you with detailed instructions on what each side must prove to prevail on each of its contentions.

VLSI is the owner of the patent at issue in this case. This patent is:

- U.S. Patent No. 7,606,983 (which may be called the "'983 Patent").

This patent has also been referred to as the "VLSI Patent" or the "asserted patent."

VLSI contends that Intel infringes:

- Claims 1 and 9 of the '983 Patent.

These claims may also be referred to as the "VLSI Patent claims" or the "asserted claims."

VLSI contends that Intel directly infringes the asserted claims by importing, making, using, offering to sell, or selling certain microprocessor products.  The names of these Intel products by code names and by patent are:

- Skylake Server and Cascade Lake Server products

VLSI further contends that it is entitled to recover damages for Intel's infringement.

Intel denies that it infringes any asserted claim of the asserted patent.  Non-infringement is a defense to a charge of infringement.

In addition, Intel contends that the asserted claims of the asserted patent is invalid. Invalidity is a defense to infringement.

Intel contends that VLSI is not entitled to damages.

Although the Court and parties may refer to the claims collectively, you must conduct your invalidity analysis as to each claim individually.

21

**JURY INSTRUCTION NO. 16.   PATENTS—THE ROLE OF THE CLAIMS OF A PATENT AND WHAT IT COVERS**

Before you can decide many of the issues in this case, you'll need to understand the role of the patent claims.

The claims of a patent are the numbered sentences at the end of the patent. The claims define the patent owner's rights under the law. The claims are important, because it is the words of the claims themselves that define what the patent covers. The figures and the text in the rest of the patent provide a description or examples of the claimed invention, and they provide a context for the claims; but it is the claims that define the breadth of the patent's coverage.

Each claim is effectively treated as if it were its own separate patent, and each claim may cover more or may cover less than any other claim. Therefore, what a patent covers collectively or as a whole depends on what each of its claims cover.

You will first need to understand what each claim covers in order to decide whether or not there is infringement of that claim and to decide whether or not the claim is invalid.

You are to use the plain and ordinary meaning of the words of the patent claims as understood by a person of ordinary skill in the art, which is to say, in the field of technology of the patent at the time of the invention. The meanings of the words of the patent claims must be the same when deciding both the issues of infringement and validity.

I'll now explain how a claim defines what it covers. A claim sets forth in words a set of requirements. Each claim sets forth its requirements in a single sentence. If a device satisfies each of these requirements in that sentence, then it is covered by and infringes the claim. There can be several claims in a patent. A claim may be narrower or broader than another claim by setting forth more or fewer requirements. The coverage of a patent is assessed on a claim-by-claim basis.

22

In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations." When a product meets all the requirements of a claim, where it meets all of its limitations or all of its elements, the claim is said to cover that product; and that product is said to fall within the scope of that claim. In other words, a claim covers a product where each of the claim elements or limitations is present in that product. If a product is missing even one limitation or element of a claim, the product is not covered by that claim. If the product is not covered by the claim, the product does not infringe the claim.

## JURY INSTRUCTION NO. 17.   "COMPRISING" CLAIMS

The preambles to each of the asserted claims of the VLSI Patent use the word "comprising," for example in the phrases "the system comprising," or "[a] memory circuit comprising." The word "comprising" means "including the following but not excluding others." A claim that includes the word "comprising" or "comprises" is not limited to products having only the elements recited in the claim, but also covers products that add additional elements.

For example, a claim wherein "a table comprises a tabletop, legs, and glue" would be infringed by a table that includes a tabletop, legs, and glue, even if the table also includes wheels on the table's legs.

If you find that Intel's products include all of the elements in a claim, even if Intel's products include additional components or steps, you must find that Intel's products infringe the claim.

But if a product is missing even one limitation or element of a patent claim, then that product is not covered by the claim and does not infringe. Likewise, if a prior art reference is missing one limitation or element of a patent claim, then that prior art reference does not invalidate the claim. For example, a claim wherein "a table comprises a tabletop, legs, and glue" would not cover a table that includes a tabletop and legs, but no glue.

24

## JURY INSTRUCTION NO. 18.   CLAIM INTERPRETATION

The law says that it is the Court's role to define the terms of the claims and it is your role as the jury to apply the Court's definitions of the terms the Court has construed to the issues that you are asked to decide in this case.

I have determined the meaning of the following phrases as used in the below listed patent.

| Phrase | Meaning |
|---|---|
| '983 Patent: "means for accessing data" | **Function**: "accessing data"<br>**Structure**: "a memory circuit, device or system, or equivalents thereof" |
| '983 Patent: "means for processing series of operations and for generating based thereon access requests for the data" | **Function**: "processing series of operations and generating based thereon access requests for the data"<br>**Structure**: "a processor, or equivalents thereof" |
| '983 Patent: "means for controlling access to the data, for receiving the access requests from each of the processing means, for determining a performance order, and for providing the access requests to the accessing means in the performance order" | **Function:** "controlling access to the data, receiving the access requests from each of the processing means, determining a performance order, and providing the access requests to the accessing means in the performance order"<br>**Structure:** "a memory controller, controller for other shared resources, or equivalents thereof" |

You must accept my definitions of these words in the claims as being correct.  It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and validity.

## JURY INSTRUCTION NO. 19.   INFRINGEMENT—GENERALLY

I will now instruct you as to the rules you must follow when deciding whether VLSI has proven that Intel infringed any of the claims of the '983 Patent.

Patent law gives the owner of a valid patent the right to exclude others from importing, making, using, offering to sell, or selling within the United States a product claimed in the patent. Any person or business entity that has engaged in any of those acts without the patent owner's permission infringes the patent. Here, VLSI alleges that Intel infringes the following claims through its accused products:

- Claims 1 and 9 of the '983 Patent.

In determining infringement, you must compare Intel's accused products to the asserted claims of the '983 Patent.

**JURY INSTRUCTION NO. 20.    DIRECT INFRINGEMENT—**
**KNOWLEDGE OF THE PATENT AND**
**INFRINGEMENT ARE IMMATERIAL**

In this case, VLSI asserts that Intel has directly infringed the VLSI Patent.  Intel is liable for directly infringing each asserted claims of the VLSI Patent if you find that VLSI has proven that it is more likely than not that Intel made, used, imported, offered to sell, or sold the invention defined in at least one claim of the patent within the United States.

A party can directly infringe a patent without knowing of the patent or without knowing that what the party is doing is patent infringement.  There is no intent element to direct infringement.  Evidence of independent development is not relevant to an infringement determination.  Copying is not a required element of infringement.  Even if the party independently creates the accused product, it can still infringe.

27

## JURY INSTRUCTION NO. 21.   DIRECT INFRINGEMENT

In order to prove infringement of a patent claim, VLSI must prove by a preponderance of the evidence, i.e., that it is more likely than not, that Intel made, used, sold, offered for sale within, or imported into the United States a product or process that meets all of the requirements of a claim and did so without VLSI's permission.  You must compare the product or process with each and every one of the requirements of a claim to determine whether all of the requirements of that claim are met.  A claim element is literally present if it exists in the accused product as it is described in the claim language.

You must determine, separately for each asserted claim, whether or not there is infringement.

28

## JURY INSTRUCTION NO. 22.   LEVEL OF ORDINARY SKILL

The '983 patent relates to the field of computing technology in general, and more specifically the hardware architecture of memory systems, memory transaction ordering, and cache consistency. At the time the '983 patent was filed, a person of ordinary skill in the art ("POSITA") would have had at least a Bachelor of Science or equivalent degree in computer science or electrical engineering and two or three years of graduate work, work experience, or the equivalent in computer systems and architecture. Such a person would have been familiar with computer systems architecture and design.

### JURY INSTRUCTION NO. 23.   PATENT INVALIDITY—GENERALLY

I will now instruct you on the rules you must follow in deciding whether or not Intel has proven that the asserted claims of the '983 Patent is invalid.  A patent is presumed valid.   The burden of establishing invalidity of a patent or any claim rests solely on Intel as the party asserting invalidity.

To prove that any claim of a patent is invalid, Intel must persuade you by clear and convincing evidence, that is, you must be left with a clear conviction that the claim is invalid. Even though the Patent Office examiners have allowed the asserted claims as valid, you have the responsibility for deciding whether Intel has met its burden of proving by clear and convincing evidence that the claims of the patent are invalid.

**JURY INSTRUCTION NO. 24.   PATENT INVALIDITY—PRIOR ART**

In order for someone to be entitled to a patent, the claimed invention must actually be "new" over what came before, which is referred to as the prior art.  There are different types of prior art, and I will instruct you on the relevant types that you need to consider.

Intel contends that the Khare patent application is prior art to the VLSI Patent.

### JURY INSTRUCTION NO. 25.   PATENT INVALIDITY—PRIOR ART NOT CONSIDERED BY THE PTO

When a party challenging the validity of a patent presents evidence that was not considered by the Patent Office examiners during the prosecution of the application and not cumulative of other evidence that was considered which resulted in the issued patent or claim affirmance on reexam, such new evidence may be given more weight and may make it easier to satisfy the party's clear-and- convincing evidence burden.

### JURY INSTRUCTION NO. 26.  PATENT INVALIDITY— ANTICIPATION

The patent laws of the United States require that an invention must be new for a person to be entitled to a patent.

Anticipation must be determined on a claim-by-claim basis.  For anticipation, Intel must prove by clear and convincing evidence that all of the requirements of a claim are present in a single piece of prior art.

To anticipate the claimed invention, the prior art does not have to use the same words as the claim, but all requirements of the claim must have been disclosed and arranged as in the claim. The claim requirements must be disclosed expressly such that a person having ordinary skill in the art in the art of computer processors, looking at that one reference, could make and use the claimed invention.

A prior art patent application, like the Khare application, is presumed to be enabled.  VLSI argues that the Khare patent application is not enabled because its subject matter cannot be produced without undue experimentation.  The burden is on VLSI, not Intel, to show that that undue experimentation is required.  Factors to be considered in determining whether a disclosure would require undue experimentation include:  (1) the quantity of experimentation necessary; (2) the amount of direction or guidance disclosed in the printed publication or patent; (3) the presence or absence of working examples in the printed publication or patent; (4) the nature of the invention; (5) the state of the prior art; (6) the relative skill of those in the art; (7) the predictability of the art; and (8) the breadth of the claims.  If you conclude that VLSI has met its burden to show undue experimentation, then the Khare patent application is not prior art and cannot be used to invalidate

the claims of the '983 patent.  However, if you find that VLSI has not met its burden to overcome

the presumption, then you must consider the Khare patent application as prior art.

## JURY INSTRUCTION NO. 27.   DAMAGES—INTRODUCTION

If you find that Intel infringed any valid claim of the VLSI Patent, you must then consider what amount of damages to award to VLSI. I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case, on any issue. If you find that Intel has not infringed any valid claim of the asserted patent, then VLSI is not entitled to any damages.

The damages you award, if any, must be adequate to compensate VLSI for the infringement. They are not meant to punish an infringer. Your damages award, if you reach this issue, should not be less than what the patent holder would have received had it been paid a reasonable royalty. You may not include in your award any additional amount as a fine or penalty, above what is necessary to compensate the patent holder for any infringement.

VLSI has the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that VLSI establishes that are more likely than not. While VLSI is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty. You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

In this case, VLSI seeks damages in the form of what it contends to be a reasonable royalty. You must be careful to ensure that award is no more and no less than the value of the patented invention.

The court expresses no opinion on whether plaintiff is entitled or not entitled to any damages.

## JURY INSTRUCTION NO. 28.   DAMAGES—REASONABLE ROYALTY

A reasonable royalty is defined as the money amount that the patent owner and the alleged infringer would have agreed to if a hypothetical negotiation had taken place at the time just prior to when any infringement first began.

In considering this hypothetical negotiation, you should focus on what the expectations of the patent owner and the alleged infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations.

Unlike in a real world negotiation, all parties to the hypothetical negotiation are presumed to believe that the patent is valid and infringed and that both parties were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred. Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation just prior to the first infringement.

The reasonable royalty award must be based on the incremental value that the patented invention adds to the end product. When the infringing products have both patented and unpatented features, measuring this value requires a determination of the value added by the patented features. An appropriate combination of royalty base and royalty rate must reflect the value attributable to the infringing features, if any, of the Intel products, and no more.

36

### JURY INSTRUCTION NO. 29.    DAMAGES—APPORTIONMENT REQUIRED

Any amount of damages must be based on the value attributable to the patented invention, as distinct from unpatented features of the accused products or other factors such as marketing or advertising. A royalty compensating the patent owner for damages must reflect the value attributable to the infringing features of the product, and no more. The process of separating the value of the allegedly infringing features from the value of all other features is called apportionment. When the products accused of infringement have both patented and unpatented features, your award must be apportioned so that it is based only on the value of the patented features, and no more.

**JURY INSTRUCTION NO. 30.    REASONABLE ROYALTY—
RELEVANT FACTORS**

In determining the amount of a reasonable royalty, you may consider evidence on any of

the following factors, in addition to any other evidence presented by the parties on the economic

value of the patent:

- Any royalties received for licensing of the patent-in-suit, proving or tending to prove an established royalty.

- The rates paid by Intel to license other patents comparable to the VLSI patent

- The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold.

- The commercial relationship between the licensor and the licensee, such as whether or not they are competitors in the same territory in the same line of business.

- The effect of selling the patented products in promoting other sales of the licensee (Intel); the existing value of the claimed invention to the licensor as a generator of sales of its non-patented items; and the extent of such collateral sales.

- The duration of the VLSI Patent and the term of the license.

- The established profitability of the products made under the VLSI Patent; their commercial success; and their popularity.

- The utility and advantages of the patented inventions over the old modes or devices, if any, that had been used for achieving similar results.

- The nature of the patented inventions; the character of any commercial embodiment of it as owned and produced by or for the licensor; and the benefits, if any, to those who have used the claimed invention.

- The extent, if any, to which Intel has made use of the claimed invention; and any evidence that shows the value of that use.

- The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the inventions or analogous inventions.

38

- The portion of the profit that arises from the patented inventions themselves as opposed to profit arising from unpatented features, such as the manufacturing process, business risks, or significant features or improvements added by the accused infringer.

- The opinion testimony of qualified experts.

- The amount that a licensor and a licensee would have agreed upon (at the time the infringement began) if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a patentee who was willing to grant a license.

- Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license.

No one factor is dispositive, and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty the alleged infringer would have been willing to pay and the patent owner would have been willing to accept, acting as normally prudent business people. Any reasonable royalty you award must compensate for the use made of the invention by the accused infringer.

### JURY INSTRUCTION NO. 31.    DAMAGES—COMPARABLE AGREEMENTS

The existence of any comparable damage agreement or other transactions may inform your decision as to the proper amount and form of the reasonable royalty award.

Whether a particular patent agreement or other transaction is comparable to the hypothetical license depends on many factors, such as whether they involve comparable technologies, comparable economic circumstances, comparable structures and comparable scope.   An agreement may be comparable even if the patented technology and economic circumstances of the agreement are not identical to the hypothetical negotiation.   The question is whether the agreement is sufficiently comparable that it provides a reasonable indication of how the parties to the hypothetical negotiation would have negotiated a license to the asserted patent.   To the extent that an agreement is not comparable to the hypothetical license to the asserted patent, it should not be used to determine the amount or form of any reasonable royalty award.

However, if you choose to rely upon evidence from any license agreements, you must account for any differences between those licenses and the hypothetically negotiated license between the patent owner and the accused infringed, including in terms of the technologies and economic circumstances of the contracting parties when you make your reasonable royalty determination. While the parties to the hypothetical negotiation assume a patent is valid and infringed, an agreement may be comparable even if there has been no determination or assumption by the parties to the agreement that the patent is valid and infringed.   However, this is one of the differences you may consider in whether a license agreement is comparable to the hypothetically negotiated license: The hypothetical license is deemed to be a voluntary agreement. When determining if a license agreement

40

is comparable to the hypothetical license, you may consider whether the license agreement is or was between parties who were involved in a lawsuit.

## JURY INSTRUCTION NO. 32.    DAMAGES—LUMP SUM VS. RUNNING ROYALTY

Reasonable royalty awards can take the form of a lump sum payment. A lump sum payment is equal to an amount that the alleged infringer would have paid at the time of a hypothetical negotiation for a license covering all the sales of the licensed product, both past and future. When a lump sum is paid, the infringer pays a single price for a license covering both past and future infringing sales. In determining whether a lump sum payment is appropriate, you may consider whether the parties to the hypothetical negotiation accepted lump sum payments in connection with comparable patent agreements, if any.

Reasonable royalty awards may also take the form of a running royalty based on the revenue from or the volume of sales of the licensed products. A running royalty can be calculated, for example, by multiplying a royalty base by a royalty rate.

Running royalty awards may also be calculated as a lump sum over a certain period of time as VLSI has done here.

It is up to you, based on the evidence, to decide what type of royalty, if any, is appropriate in this case.

42

## JURY INSTRUCTION NO. 33.   DUTY TO DELIBERATE

It is now your duty to deliberate and to consult with one another in an effort to reach a verdict. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors.  During your deliberations, do not hesitate to re-examine your own opinions and change your mind if you are convinced that you were wrong.  But do not give up on your honest beliefs because the other jurors think differently, or just to finish the case.

Remember at all times, you are the judges of the facts.  You have been allowed to take notes during this trial. Any notes that you took during this trial are only aids to memory.  If your memory differs from your notes, you should rely on your memory and not on the notes.  The notes are not evidence.  If you did not take notes, rely on your independent recollection of the evidence and do not be unduly influenced by the notes of other jurors.  Notes are not entitled to greater weight than the recollection or impression of each juror about the testimony.

When you go into the jury room to deliberate, you may take with you a copy of this charge, the exhibits that I have admitted into evidence, and your notes.  You must select a jury foreperson to guide you in your deliberations and to speak for you here in the courtroom.

Your verdict must be unanimous.  After you have reached a unanimous verdict, your jury foreperson must fill out the answers to the written questions on the verdict form and sign and date it.  After you have concluded your service and I have discharged the jury, you are not required to talk with anyone about the case.

If you need to communicate with me during your deliberations, the jury foreperson should write the inquiry and give it to the court security officer.  After consulting with the attorneys, I will respond either in writing or by meeting with you in the courtroom.  Keep in mind, however, that you must never disclose to anyone, not even to me, your numerical division on any question.

43

## JURY INSTRUCTION NO. 34.   SOCIAL MEDIA INSTRUCTION

During your deliberations, you may not communicate any information about this case to anyone by any means.  For example, do not talk face-to-face or use any electronic device or media, such as the telephone, a cell phone, smartphone, PDA, tablet or computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog or website such as Facebook, LinkedIn, YouTube, Snapchat, Instagram or Twitter, or any other way to communicate. You may not communicate to anyone any information about this case or conduct any research about this case until this case is over, and I accept your verdict.

In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case.  You can only discuss the case in the jury room with your fellow jurors during deliberations.

You may now proceed to the jury room to begin your deliberations.

## STIPULATION

The parties have agreed to the following stipulation regarding the accused products, which has already been applied to the damages amounts dis⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱rial by the parties' witnesses:

- Of the total, glob⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱ activities d⸱⸱ considerations, asserted VLSI p⸱ as any actual o⸱ therewith, 74.93% States nexus as requ⸱ and for determining case. The treatment ⸱ regardless of which pa⸱ to be used or which In⸱ determined to use the⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱ne considerations). By enterin⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱er party makes any admission ⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱⸱ngement or noninfringement, validity or⸱⸱⸱⸱⸱⸱⸱⸱⸱, or damages. VLSI contends that all of the accu⸱⸱⸱⸱tel products infringe the asserted patent, denies that the asserted claims are invalid in light of any prior art, and asserts that it is entitled to damages of no less than a reasonable royalty for Intel's past, present, and future infringement. Intel denies that any of the Intel products at issue infringe any asserted claim of the asserted patent, contends that the asserted claims are invalid in light of the prior art, and denies that VLSI has demonstrated that it is entitled to any damages. This agreement does not in any way suggest or indicate that any of the Intel products at issue infringe or do not infringe any asserted claim of the asserted patent or that any damages are due or are not due to VLSI.

45

Dated: November 15, 2022

By:        /s/

Morgan Chu (*pro hac vice*)
Benjamin W. Hattenbach (*pro hac vice*)
Iian D. Jablon (*pro hac vice*)
Alan J. Heinrich (*pro hac vice*)
Ian Robert Washburn (*pro hac vice*)
Amy E. Proctor (*pro hac vice*)
Dominik Slusarczyk (*pro hac vice*)
Elizabeth C. Tuan (*pro hac vice*)
Charlotte J. Wen (*pro hac vice*)
Benjamin Monnin (*pro hac vice*)
Jordan Nafekh (*pro hac vice*)
**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, California   90067
Telephone: (310) 277-1010
Facsimile: (310) 203-7199
mchu@irell.com
bhattenbach@irell.com
ijablon@irell.com
aheinrich@irell.com
iwashburn@irell.com
aproctor@irell.com
dslusarczyk@irell.com
etuan@irell.com
cwen@irell.com
bmonnin@irell.com
jnafekh@irell.com

Babak Redjaian (*pro hac vice*)
**IRELL & MANELLA LLP**
840 Newport Center Drive, Suite 400
Newport Beach, California   92660
Telephone: (949) 760-0991
Facsimile: (949) 760-5200
bredjaian@irell.com

*Attorneys for VLSI Technology LLC*

J. Mark Mann (Texas Bar No. 12926150)
mark@themannfirm.com
G. Blake Thompson (Texas Bar No. 24042033)
blake@themannfirm.com
**MANN | TINDEL | THOMPSON**
300 W. Main Street
Henderson, TX 75652
Telephone: (903) 657-8540
Facsimile: (903) 657-6003

Andy Tindel (Texas Bar No. 20054500)
atindel@andytindel.com
**MANN | TINDEL | THOMPSON**
112 E. Line Street, Suite 304
Tyler, Texas 75702
Telephone: (903) 596-0900
Facsimile: (903) 596-0909

Craig D. Cherry (Texas Bar No. 24012419)
craig@swclaw.com
**STECKLER, WAYNE, COCHRAN, CHERRY, PLLC**
8416 Old McGregor Road
Waco, Texas 76712
Telephone: (254) 651-3690
Facsimile: (254) 651-3689

46

William F. Lee (*pro hac vice*)
Louis W. Tompros (*pro hac vice*)
Kate Saxton (*pro hac vice*)
Joseph Mueller (*pro hac vice*)
Felicia H. Ellsworth (*pro hac vice*)
Jordan L. Hirsch (*pro hac vice*)
Dominic E. Massa (*pro hac vice*)
Thomas Lampert (*pro hac vice*)
James M. Lyons (*pro hac vice*)
George F. Manley (*pro hac vice*)
**WILMER CUTLER PICKERING HALE &**
   **DORR LLP**
60 State Street
Boston, Massachusetts 02109
Tel: (617) 526-6000
william.lee@wilmerhale.com
louis.tompros@wilmerhale.com
kate.saxton@wilmerhale.com
joseph.mueller@wilmerhale.com
felicia.ellsworth@wilmerhale.com
jordan.hirsch@wilmerhale.com
dominic.massa@wilmerhale.com
thomas.lampert@wilmerhale.com
james.lyons@wilmerhale.com
george.manley@wilmerhale.com

Gregory H. Lantier (*pro hac vice*)
Amanda L. Major (*pro hac vice*)
Joshua L. Stern (*pro hac vice*)
Steven J. Horn (*pro hac vice*)
**WILMER CUTLER PICKERING HALE &**
   **DORR LLP**
1875 Pennsylvania Avenue
Washington DC 20006
Tel: (202) 663-6000
gregory.lantier@wilmerhale.com
amanda.major@wilmerhale.com
joshua.stern@wilmerhale.com
steven.horn@wilmerhale.com

Mary V. Sooter (*pro hac vice*)
**WILMER CUTLER PICKERING HALE &**
   **DORR LLP**

J. Stephen Ravel (Texas Bar No. 16584975)
**KELLY HART & HALLMAN LLP**
303 Colorado, Suite 2000
Austin, Texas 78701
Tel: (512) 495-6429
steve.ravel@kellyhart.com

James E. Wren (Texas Bar No. 22018200)
1 Bear Place, Unit 97288
Waco, Texas 76798
Tel: (254) 710-7670
james.wren@baylor.edu

*Attorneys for Intel Corporation*

47

1225 17th Street, Suite 2600
Denver, CO 80202
Tel: (720) 274-3164
mindy.sooter@wilmerhale.com

S. Calvin Walden (*pro hac vice*)
Jeffrey A. Dennhardt (*pro hac vice*)
**WILMER CUTLER PICKERING HALE &**
    **DORR LLP**
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: (212) 295-6293
calvin.walden@wilmerhale.com
jeffrey.dennhardt@wilmerhale.com

Anh-khoa Tran
Arthur W. Coviello (*pro hac vice*)
Alexis Pfeiffer (*pro hac vice*)
**WILMER CUTLER PICKERING HALE &**
    **DORR LLP**
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Tel: (650) 858-6000
arthur.coviello@wilmerhale.com
khoa.tran@wilmerhale.com
alexis.pfeiffer@wilmerhale.com